Robert R. Hager, NV State Bar No. 1482
Treva J. Hearne, NV State Bar No. 4450
**HAGER & HEARNE**
245 E. Liberty - Suite 110
Reno, Nevada 89501
Tel: (775) 329-5811
Fax: (775) 329-5819
Email: rhager@hagerhearnelaw.com
          thearne@hagerhearnelaw.com
          office@hagerhearnelaw.com

*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

JOSEPH GREEN, DAVID A. BARRON and MARCELLA A. BARRON, JOHN S. BENSON, MANUEL  C. CASTILLO, SR., OSCAR G. CORTEZ, KRISZTINA DOMBOVARI, THOMAS G. FILIATREAU and VICKI S. FILIATREAU, GUSTAVO GARCIA,  CARLEEN HARMON, ROBB C. KELLEY, TIMOTHY L KING and CAROL A. KING, MARGARITA LARKINS and JOHN E. LARKINS, GABRIEL LARKINS, JOSE LOPEZ, DAVID A. MAHLIN and SANDRA C. MAHLIN, DENISE A. MENDOZA and GUILLERMO A. MENDOZA, JR., DOUGLAS B. MOORE, DOUG MOREAU, DALE W. PETERSON and JERI S. PETERSON, NANCY QUINTERO-OROZCO and JAIME ZAMORANO, BRET E. RIGGS, STEVEN A. STAPLETON and SHENDALE R. STAPLETON, and, individually and on behalf of a class of similarly situated individuals,

                    Plaintiffs,

vs.

COUNTRYWIDE HOME LOANS, INC., a New York corporation; MERSCORP, INC., a Virginia corporation; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a subsidiary of MERSCORP, Inc., a Delaware  corporation; RECONTRUST COMPANY,  LITTON LOAN SERVICING, AURORA LOAN SERVICES, CR TITLE SERVICES, INC., HOUSEKEY FINANCIAL CORPORATION, QUALITY LOAN SERVICE

Case No.:  3:09-cv-00374-ECR-GWF

**[PROPOSED] FIRST AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND**

**1. Wrongful Foreclosure**

**2. Unjust Enrichment**

**3. Conspiracy to Commit Wrongful Foreclosure by Creation, Operation, and Use of the MERS System**

**4. Conspiracy to Commit Fraud by Creation, Operation and Use of the MERS System**

**5. Injunctive Relief**

**6. Declaratory Relief**

First Amended Complaint/Green etal v. Citi etal-1

CORPORATION, NATIONAL DEFAULT SERVICING CORPORATION, AMERICAN HOME MORTGAGE SERVICING, INC., FIDELITY NATIONAL TITLE INSURANCE COMPANY, MIDFIRST BANK, NDEX WEST, LLC., MIDLAND MORTGAGE CO., THE BANK OF NEW YORK MELLON, CR TITLE SERVICES, INC., FEDERAL HOME LOAN MORTGAGE CORPORATION, a Virginia corporation; FEDERAL NATIONAL MORTGAGE ASSOCIATION, a District of Columbia corporation; GMAC MORTGAGE, L.L.C., a Delaware corporation; NATIONAL CITY MORTGAGE, a foreign company and a division of NATIONAL CITY BANK, a subsidiary of National City Corporation; NATIONAL CITY CORPORATION, a Delaware corporation and a subsidiary of PNC Financial Services, Inc.; PNC FINANCIAL SERVICES, INC., a Pennsylvania corporation; J.P. MORGAN CHASE BANK, N.A., a New York corporation; CITIMORTGAGE, INC., a New York corporation; HSBC MORTGAGE CORPORATION, U.S.A., a Delaware corporation; AIG UNITED GUARANTY CORPORATION, a foreign corporation; WELLS FARGO BANK, N.A., a California corporation, dba WELLS FARGO HOME EQUITY and dba WELLS FARGO HOME MORTGAGE, a division of WELLS FARGO BANK, N.A., a California corporation; BANK OF AMERICA, N.A., a Delaware corporation, and GE MONEY BANK, an Ohio corporation;

Plaintiff KRISZTINA DOMBOVARI, individually and on behalf of a class of similarly situated individuals whose homes have been foreclosed upon and purchased by the defendant banks with the Defendant banks retaining the homes (hereinafter "bank REO Plaintiffs"); and Plaintiffs JOSEPH GREEN, DAVID A. BARRON and MARCELLA A. BARRON, JOHN S. BENSON, MANUEL C. CASTILLO, SR., THOMAS G. FILIATREAU and VICKI S. FILIATREAU, OSCAR G. CORTEZ, CARLEEN HARMON, ROBB C. KELLEY, TIMOTHY L KING and CAROL A. KING, MARGARITA LARKINS and JOHN E. LARKINS, GABRIEL LARKINS, JOSE LOPEZ, DAVID A. MAHLIN and SANDRA C.

**HAGER & HEARNE**
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

HAGER & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

1  MAHLIN, DENISE A. MENDOZA and GUILLERMO A. MENDOZA, JR., DOUGLAS B.

2  MOORE, DOUG MOREAU, DALE W. PETERSON and JERI S. PETERSON, BRET E.

3  RIGGS, STEVEN A. STAPLETON and SHENDALE R. STAPLETON, and JAIME

4  ZAMORANO and NANCY QUINTERO-OROZCO, individually and on behalf of a class of

5  similarly situated individuals who seek a temporary restraining order and preliminary

6  injunction against imminent foreclosure sales of their homes against Defendants,

7  through their counsel, HAGER & HEARNE, allege as follows:

8                    STATEMENT OF THE CASE

9          This case arises because the Plaintiffs were the victims of unlawful and wrongful

10  foreclosures and/or an underlying conspiracy to commit fraud that resulted in

11  foreclosures by the Defendants on the Plaintiffs' homes or, the Defendants are threatening

12  in the near future to foreclose on the homes of the Plaintiffs.  These foreclosures were, and

13  are, based upon a deed of trust and a note in each mortgage each of which are no longer

14  held by the same entity or party and are based upon deeds of trust that were flawed at the

15  date of origination of the loan because the Mortgage Electronic Registration Service

16  (MERS) was named as the beneficiary or nominee of the lender on the deeds of trust and

17  because the naming of MERS as the beneficiary was done for the purpose of harming the

18  borrower. The beneficiaries were never intended to be the lenders and now the servicer

19  bank Defendants declared the default on these loans even though the true beneficiaries

20  have not declared a default and have no further interest in the notes and, finally, the

21  obligations reflected by the notes executed by Plaintiffs allegedly secured by the MERS

22  deeds of trust have been satisfied with the result that there exists no obligation on which

23  to base any foreclosure on the properties owned by the Plaintiffs and the members of the

24  class.  Defendants have attempted to foreclose and have actually foreclosed when they do

25

First Amended Complaint/Green etal v. Citi etal-3

not have a lawful right to foreclose.

The bank REO Plaintiffs have been subjected to unlawful and wrongful foreclosure of their residential properties and bring this action for emergency injunctive relief, damages and other claims for relief in order to enjoin the Defendants who purport to have acquired title at foreclosure sales on MERS and MERS member Deeds of Trust. Plaintiffs who have been subjected to foreclosure seek damages for the known unlawful foreclosures by Defendants on those fraudulent Deeds of Trust and on obligations that have been satisfied prior to the foreclosure actions by Defendants complained of herein. Other than the REO Plaintiffs, the remainder of the Plaintiffs are at imminent risk of losing their homes because either (1) one or more of the Defendants has served upon those Plaintiffs a notice of default and election to sell the Plaintiffs' properties or (2) the Plaintiffs are alleged by one or more Defendants to be in default and subject to foreclosure and loss of their homes, and those Plaintiffs hereby seek emergency injunctive relief and damages. Plaintiffs bring this action on behalf of themselves and all other persons similarly situated whose homes have been fraudulently and/or unlawfully foreclosed upon by Defendants on MERS and MERS Deeds of Trust and/or on obligations that were satisfied, each such foreclosure having been commenced and advanced in furtherance of the conspiracy pursuant to which every Defendant herein aided and abetted, and/or participated with and/or conspired with the other named Defendants in the wrongful course of conduct or otherwise caused the damages and injuries claimed herein and are responsible in some manner for the acts, occurrences and events alleged in this Complaint.

//

//

HAGER & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

**HAGER & HEARNE**
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

## JURISDICTION

1.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332 based on diversity of citizenship, as Plaintiffs are residents of the State of Nevada; upon information and belief, each and every Defendant is a foreign corporation; and because this matter is a class action with claims having a value in excess of $5,000,000.00.

2.      This Court has pendent jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

3.      Venue over this matter is appropriate in this Court pursuant to 28 U.S.C. § 1391(b). The acts complained of occurred, in substantial part, in the State of Nevada, the properties subject to this action are situated in the State of Nevada in the Northern Division and, at all relevant times, material hereto, the Defendants are or were doing business in Nevada.

## **Parties and Standing**

4.      Plaintiff, JOSEPH GREEN, is a resident of Washoe County, Nevada.

5.      At all times relevant and material hereto, Plaintiff maintained Plaintiff's primary residence in Washoe County, Nevada with the legal description of:

LOT 5-58 OF THE FOOTHILLS AT WINGFIELD VILLAGE 5, ACCORDING TO THE MAP THEREOF, FILED IN THE OFFICE OF THE COUNTRY RECORDER OF WASHOE COUNTY, STATE OF NEVADA, ON SEPTEMBER 29, 2005, AS FILE NO. 3284464, TRACT MAP NO. 4549.

APN: 526-371-01

Plaintiff's primary residence as described above is commonly referred to and

located at 4321 Black Hills Drive, Sparks, Nevada, 89436.

7.      Plaintiffs, DAVID A. BARRON and MARCELLA A. BARRON, are residents of Lyon County, Nevada.

HAGER & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

8.　　At all times relevant and material hereto, Plaintiffs maintained Plaintiffs' primary residence in Lyon County with the legal description of:

LOT 257 AS SHOWN ON THE OFFICIAL MAP OF DAYTON VALLEY COUNTRY CLUB UNIT 6b, RECORDED IN THE OFFICIAL RECORDS OF LYON COUNTY, NEVADA ON SEPTEMBER 19, 2002 AS DOCUMENT NO. 282826.

APN: 19-881-32

Plaintiffs' primary residence described above is commonly referred to and located at 326 Torrey Pines Drive, Dayton, Nevada 89403.

9.　　Plaintiff JOHN S. BENSON is a resident of Douglas County, Nevada.

10.　　At all times relevant and material hereto, Plaintiff maintained Plaintiff's primary residence in Douglas County, Nevada with the legal description of:

LOT 11, BLOCK A, OF LAKEWOOD KNOLLS ANNEX, ACCORDING TO THE MAP THEREOF, FILED FOR RECORD IN THE OFFICE OF THE COUNTY RECORDER OF DOUGLAS COUNTY, NEVADA, ON MAY 12, 1959, AS DOCUMENT NO. 14378.

APN: 07-261-010

Plaintiff's primary residence as described above is commonly referred to and located at 298 Chimney Rock Road, Stateline, Nevada, 89449

11.　　Plaintiff MANUEL C. CASTILLO, Sr., is a resident of Washoe County, Nevada.

12.　　At all times relevant and material hereto, Plaintiff maintained Plaintiff's primary residence in Washoe County with the legal description of:

LOT 95, IN BLOCK A, OF SPRING VALLEY ESTATES UNIT NO. 4, ACCORDING TO THE MAP THEREOF, FILED IN THE OFFICE OF THE COUNTY RECORDER OF WASHOE COUNTY, STATE OF NEVADA, ON JUNE 14, 1979, AND AMENDED JULY 10, 1980, UNDER FILE NO. 681789, AND AS TRACT MAP NO. 1941.

APN: 162-044-01

HAGER & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

Plaintiff's primary residence as described above is commonly referred to and located at 12590 Stillwater Way, Reno, Nevada 89511.

13.     At all times relevant and material hereto, Plaintiff maintained a second residential property in Washoe County with the legal description of:

> LOT 41 OF EL RANCHO BUENA VISTA UNIT NO. 2, ACCORDING TO THE MAP THEREOF, FILED IN THE OFFICE OF THE COUNTY RECORDER OF WASHOE COUNTY, STATE OF NEVADA, ON MA4 14, 1974, AS TRACT MAP NO. 1473.
> APN: 021-172-13
> Plaintiff's residential property as described above is commonly referred to and

located at 2911 Randolph Court, Reno, Nevada 89502.

14.     Plaintiff KRISZTINA DOMBOVARI is a resident of Washoe County, Nevada.

15.     At all times relevant and material hereto, Plaintiff maintained a residential property in Washoe County with the legal description of:

> LOT 21 IN BLOCK 14 OF HEPPNER SUBDIVISION NO. 4, ACCORDING TO THE MAP THEREOF, FILED IN THE OFFICE OF THE COUNTY RECORDER OF WASHOE COUNTY, STATE OF NEVADA, ON OCTOBER 16, 1958, TRACT MAP NO. 601.
> APN: 080-394-10
> Plaintiff's residential property as described above is commonly

referred to and located at 11675 Fir Drive, Reno, Nevada 89506.

16.     At all times relevant and material hereto, Plaintiff maintained a second residential property in Washoe County with the legal description of:

> LOT 141 IN BLOCK D AS SHOWN ON THE MAP OF SILVER LAKE SUBDIVISION NO. I-B, IN THE OFFICE OF THE COUNTY RECORDER OF WASHOE COUNTY, STATE OF NEVADA, ON UNDER FILE NO. 509016, OFFICIAL RECORDS, AS TRACT MAP NO. 1712. AND AMENDED BY CERTIFICATE OF AMENDMENT, RECORDED APRIL 12, 1978, IN BOOK 1224, PAGE DOCUMENT NO. 525290, OFFICIAL RECORDS.

APN: 554-057-08

Plaintiff's residential property as described above is commonly referred to and located at 6580 Fern Drive, Reno, Nevada 89506.

17.     Plaintiffs, THOMAS G. FILIATREAU and VICKI S. FILIATREAU, are residents of Storey County, Nevada.

18.     At all times relevant and material hereto, Plaintiffs maintained Plaintiffs' primary resident in Storey County, Nevada with the legal description of:

> LOT 418, AS SHOWN ON THAT CERTAIN DIVISION OF LAND MAP RECORDED AUGUST 1, 1978, AS DOCUMENT NO. 42452, OFFICIAL RECORDS OF STOREY COUNTY, STATE OF NEVADA, AND AS SHOWN UPPON THAT CERTAIN RECORD OF SURVEY MAP RECORDED ON OCTOBER 24, 1978, AS DOCUMENT NO. 42925, OFFICIAL RECORDS OF STOREY COUNTY, NEVADA, COMMONLY REFERRED TO AS HIGHLAND RANCHES.

APN: 003-371-08

Plaintiffs' primary residence as described above is commonly referred to and

located at 4180 Frying Pan Road, Reno, Nevada 89521.

19.     Plaintiff, OSCAR G. CORTEZ, is a resident of Washoe County, Nevada.

20.     At all times relevant and material hereto, Plaintiff maintained Plaintiff's primary residence in Washoe County with the legal description of:

> LOT 47 BLOCK B AS SET FORTH ON THE MAP OF NORTHSIDE VILLAGE SUBDIVISION, FILED FOR RECORD IN THE OFFICE OF THE COUNTY RECORDER OF WASHOE COUNTY, NEVADA, ON AUGUST 2, 1996, AS FILE NO. 2018055, OFFICIAL RECORDS.

APN: 502-052-18

Plaintiff's primary residence described above is commonly referred to

and located at 1376 Lynx Street, Reno, Nevada 89506.

21.     Plaintiff, CARLEEN HARMON, is a resident of Washoe County, Nevada.

HAGER & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

HAGER & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

22.    At all times relevant and material hereto, Plaintiff had maintained her residence in Washoe County, Nevada with the legal description of:

LOT 15-99 OF THE FOOTHILLS AT WINGFILED VILLAGE 15B, ACCORDING TO THE MAP THEREOF, IN THE OFFICE OF THE COUNTY RECORDER OF WASHOE COUNTY, STATE OF NEVADA, ON APRIL 13, 2005, AS FILE NO. 3197697, TRACT MAP NO. 4466.

APN No. 526-222-22

Plaintiff's primary residence as described above is commonly referred to and located at 3687 Allegrini Drive, Sparks, Nevada 89436.

23.    Plaintiff ROBB C. KELLEY is a resident of Washoe County, Nevada.

24.    At all times relevant and material hereto, Plaintiff maintained Plaintiff's primary residence in Washoe County, Nevada with the legal description of:

LOT 1103, OF ARROWCREEK UNIT 11, ACCORDING TO THE MAP THEREOF NO. 3691, FILED IN THE OFFICE OF THE COUNTY RECORDER OF WASHOE COUNTY, STATE OF NEVADA, ON MAY 21, 1999 AS DOCUMENT NO. 2342871, OF OFFICIAL RECORDS.

APN: 152-215-03

Plaintiff's primary residence as described above is commonly referred to and located at 490 Tularosa Court, Reno, Nevada 89511.

25.    Plaintiffs TIMOTHY L. KING and CAROL A. KING are residents of Douglas County, Nevada.

26.    At all times relevant and material hereto, Plaintiffs maintained a primary residence in Douglas County, Nevada with the legal description of:

LOT 39 OF THE GARNERVILLE RANCHOS #5 SUBDIVISON, ACCORDING TO THE MAP THEREOF, FILED IN THE OFFICE OF THE COUNTY RECORDER OF DOUGLAS COUNTY, STATE OF NEVADA, ON SEPTEMBER 27, 1985, AS MAP NO: 66512.

APN NO. 1220-22-210-016

Plaintiffs' primary residence as described above is commonly referred to and located at 738 Lassen Way, Gardnerville, Nevada 89460.

27.    Plaintiffs MARGARITA LARKINS and JOHN E. LARKINS and GABRIEL LARKINS are residents of Washoe County, Nevada.

28.    At all times relevant and material hereto, Plaintiffs maintained Plaintiffs' primary residence in Washoe County with the legal description of:

LOT 9 IN BLOCK 1 AS SHOWN ON THE AMENDED MAP OF EVAN'S N.E. ADDITION, ACCORDING TO THE MAP THEREOF; FILED IN THE OFFICE OF THE COUNTY RECORDER OF WASHOE COUNTY, STATE OF NEVADA, ON JUNE 26, 1906, AS FILE NO. 1121, AND AS TRACT MAP 23.

APN: 007-231-05

Plaintiffs' primary residence described above is commonly referred to and located at 330 East 7th Street, Reno, Nevada 89512.

29.    Plaintiff GABRIEL LARKINS is a resident of Washoe County, Nevada.

30.    At all times relevant and material hereto, Plaintiff maintained Plaintiff's brother's primary residence in Washoe County with the legal description of:

LOT 12 IN BLOCK 2OF HUYCK SUBDIVISION , SPARKS, NEVADA, ACCORDING TO THE MAP THEREOF, FILED IN THE OFFICE OF THE COUNTY RECORDER OF WASHOE COUNTY, STATE OF NEVADA, ON MAY 31, 1946, AS FILE NO. 141809, AND, AS TRACT NO. 300.

APN: 033-165-19

Plaintiff's brother's primary residence described above is commonly referred to and located at 421 G Street, Sparks, Nevada 89431.

31.    Plaintiff JOSE LOPEZ is a resident of Washoe County, Nevada.

HAGER & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

32.     At all times relevant and material hereto, Plaintiff maintained Plaintiff's primary residence in Washoe County with the legal description of:

LOT 9 IN BLOCK 39 OF SUBDIVISION OF LOTS 6 AND 7 OF THE PRATER ADDITION TO SPARKS, WASHOE COUNTY, NEVADA, ACCORDING TO THE OFFICIAL MAP THEREOF, FILED IN THE OFFICE OF THE COUNTY RECORDER OF WASHOE COUNTY, STATE OF NEVADA, ON APRIL 24, 1923.

APN: 031-360-15

Plaintiff's primary residence described above is commonly referred to and located at 642 15th Street, Sparks, Nevada 89431.

33.     Plaintiffs, DAVID A. MAHLIN and SANDRA C. MAHLIN, are residents of Washoe County, Nevada.

34.     At all times relevant and material hereto, Plaintiffs maintained Plaintiff's primary resident in Washoe County with the legal description of:

LOT 303 OF TRIPLE CROWN SUBDIVISION UNIT 3, ACCORDING TO THE MAP THEREOF, FILED IN THE OFFICE OF THE COUNTY RECORDER OF WASHOE COUNTY, STATE OF NEVADA, ON FEBRURARY 16, 1996, AS FILE NO. 1969019, TRACT MAP NO. 3215 AND AMENDED BY CERTIFICATE OF AMENDMENT RECORDERED ON OCTOBER 25, 1996 IN BOOK 4705, PAGE 925 AS DOCUMENT NO. 2042545 OF OFFICIAL RECORDS.

APN: 516-121-03

Plaintiff's primary residence as described above is commonly referred to and located at 4976 Lorenzo Court, Sparks, Nevada 89436.

35.     Plaintiffs DENISE A. MENDOZA and GUILLERMO A. MENDOZA, JR. are residents of Washoe County, Nevada.

36.     At all times relevant and material hereto, Plaintiffs maintained Plaintiffs' primary residence in Washoe County with the legal description of:

LOT 8, IN BLOCK H, OF SPRING CREEK SUBDIVISION-UNIT 2H, AS SHOWN ON THE OFFICIAL MAP THEREOF, FILED IN THE OFFICE OF THE COUNTY

HAGER & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

RECORDER OF WASHOE COUNTY, STATE OF NEVADA, ON OCTOBER 7, 1994, AS FILE NO. 1839681, AND TRACT MAP N0. 3087.

APN: 083-871-20.

Plaintiffs' primary residence described above is commonly referred to and located at 10 Sage Creek Court, Sparks, Nevada 89436.

37.    Plaintiff DOUGLAS B. MOORE is a resident of Washoe County, Nevada.

38.    At all times relevant and material hereto, Plaintiff maintained Plaintiff's primary residence in Washoe County with the legal description of:

LOT 5 IN BLOCK G OF SIERRA VIEW SUBDIVISION, WASHOE COUNTY, NEVADA, ACCORDING TO THE MAP THEREOF, FILED IN THE OFFICE OF THE COUNTY RECORDER OF WASHOE COUNTY, STATE OF NEVADA, ON DECEMBER 30, 1947, AS DOCUMENT NO, 159202, AND AS TRACT MAP NO. 402.

APN: 010-134-07

Plaintiff's primary residence described above is commonly referred to and located at 655 Georgia Place, Reno, Nevada 89509-1234.

39.    Plaintiff DOUG MOREAU is a resident of Washoe County Nevada.

40.    At all times relevant and material hereto, Plaintiff was a resident of both properties in Washoe County in that he and his business partner used both homes for a residence with legal descriptions of:

LOT 55 OF HARBOUR COVE SUBDIVISION, ACCORDING TO THE MAP THEREOF NO. 3960, FILED IN THE OFFICE OF THE COUNTY RECORDER OF WASHOE COUNTY, STATE OF NEVADA ON JUNE 08, 2001 AS DOCUMENT NO. 2562095 OF OFFICIAL RECORDS.

APN: 037-341-05

Plaintiff's residence as described above is commonly referred to and located at 1117 Harbour Cove Court, Sparks, Nevada 89434.

LOT 42 OF HARBOUR COVE SUBDIVISION, ACCORDING TO THE MAP THEREOF NO. 3960, FILES IN THE OFFICE OF THE COUNTY RECORDER OF

HAGER & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

WASHOE COUNTY, STATE OF NEVADA, ON JUNE 08, 2001 AS DOCUMENT NO. 2562095 OF OFFICIAL RECORDS.

APN: 037-341-18

Plaintiff's residence as described above is commonly referred to and located at 1169 Harbour Cove Court, Sparks, Nevada 89434.

41. Plaintiffs, DALE W. PETERSON and JERI S. PETERSON, are residents of Douglas County, Nevada.

42. At all times relevant and material hereto, Plaintiffs had a primary residence in Douglas County, Nevada with the legal description of:

LOT 91 OF THE GARNERVILLE RANCHOS #5 SUBDIVISION ACCORDING TO THE MAP THEREOF, FILED IN THE OFFICE OF THE COUNTY RECORDER OF DOUGLAS COUNTY, STATE OF NEVADA, ON JUNE 3, 1998, AS MAP NO: 50056.

APN NO. 1220-22-110-142

Plaintiff's primary residence as described above is commonly referred to and located at 1426 Shasta Drive, Gardnerville, Nevada, 89460.

43. Plaintiff, BRET E. RIGGS, is a resident of Washoe County, Nevada.

44. At all times relevant and material hereto, Plaintiff maintained Plaintiff's primary residence in Washoe County with the legal description of:

LOT 108 OF DOUBLE DIMOND RANCH VILLAGE 29A, A PLANNED UNIT DEVELOPMENT, ACCORDING TO THE MAP THEREOF NO. 4132, FILED IN THE OFFICE OF THE COUNTY RECORDER OF WASHOE COUNTY, STATE OF NEVADA, ON OCTOBER 29, 2002 AS DOCUMENT NO. 2754544 OF OFFICIAL RECORDS.

APN: 161-134-36

Plaintiff's primary residence as described above is commonly referred to and located at 9579 Mammoth Court, Reno, Nevada 89521.

HAGER & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

45.     Plaintiffs STEVEN A. STAPLETON and SHANDALE R. STAPLETON are residents of Lyon County, Nevada.

46.     At all times relevant and material hereto, Plaintiffs maintained Plaintiffs' primary residence in Lyon County with the legal description of:

> LOT 42 AS SHOWN ON THE FINAL MAP OF COUNTRY RANCH II SUBDIVISION, RECORDED IN THE OFFICIAL RECORDS OF LYON COUNTY, NEVADA, ON APRIL 23, 2004, AS DOCUMENT NO. 319040.
> APN: 022-102-01
> Plaintiffs' primary residence described above is commonly referred to and located

at 1241 Red Rock Road, Fernley, Nevada 89408.

47.     Plaintiffs JAIME ZAMORANO and NANCY QUINTERO-OROZCO are residents of Washoe County, Nevada.

48.     At all times relevant and material hereto, Plaintiffs maintained Plaintiffs' primary residence in Washoe County with the legal description of:

> LOT 210 OF PEEK PARCEL UNIT 1, PHASE 3, ACCORDING TO THE MAP THEREOF, FILED IN THE OFFICE OF THE COUNTY RECORDER OF WASHOE COUNTY, STATE OF NEVADA, ON AUGUST 3, 2004 AS FILE NO. 3078053, TRACT MAP 4371.
> APN: 080-841-06
> Plaintiffs' primary residence described above is commonly referred to and located

at 7772 Tulear Street, Reno, Nevada 89506.

49.     Defendant CITIMORTGAGE, INC., was a New York corporation doing business in Nevada and, at all times material hereto, was a member in the MERS system described herein and a principal shareholder of MERS.

50.     Defendant MERSCORP, INC. was a Virginia corporation and doing business in the State of Nevada through its division or subsidiary, Defendant MERS, Inc., a

HAGER & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

HAGER & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

Delaware corporation.  Upon information and belief, MERSCORP, INC., was a director of MERS, INC.  Defendants MERSCORP, INC., and MERS, Inc. are hereinafter collectively referred to as "MERS.

51.  Defendant UNITED GUARANTY CORPORATION ("AIG") was a foreign corporation and, at all times material hereto, a creator, originator, and shareholder of MERS and/or a member of the MERS system described herein.  Upon information and belief United Guaranty Corporation has, through its agents and employees, a chartered seat on the MERS board of directors.

52.  Defendant AMERICAN HOME MORTGAGE SERVICING, INC., aka AMERICAN SERVICING COMPANY, is a foreign corporation.

53.  Defendant AURORA LOAN SERVICES, LLC  dba AURORA HOME LOANS dba AURORA HOME MORTGAGE is a foreign corporation.

54.  Defendant BANK OF AMERICA, N.A. was a foreign corporation doing business in Nevada, and is a successor in interest to Countrywide Home Loans, Inc. and/or acquired Countrywide Home Loans, Inc., and its affiliates and subsidiaries, for the purpose of funding and/or managing the ongoing business activities of Countrywide Home Loans, Inc.  Upon information and belief BANK OF AMERICA also does business as LASALLE BANK which is wholly owned by BANK OF AMERICA.  Upon information and belief, Defendant Bank of America, N.A., at all times material hereto, was a member of the MERS system described herein.

55.  Defendant J.P. MORGAN CHASE BANK, N.A. was a New York corporation doing business in Nevada and, at all times material hereto, was a member in the MERS system described herein.  Upon information and belief, J.P. Morgan Chase Bank, N.A.,

HAGER & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

through its division, affiliate or subsidiary, Chase Home Mortgage Corporation of the Southeast, was a creator, originator, and member in MERS, and through its employees or agents employed by its affiliate, J.P. Morgan Chase Co., has a chartered seat on the MERS board of directors.

56.     Defendant COUNTRYWIDE HOME LOANS, INC. ("Countrywide") was a New York corporation authorized to do business in and doing business in Nevada and at all times material hereto was a member of the MERS system described herein and a creator, originator and principal shareholder in MERS and is now wholly owned by Bank of America.

57.     Defendant CR TITLE SERVICES, CO. is a foreign corporation.

58.     Defendant FEDERAL HOME LOAN MORTGAGE ASSOCIATION (hereinafter referred to as "Freddie Mac") is a Virginia corporation doing business in Nevada, and is a creator, originator, and principle shareholder in MERS.    Upon information and belief, Freddie Mac has, through its agents and employees, a chartered seat on the MERS board of directors.

59.     Defendant FEDERAL NATIONAL MORTGAGE ASSOCIATION (hereinafter referred to as "Fannie Mae") is a District of Columbia corporation doing business in Nevada and, at all times material hereto, is, a creator, originator, and shareholder of MERS and a member of the MERS system described herein.    Upon information and belief, Defendant Fannie Mae has, through its agents and employees, a chartered seat on the MERS board of directors.

60.     Defendant QUALITY LOAN SERVICE CORP. is a foreign corporation registered to do business in the State of Nevada.

HAGER & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

61.     Defendant GE MONEY BANK was an Ohio corporation and was a member of the MERS system described herein.

62.     Defendant GMAC MORTGAGE, L.L.C. was a Delaware corporation doing business in Nevada and, at all times material hereto, was a member of the MERS system described herein.     Upon information and belief, Defendant GMAC Mortgage, L.L.C., through its affiliate or subsidiary, GMAC Residential Funding Corp., was a creator, originator, and shareholder in MERS, and through its employees or agents employed by its division, affiliate or subsidiary, GMAC Residential Holding Corp., has a chartered seat on the MERS board of directors.

63.     Defendant HSBC MORTGAGE CORPORATION, U.S.A. was a Delaware corporation and, at all times material hereto, was a member of the MERS system described herein. Upon information and belief, HSBC Mortgage Corporation, through its affiliate or subsidiary HSBC Finance Corp., was a creator, originator, and principal shareholder of MERS.

64.     Defendant MIDLAND MORTGAGE is a foreign corporation with offices in Oklahoma City.

65.     Defendant NATIONAL CITY MORTGAGE, a division of National City Bank, was a foreign company doing business in Nevada, and, at all times material hereto was a member of the MERS system described herein.  Upon information and belief, Defendant National City Mortgage, through its agents and employees, has a chartered seat on the MERS board of directors.

66.     Defendant NATIONAL CITY CORPORATION (hereinafter "National City Corp.") is a Delaware corporation wholly owned by PNC pursuant to a merger

consummated in or around December 31, 2008, and is or was a member of the MERS system described herein.

67.     Defendant NATIONAL CITY BANK (hereinafter "National City Bank") is an Ohio corporation wholly owned by PNC pursuant to a merger consummated in or around December 31, 2008, and is or was a member of the MERS system described herein.

68.     Defendant NATIONAL DEFAULT SERVICING is a foreign corporation.

69.     Defendant PNC FINANCIAL SERVICES GROUP, INC., (hereinafter "PNC") is a Pennsylvania corporation and the parent company of National City Corporation, Inc. pursuant to a merger consummated in or around December 31, 2008.  Upon information and belief, PNC is or was a member of the MERS system described herein.

70.     Defendant RECONTRUST COMPANY is a foreign corporation not registered to do business in the State of Nevada, but is the company that forecloses for Countrywide Home Loans, Inc.

71.     Defendant BANK OF NEW YORK MELLON doing business as BANK OF NEW YORK is a foreign corporation.

72.     Defendant WELLS FARGO BANK, N.A. was a California corporation.

73.     Defendant WELLS FARGO BANK, N.A. was a California corporation doing business in Nevada as Wells Fargo Home Equity and as Wells Fargo Home Mortgage, a Division of Wells Fargo Bank, N.A., and, at all times material hereto, was a member of the MERS system described herein and a creator, originator, and shareholder of MERS.

74.     Defendant HOUSEKEY FINANCIAL CORPORATION was a foreign corporation.

HAGER & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

**HAGER & HEARNE**
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

75.     Defendant FIDELITY NATIONAL TITLE INSURANCE COMPANY was a foreign corporation.

76.     Defendant MIDFIRST BANK was a foreign corporation.

77.     Defendant NDEX WEST, L.L.C., was a foreign corporation.

78.     Defendants Countrywide Home Loans, Inc., and Bank of America, N.A. acted as lenders in the transactions referred to herein and are hereinafter referred to collectively as "Lenders" or "Lender defendants."

79.     Defendants J.P. Morgan Chase, Wells Fargo Bank, N.A., Bank of America, HSBC Mortgage Corporation, U.S.A., GMAC Mortgage, L.L.C., PNC Financial Services Group, Inc., National City Corporation, National City Mortgage, National City Bank, Countrywide Home Loans, Inc., CitiMortgage, Housekey Financial Corporation, Midfirst Bank, NDEX West, LLC, and GE Money Bank acted as Securitizers of the loans made by Lenders named herein and are hereinafter referred to as "Securitizers" or "Securitizer defendants."

80.     Defendants Aurora Loan Services, LLC, dba Aurora Home Loans dba Aurora Home Mortgage, Bank of America, Bank of America, Central Mortgage Company,  J.P. Morgan Chase, NA dba Chase Home Finance, LLC, dba Chase Mortgage, CitiMortgage, Inc., Countrywide Home Loans, Inc., GMAC Mortgage, L.L.C., Midland Mortgage, Wells Fargo Bank, N.A. dba America's Servicing Company, and acted as Servicers of the loans made to Plaintiffs by Lenders and are hereinafter referred to as "Servicers" or "Servicer defendants."

81.     Defendants C.R. Title Services, Inc., National Default Servicing Corporation, Quality Loan Service Corp., and ReconTrust Company, and upon information and belief

Fidelity National Title Insurance Company acted as foreclosing entities or trustees against the residential property of the Plaintiffs and are hereinafter referred to as "Foreclosers."

## **GENERAL ALLEGATIONS**

82.   In the United States, home purchases are typically financed by mortgages or loans that are secured by a deed of trust and a note which, when executed on behalf of the same entity and held by the same entity as a "note and deed of trust," entitle the holder of the note and deed of trust to foreclose on the property of the borrower if the borrower is in default without legal excuse or recourse.

83.   A reported 3 million foreclosures occurred in the U.S. in 2008.  Foreclosures to date during calendar year 2009 are at a higher rate than that which occurred during 2008, with 1 in 16 homes in the State of Nevada going into foreclosure during the first six months of 2009.

84.   From 2003 through 2008, the Defendants entered into mortgages with deeds of trust and notes that were separated after the execution of the mortgage, the note was sold to an investor who literally and actually provided the funds for the loan given to the borrower.  Prior to or immediately after the contract was signed by the borrower, the note was funded by a party other than the originator or servicer of the loan.

85.  Plaintiffs separately executed deeds of trust naming MERS as the beneficiary and/or nominee of the beneficiary/lender.

86.    Plaintiffs also separately executed notes payable to Lenders as alleged herein.  None of the notes contained any reference to MERS.

87.    The notes and the deeds of trust require that payment be made to the Lender, not to MERS.

HAGER & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

**HAGER & HEARNE**
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

88.     The notes executed by Plaintiffs were separated from the deeds of trust after the execution by Plaintiffs of those documents, with the note being transferred to investors whose money had funded the loan taken out by the Plaintiff/borrower.

89.     The Servicer defendants herein furnished none of the funding for the loans but were merely transfer agents for money from the investors to loans taken by the borrowers.  Simultaneously with or immediately after the loan was taken out by the borrower, the obligation reflected by the note was satisfied by monies provided by the investor who then obtained ownership of and right to payment under the terms of the note.  These investors are the only parties to whom an obligation arose after the loans were securitized, and are the only proper parties to later declare a default and to have a right to direct a sale if the Plaintiffs did not make payments as required under the terms of the note.

90.     The Mortgage Electronic Registration Service was created by the Defendants identified herein as co-conspirators in relation to the MERS system with the specific intent that MERS, Inc. or MERSCORP, Inc. or MERS (referred to collectively herein as "MERS") would be named the beneficiary and/or as the nominee of the lender on the deeds of trust which Plaintiffs were induced into signing.  However, MERS was not a nominee for the lender because the lender was an investor who had provided the funds for the loan.  This fact was known to MERS and the purported lender and the subsequent assignee of any and all rights purported to have been assigned by MERS at the time the note and deed of trust were signed by the Plaintiffs and at the time of each and every such later purported assignment by MERS of any interest in the note and deed of trust.

91.     The foreclosures complained of herein were initiated against Plaintiffs by parties who have and had no standing to commence or maintain any foreclosure

**HAGER & HEARNE**
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

proceeding, both by the express language of the deeds of trust which required that the beneficiary/party owed the obligation declare the default and direct the sale, and by the laws governing the commencement and advancement of foreclosure proceedings which require the true beneficiary to declare such default and direct such sale.

92.  When the Borrower/Plaintiffs did not pay the payments agreed in the "Note," the unknown party caused a trustee to notice the obligor of the default and intent to sell under Nevada law.  Plaintiffs, however present in the case at bar, and similar to challenges in other cases that:  "MERS does not have standing merely because it is the alleged beneficiary under the Deed of Trust.  It is not a beneficiary and, in any event, the mere fact that an entity is a named beneficiary of a Deed of Trust is insufficient to enforce the obligation.  As noted in the causes of action noticed herein, the Deed of Trust attempts to name MERS as both a beneficiary and a nominee.  The document first says this:  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.  MERS is the beneficiary under this Security Instrument.  And later is says this:  The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lenders successors and assigns) and the successors and assigns of MERS.  Yet, as noted above:  "MERS Terms and Conditions:"  MERS shall serve as mortgagee of record with respect to all such mortgage loan solely as a nominee, in an administrative capacity, for the beneficial owner or owners thereof from time to time.  MERS shall have no rights whatsoever to any payments made on account of such mortgage loans, to any servicing rights related to such mortgage loans, or to any mortgaged properties securing such mortgage loans.  MERS agrees not to assert any rights (other than rights specified in the Governing Documents) with respect to such mortgage loans or mortgaged properties.  References herein to "mortgage(s)" and "mortgagee of record" shall include deed(s) of

**HAGER & HEARNE**
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

trust and beneficiary under a Deed of Trust and any other form of security instrument under applicable State law.

93. Defendants' use of MERS, created the method to defraud the Home Purchaser because MERS was not the holder of the Note and MERS was not a transferee in possession who was entitled to the rights of a holder or had authority under State law to act for the holder.

94. The servicers of the loans, named as Servicer defendants herein, were strangers to the purported loan transactions and which parties were and are unknown to Plaintiffs and, moreover, did not fund the Plaintiffs' loans and are not owed any of the funds to be repaid by Plaintiffs, and do not stand to suffer any loss should they be enjoined from foreclosing on the Plaintiffs' homes or from selling the alleged REO's at issue herein.

95. The foreclosures named as Forecloser Defendants herein, on Plaintiffs' homes complained of herein were initiated by Forecloser Defendants, who had and have no lawful right to initiate, advance or maintain any foreclosure action against the Plaintiffs or their homes.

96. All Defendants knew or should have known that prior to the time that the loans were taken out by Plaintiffs at issue herein, the loans which named MERS on the deeds of trust were securitized or intended to be securitized prior to the preparation of the notes and deeds of trust reflecting each such loan.

97. Defendants also knew or should have known that the scheme employed by all Defendants involved in the origination, aggregation and securitization of mortgage-backed loans originated from 2003 through 2008 and secured by real property in the United States included financial incentives which were designed to result in the loans

HAGER & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

being written on terms which were likely or certain to result in foreclosure, and that the scheme described herein included financial incentives designed to motivate appraisers, mortgage brokers, lenders, aggregator banks and securitizing banks to steer borrowers into loans they could not afford and could not repay so that the loans would go into default and the Defendants involved in servicing, aggregating and securitizing those loans could make yet more profits from default, foreclosure and selling the properties at or after foreclosure.

98.   The financial incentives mentioned in the previous paragraphs included without limitation the hiring only of appraisers who were financially incentivized to appraise properties at a value that would justify the loan requested, the payment to mortgage brokers of higher fees for sub-prime and sub-sub-prime loans than for prime loans and the use of novel and unprecedented underwriting criteria such as stated income and 100% or more financing of the purchase price, and the purchase of loans from lenders by aggregators and servicers of loans at more than face value if the loans were sub-prime or sub-sub-prime and in particular if such loans also included an adjustable interest rate and/or a pre-payment penalty.

99.   All Defendants who originated, serviced, aggregated and/or securitized the Plaintiffs' loans knew or should have known at the time of those actions by Defendants that the financial incentives described in the previous paragraph herein were not disclosed to the investor or to the Plaintiffs/borrowers, and that the Defendants who originated, serviced, aggregated and/or securitized the Plaintiffs' loans also purchased credit default swaps which were essentially bets that the Plaintiffs' loans would fail, resulting in multiple payments to those Defendants of the face amount of the loan, and knew or should have known that fact was also concealed from the investors and Plaintiffs

1   who were instead intentionally misled by Defendants to believe that the Plaintiffs

2   qualified for the loans under residential loan underwriting standards previously used in

3   the industry.

4       100.  All Defendants who originated, serviced, aggregated and/or securitized the

5   Plaintiffs' loans knew or should have known at the time of those actions by Defendants

6   that the more likely or certain the loan was to fail, the more likely that failure was to cause

7   the entire mortgage-backed security pool which included Plaintiffs' loan to fail, and the

8   more profitable those events would be to Defendants.

9       101.  Under the securities and federal banking laws, rules and regulations, the

10  investors and the borrowers were entitled to information regarding all of the profits,

11  payments, kick-backs, fees and insurance and credit default swaps related to the

12  transaction which included the investors providing the funds loaned to the borrower, and

13  the concealment of those facts by all the Defendants who originated, serviced, aggregated

14  and/or securitized the Plaintiffs' loans was an intentional misrepresentation and/or

15  intentional material omission of fact by those Defendants for the purpose of using the

16  borrowers' signatures on notes and deeds of trust to defraud the investors, the borrowers,

17  the insurers of loans, the issuers of credit default swaps and eventually the government

18  whom those Defendants, upon information and belief, falsely told that the Defendants

19  were in dire need of trillions of dollars in federal funds due to "toxic assets" being

20  allegedly on the books of Defendants.

21      102.  The Defendants named as conspirators herein never owned any of the

22  Plaintiffs' loans or the loans of others similarly situated naming MERS as beneficiary, and

23  the representations from September 2008, to the present, by the Bank Defendants to the

24  government that those Defendants were in dire need of government bailout funds from

25

**HAGER & HEARNE**
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

**HAGER & HEARNE**
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

the Department of Treasury and the Federal Reserve due to defaults on mortgage loans were intentional falsehoods designed to defraud the government and the American taxpayers.

103.    All Defendants participated in a conspiracy to cause Plaintiffs to enter into instruments that would result in the foreclosure of their homes and to initiate foreclosure on Plaintiffs' homes without the lawful right to do so or to commence and advance foreclosures against Plaintiffs with knowledge that the Plaintiffs had been deceived by having not been informed that the loans they took out were designed and  intended to result in foreclosure and consequently more profits to the Defendants.  As a proximate and direct result, Defendants have been unjustly enriched by the payments of the Plaintiffs on the notes and by the profits earned by Defendants from the declaration of default, the commencement and advancement of foreclosure, and/or the foreclosure sale of Plaintiffs' properties.

104.    The lenders and investors in mortgage-backed securities, the Defendants Lenders and Securitizers previously named herein, have obtained bailout money from the United States Treasury and the Federal Reserve in the amount of trillions of dollars for the stated purpose of compensating the lenders and investors for losses sustained due to the alleged default in on residential mortgage loans including those of Plaintiffs.

105.   The lenders as referred to above  and investors in mortgage-backed securities, including, have used those funds to repay credit default swaps, to repay investors who funded Plaintiffs' loans and/or to settle the lawsuits of those investors against the securitizing banks for fraud, including those Defendants previously named as securitizers and servicers, with such use of those funds having extinguished the obligation

reflected by the notes, the right to collect on the notes, and the right to initiate

foreclosures on Plaintiffs' homes.

106.   Each and every Plaintiff has a deed of trust that states that the beneficiary

and/or beneficiary as the nominee of the lender is MERS, and each and every Plaintiff has

been or is likely to be declared in default by a party not entitled to declare the default.

107.   The entities that are giving notice that they will foreclose on the homes of the

Plaintiffs are not MERS and are not the lenders that originated the deeds of trust and are

not the parties that funded the loans of the Plaintiffs.

### **Facts as to the Plaintiffs whose residential properties are now Bank REO's**

108.   Plaintiff, KRISZTINA DOMBOVARI, has a deed of trust that state that the

beneficiary or/ beneficiary as the nominee of the lender is MERS.

a.      Krisztina Dombovari executed a Deed of Trust dated November 12,

2003 in the amount of $88,000.00 related to the residential property at 6580 Fern

Drive, Reno, Nevada, which listed Sierra Pacific Mortgage Company, Inc. as Lender

and MERS as the beneficiary.

b.      Krisztina Dombovari also executed a Deed of Trust dated July 26,

2005 in the amount of  $208,000.00 related to the residential property at 11675

Fir Drive, Reno, Nevada, which listed Market Street Mortgage Corporation as

Lender and MERS as the beneficiary.  The Deed of Trust was supplemented by an

adjustable rate rider providing for an initial interest rate of 6.8750%, set to adjust

on August 1, 2010 by adding 2.25% to the Current Index every sixth month

thereafter.

**(Facts as to all other Plaintiffs) JOSEPH GREEN, DAVID A. BARRON and**

**MARCELLA A. BARRON, JOHN S. BENSON, MANUEL C. CASTILLO, SR.,**

**HAGER & HEARNE**
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

**OSCAR G. CORTEZ, THOMAS G. FILIATREAU and VICKI S. FILLIATREAU, GUSTAVO GARCIA, CARLEEN HARMON, ROBB C. KELLEY, TIMOTHY L. KING and CAROL A. KING, MARGARITA LARKINS and JOHN E. LARKINS, GABRIEL LARKINS, JOSE LOPEZ, DAVID A. MAHLIN and SANDRA C. MAHLIN, DENISE A MENDOZA and GUILLERMO A. MENDOZA, JR., DOUGLAS B. MOORE, DOUG MOREAU, DALE W. PETERSON and JERI S. PETERSON, NANCY QUINTERO-OROZCO and JIME ZAMORANO, BRET E. RIGGS, STEVEN A. STAPLETON and SHENDALE R. STAPLETON.)**

109.    The Plaintiffs named just above have deeds of trust with MERS named as the beneficiary or the nominee for the lender as follows:

a.    David A. Barron and Marcella A. Barron executed a Deed of Trust dated August 29, 2003 in the amount of $209,859.00 related to the Barron residence at 329 Torrey Pines Drive, Dayton, Nevada which listed GMAC Mortgage Corporation as Lender and which listed MERS as the beneficiary.  On June 16, 2009, MERS assigned its purported beneficial interest in the deed of trust to Midfirst Bank by recording an Assignment of Deed of Trust with the Lyon County Recorder.  Subsequently, Midfirst Bank designated NDEx West, LLC as trustee by recording a Substitution of Trustee with the Lyon County Recorder on July 7, 2009.

b.    Manuel Castillo executed a Deed of Trust dated May 17, 2006 in the amount of $324,000.00 related to the residential property at 2911 Randolph Court, Reno, Nevada, which listed Lime Financial Services, Ltd. as Lender and MERS as the beneficiary.  The Deed of Trust was supplemented by an adjustable rate rider in which the interest rate would change on June 1, 2008 and increase by an addition

HAGER & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

of 6.5% percentage points to the Current Index every sixth month thereafter. The note was also supplemented with a balloon rider.

c.      Manuel Castillo executed a Deed of Trust dated May 23, 2006 in the amount of $440,000.00 related to the Castillo residence at 12590 Stillwater Way, Reno, Nevada, which listed Mortgage Lenders Network USA, Inc. as Lender and MERS as the beneficiary. The Deed of Trust was supplemented by an adjustable rate balloon rider over a 30-year term with an initial interest rate of 8.75%, set to change on June 1, 2008 and increase every sixth month thereafter by an additional 6.25% to the Current Index.

d.      Gustavo Garcia, Jr. executed a Deed of Trust dated December 14, 2005 in the amount of $167,475.00 related to the Garcia residence at 1941 Citron Street, Reno, Nevada which listed community Lending, Incorporated as Lender and MERS as the beneficiary.

e.      Kristal Gonzalez and Oscar Cortez executed a Deed of Trust dated February 25, 2003 in the amount of $100,000.00 related to the residence at 1376 Lynx Street, Reno, Nevada which listed SecurityNational Mortgage Company as Lender and which listed MERS as the beneficiary. Ms. Gonzalez and Mr. Cortez also executed a second Deed of Trust dated February 25, 2003 in the amount of $18,700.00 listing SecurityNational Mortgage Company as Lender and listing MERS as the beneficiary. The deeds of trust were entered to secure loans to purchase the Gonzalez/Cortez residence described herein.

f.      Margarita Larkins, John E. Larkins, and Gabrial Larkins executed a Deed of Trust dated October 26, 2006 in the amount of $229,000.000 related to the Larkins residence at 330 East 7th Street, Reno, Nevada which listed First Magnus Financial Corporation as Lender and MERS as the beneficiary.

HAGER & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

g.      Gabriel Larkins also executed a Deed of Trust dated July 15, 2005 in the amount of 183,960.00 related to the Larkins residence at 421 G Street, Sparks, Nevada, which listed Ownit Mortgage Solutions, Inc. as Lender and MERS as the beneficiary.  Mr. Larkins also executed a second Deed of Trust dated July 15, 2005 in the amount of $45,990.00 listing Ownit Mortgage Solutions, Inc. as Lender and MERS as the beneficiary.  The deeds of trust were entered to secure loans to purchase the Larkins residence described herein.

h.      Jose Lopez executed a Deed of Trust dated September 29, 2005 in the amount of $147,000.00 related to the Lopez residence at 642 15th Street, Sparks, Nevada, which listed American Home Mortgage Acceptance, Inc. as Lender and MERS as the beneficiary.

i.      Denise A. Mendoza and Guillermo A. Mendoza, Jr. executed a Deed of Trust dated January 5, 2006 in the amount of $264,968.00 related to the Mendoza residence at 10 Sage Creek Court, Sparks, Nevada, which listed New Freedom Mortgage Corporation as Lender and MERS as the beneficiary.

j.      Douglas B. Moore executed a Deed of Trust dated July 25, 2007 in the amount of $244,500.00 related to the Moore residence at 655 Georgia Place, Reno, Nevada, which listed Countrywide Bank, FSB as Lender and MERS as the beneficiary.

k.      Steven A. Stapleton and Shandale R. Stapleton executed a Deed of Trust dated October 27, 2005 in the amount of $356,500.00 related to the Stapleton residence at 1241 Red Rock Road, Fernley, Nevada, which listed MILA, Inc. as Lender and MERS as the beneficiary.

l.      Jaime Zamorano and Nancy Quintero-Orozco executed a Deed of Trust dated July 8, 2005 in the amount of $211,612.00 related to the

HAGER & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

Zamorano/Quintero-Orozco residence at 7772 Tulear Street, Reno, Nevada, which listed Accredited Home Lenders, Inc. as Lender and MERS as the beneficiary. The Deed of Trust was supplemented by an interest only adjustable rate rider with an initial interest rated of 6.990%. Mr. Zamorano and Ms. Quintero-Orozco also executed a second Deed of Trust in the amount of $52,903.00 listing Accredited Home Lenders, Inc. as Lender and MERS as the beneficiary. The deeds of trust were entered to secure loans the purchase the Zamorano/Quintero-Orozco residence described herein.

m. NDEx West, L.L.C. issued a Notice of Breach and Election to Sell Under Deed of Trust against the Barron residence on May 6, 2009, which was recorded with the Lyon County Recorder on May 6, 2009. The Notice indicates that if the default is not cured by June 10, 2009, the property may thereafter be sold.

n. National Default Servicing Corporation issued a Notice of Default and Election to Sell Under Deed of Trust against the Plaintiff Castillo's residential property on October 10, 2007, which was recorded with the Washoe County Recorder also on October 10, 2007. Subsequently, National Default Servicing Corporation recorded a Notice of Trustee's Sale on Plaintiff Castillo's residential property on June 25, 2009, which indicates that the property is scheduled to be sold on July 15, 2009.

o. National Default Servicing Corporation, as Agent for America's Servicing Company, issued a Notice of Default and Election to Sell Under Deed of Trust against the Castillo residence on January 28, 2008, which was also recorded with the Washoe County Recorder on January 28, 2008. The Notice indicates that

HAGER & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

if the default is not cured within three months from the date on which the Notice was recorded, a sale date will be set.

p.       National Default Servicing Corporation recorded a Notice of Trustee's Sale on April 23, 2009 against Plaintiff Dombovari's residential property at 6580 Fern Drive, Reno, Nevada, with the Washoe County Recorder which indicated that the property was scheduled to be sold on May 20, 2009.  On June 3, 2009, a Trustee's Deed Upon Sale was recorded with the Washoe County Recorder, in which National Default Servicing Corporation conveyed Plaintiff Dombovari's residential property to Federal National Mortgage Association, or Fannie Mae.

q.       Quality Loan Service Corp. issued a Notice of Breach and Default and of Election to Cause Sale of Real Property Under Deed of Trust against Plaintiff Dombovari's residential property at 11675 Fir Drive, Reno, Nevada, on September 11, 2008, which was recorded with the Washoe County Recorder on September 15, 2008.  The Notice indicated that if the default was not cured by October 16, 2008, the property may thereafter be sold.  On May 8, 2009, a Trustee's Deed Upon Sale was recorded with the Washoe County Recorder, in which Quality Loan Service Corporation convey Plaintiff Dombovari's residential property to the Bank of New York Mellon formerly known as the Bank of New York as Successor's

r.       Recontrust Company, N.A. recorded a Notice of Trustee's Sale on the Garcia residence on January 10, 2008, which indicated that the property was scheduled to be sold on February 20, 2008.  On March 25, 2008, a Trustee's Deed Upon Sale was recorded with the Washoe County Recorder, in which Recontrust Company, in its purported capacity as Trustee, conveyed the Garcia property to Countrywide Home Loans, Inc.on March 11, 2005.

HAGER & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

s.       Recontrust Company, N.A. recorded a Notice of Trustee's Sale on the Gonzalez/Cortez residence on July 7, 2009, which indicates the property is scheduled to be sold on July 22, 2009.

t.       National Default Servicing Corporation, as Agent for Wells Fargo Bank, N.A., f/k/a Wells Fargo Home Mortgage, Inc., f/k/a/ Norwest Mortgage, Inc., recorded a Notice of Default and Election to Sell Under Deed of Trust against the Larkins residence on June 30, 2009.  The Notice indicates that if the default is not cured within three months from the date on which the Notice was recorded, a sale date will be set.

u.       National Default Servicing Corporation recorded a Notice of Trustee's Sale with the Washoe County Recorder on Plaintiff Gabriel Larkins's residential property on May 6, 2009, which indicates that the home was scheduled to be sold on May 27, 2009.

v.       Fidelity National Title Insurance Company issued a Notice of Breach and Default and of Election to Cause Sale of Real Property Under Deed of Trust against the Lopez residence on June 29, 2009, which was recorded with the Washoe County Recorder on June 30, 2009.  The Notice indicates that if the default is not cured by August 4, 2009, the property may thereafter be sold.

x.       NDEx West, L.L.C issued a Notice of Breach and Election to Sell Under Deed of Trust against the Mendoza residence on June 11, 2009, which was also recorded with the Washoe County Recorder on June 11, 2009.  The Notice indicated that if the default is not cured by July 16, 2009, the property may thereafter be sold.

y.       Reconstruct Company, N.A. issued a Notice of Default and Election to Sell Under Deed of Trust against the Moore residence on February 10, 2009, which

HAGER & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

was recorded with the Washoe County Recorder also on February 10, 2009.
Subsequently, Reconstruct Company, N.A. recorded a Notices of Trustee's Sale on
the Moore residence on May 14, 2009, which indicates that the property was
scheduled to be sold on June 3, 2009. The sale was continued to July 15, 2009.

    z.    National Default Servicing Corporation issued a Notice of Default and
Election to Sell Under Deed of Trust against the Stapleton residence on June 5,
2009, which was recorded with the Lyon County Recorder also on June 5, 2009.
The Notice indicates that if the default is not cured within three months from the
date on which the Notice was recorded, a sale date will be set.

    aa.    Housekey Financial Corporation issued a Notice of Breach and
Default and of Election to Sell Under Deed of Trust against the
Zamorano/Quintero-Orozco residence on January 28, 2009, which was recorded
with the Washoe County Recorder also on January 28, 2009. Subsequently,
Housekey Financial Corporation recorded a Notice of Trustee's Sale on the
Zamorano/Quintero-Orozco residence on April 30, 2009 with the Washoe County
Recorder, which indicates that the property was scheduled to be sold on May 19,
2009.

### FIRST CLAIM FOR RELIEF

**(Wrongful Foreclosure)**

**(As to Defendants servicers and foreclosers)**

110.    Plaintiffs incorporate each and every paragraph of this Complaint as if fully
set forth in this claim.

**HAGER & HEARNE**
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

111.  An assignment of an obligation under a mortgage, the note, operates as an assignment of the mortgage.

112.   The assignment of the obligations or notes of the Plaintiffs to the investors by way of mortgage backed securities resulted in a co-mingling of the notes and no interest in the note or deed of trust was retained by the lender or by MERS as beneficiary or nominee of the lender.

113.   The obligations of  the Plaintiffs on which the Defendants have declared a default were discharged when the investors in the mortgage backed securities claims were paid as a result of over-collateralization of the obligations and/or credit default swaps and/or federal bailout funds and other monies paid to the investors who owned the notes and obligations and/or to the Defendants or bank holding companies who disbursed the monies in such fashion as to extinguish the obligations of Plaintiffs to repay the monies they borrowed which are at issue herein.

114.   Neither the investors in the mortgage backed securities nor any other entity or person who had a right to payment from the borrowers or was a beneficiary under the deeds of trust ever declared a default of the notes executed by Plaintiffs.

115.    No true beneficiary under the deed of trust ever declared a default under the note and deed of trust.

116.   No true and no beneficiary under the deed of trust ever directed a sale of any of the properties owned by Plaintiffs in which MERS is named as beneficiary or nominee of the beneficiary/lender at issue in this action.

117.    The servicers of the notes have no contract with the Plaintiffs, no investment in the mortgage backed securities, and no right to declare a default on the note and the allegations by the servicers including the Defendants herein in the notices of default and

HAGER & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

election to sell the Plaintiffs' properties. Therefore, any statement that "the beneficiary has declared a default and directed that the property be sold" is not true, and the Defendant servicers who have made that false representation knew or should have known at the time each and every such notice was executed, mailed and recorded that those allegations were false.

118. Foreclosure against the properties of the Plaintiffs cannot commence without a written declaration of default and direction to the trustee to sell the property made by the persons or entities to whom the obligation under the notes are owed.

119. After the debts on the notes were discharged to the investors, the assignments of the deeds of trust and notes, the designations of substitute trustees and substitute beneficiaries, the declarations of default and directions to sell the properties, the notices of default and election to sell, the notices of sale and the foreclosure sales were nullities and transferred nothing to the entities now seeking to foreclose on the Plaintiffs' properties or claiming to own the Plaintiffs' properties as bank REO's.

120. No person or entity with any legal right to declare a default and direct a sale on any of the Plaintiffs' notes and/or deeds of trust naming MERS as beneficiary or nominee of the beneficiary/lender ever declared a default and directed a sale of any such property of Plaintiffs herein.

121. As a direct and proximate result of the unlawful and wrongful commencement and advancement of foreclosure proceedings by Defendants complained of herein, the Plaintiffs who have been subjected to such actions by Defendants have suffered damages, including, without limitation, economic damages, severe and disabling psychological and physical pain and suffering, humiliation, embarrassment, damage to credit and other damages as alleged herein.

122.   Plaintiffs have been required to retain counsel and expend costs to prosecute this claim for relief.

### SECOND CLAIM FOR RELIEF

### (Unjust Enrichment)
### (As to Defendants Securitizers and Servicers)

123.  Plaintiffs incorporate each and every paragraph of this Complaint as if fully set forth in this claim.

124.  Defendants' deceptive scheme as alleged herein unjustly enriched Defendants, and each of them, to the detriment of Plaintiffs, and similarly situated class members, by causing Defendants, and each of them, to receive monetary payments from Plaintiffs and the class members and money to which Defendants were not entitled because the Defendants did not fund the loans of the Plaintiffs.

125.  Specifically, Plaintiffs and class members have been injured in the property and right to peaceful enjoyment of their primary residence in a variety of ways, including but not limited to:  All borrowers who were targeted for and lured into the mortgages sold by Defendants were handicapped in understanding the terms of those loans.  This constituted a misrepresentation that caused Plaintiffs to make their monthly payments from the cash that represented the equity in their home to the Defendants.  Moreover, upon information and belief, the variety of additional and separate payments charged for services and other items tangential to the loan were prohibitive.  The result is that Plaintiffs, and each class member, assumed financial burdens that they would not otherwise have assumed, and paid Defendants funds to which the Defendants were not entitled nor owed.

**HAGER & HEARNE**
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

HAGER & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

126.    The loans made to Plaintiffs and to each class member were then repackaged, reassigned, and/or resold, each with a margin of profit for the assignee/buyer that would not otherwise have existed had Plaintiffs and all other members of the class not been deceived by the original terms of the loan and/or the lack of disclosures as alleged herein.   Likewise Plaintiffs would not have continued to make payments on the loans if the Defendants had properly disclosed the discharge of the obligations on the notes to the investors.

127.    Plaintiffs and each class member have paid or continue to pay an inflated interest rate that, upon information and belief, would not have been agreed to but for the failure to understand the documents and otherwise disclose the true terms and costs of the loans, tangential services, and out-of-pocket costs.

128.    Upon information and belief, Defendants, and each of them, retained and continue to retain these ongoing and escalating profits to the detriment of Plaintiffs and each class member, contrary to the fundamental principals of fairness, justice, and good conscience.

129.    Upon information and belief, all payments made to the Defendants servicing the Plaintiffs' mortgages are not due to the Defendants who are or were making demands for collection.

130.  The Defendants who have serviced the loans of the Plaintiffs did not fund the loans, did not loan any money to the Plaintiffs, and are not holders in due course of the notes of the Plaintiffs and have no lawful right to foreclose upon Plaintiffs' homes if Plaintiffs do not make the payments according to the notes that were executed by Plaintiffs at the time the loans were received.

**HAGER & HEARNE**
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

131.   Upon information and belief, all sums advanced to Plaintiffs for loans by investors have been repaid, settled, satisfied or otherwise are no longer outstanding.

132.   Plaintiffs have no contract with the Defendants and Defendants hold no contract rights that constitute an obligation from the Plaintiffs.

133.   Accordingly, Defendants, and each of them, should be ordered to return all funds obtained as a result of their deceptive scheme to Plaintiffs and class members.

## THIRD CLAIM FOR RELIEF

**(Conspiracy to Commit Wrongful Foreclosure by Creation, Operation, and Use of the MERS System)**

**(As to Defendants MERSCORP, Inc., MERS, Inc., Freddie Mac, Fannie Mae, GMAC Mortgage, L.L.C., National City Mortgage, J.P. Morgan Chase Bank, N.A., CitiMortgage, Inc., Countrywide Home Loans, Inc., HSBC Mortgage Corporation, U.S.A., Wells Fargo Bank, N.A., GE Money Bank, Bank of America, N.A., United Guaranty Corporation, PNC Financial Services Group, Inc., National City Corporation, and National City Bank)**

134.   Plaintiffs incorporate by this reference each and every paragraph of this Complaint as if set forth fully herein.

135.   Upon information and belief, Defendants MERSCORP, Inc., MERS, Inc., Freddie Mac, Fannie Mae, GMAC Mortgage, L.L.C., J.P. Morgan Chase Bank, N.A., CitiMortgage, Inc., Countrywide Home Loans, Inc., HSBC Mortgage Corporation, Wells Fargo Bank, N.A., GE Money Bank, Bank of America, N.A.,  United Guaranty Corporation, PNC Financial Services Group, Inc., National City Corporation, National City Bank, (hereinafter in this Third Claim for Relief collectively referred to for purposes of this Third Claim as the "Defendant conspirators"), and each of them, did knowingly and

**HAGER & HEARNE**
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

willfully conspire and agree among themselves to engage in a conspiracy to promote, encourage, facilitate and actively engage in wrongful foreclosures perpetrated on Plaintiffs as alleged herein and the actions of the Defendant conspirators were taken as part of the business policies and practices of each Defendant conspirator in participating in the MERS system.

136. The MERS system was known by Defendant conspirators as being used by the Defendant co-conspirators named in the First Claim for relief to facilitate the wrongful foreclosures complained of herein.

137. Specifically, the MERS system was designed to remove the need for recordation of transfers of deeds of trust as alleged herein. This component of the design of the MERS System facilitated the wrongful foreclosures complained of herein by making it easier to transfer the purported beneficial interest in a deed of trust and to appoint a trustee for the purpose of foreclosing on a property, despite the fact that the deed of trust no longer provided security for a note as a result of the note having been separated from the deed of trust as alleged herein.

138. The MERS system does not track the transfer of the note.

139. The MERS system does not track the identity of the holder of the note.

140. Upon information and belief, the Defendant conspirators are or have been creators and/or directors of MERSCORP, Inc., MERS, Inc. and/or members of the MERS system, and, as to Defendant conspirators, Freddie Mac, Fannie Mae, GMAC Mortgage, L.L.C., National City Mortgage, and J.P. Morgan Chase Bank, N.A., have, through their employees and agents, served as members of the Board of Directors of MERSCORP, Inc. and/or MERS, Inc., and participated in the design and coordination of the MERS system described in this complaint.

**HAGER & HEARNE**
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

141.   Defendants' participation as shareholders, directors, operators, or members of MERSCORP, Inc. and/or MERS, Inc. are as follows:

a.      Defendants J.P. Morgan Chase Bank, CitiMortgage, Inc., Countrywide Home Loans, Inc., Fannie Mae, Freddie Mac, United Guaranty Corporation, and Wells Fargo Bank, N.A. are each Shareholders of MERSCORP, Inc.

b.      MERSCORP, Inc.  is the operating company that owns and operates the MERS System described herein, and is the parent company of Mortgage Electronic Registration Systems, Inc. ("MERS, Inc.").

c.      Defendants Freddie Mac, MERSCORP, Inc., National City Mortgage, Fannie MAE, and United Guaranty Corporation are directors of MERS, Inc. and/or MERSCORP, Inc.

d.      Defendants Freddie Mac, Fannie Mae, GMAC Mortgage, L.L.C., National City Mortgage, National City Bank, and its division, National City Corporation, PNC Financial Services Group, J.P. Morgan Chase Bank, N.A., CitiMortgage, Inc., Countrywide Home Loans, Inc., HSBC Mortgage Corporation, U.S.A., GE Money Bank, Bank of America, N.A., LaSalle Bank, N.A., Wells Fargo Bank, N.A., United Guaranty Corporation, are Members of MERS, Inc.

142.  Whenever this Complaint refers to any corporation's act, deed, or transaction, it means that such corporation engaged in the act, deed, or transaction by or through its members, officers, directors, agents, employees, or other representatives while they actively were engaged in the creation, management, direction, control, or transaction of its business or affairs.

## FOURTH CLAIM FOR RELIEF

**HAGER & HEARNE**
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

**(Conspiracy to Commit Fraud by Creation, Operation and Use of the MERS System)**

**(As to Defendants MERSCORP, Inc., MERS, Inc., Freddie Mac, Fannie Mae, GMAC Mortgage, L.L.C., National City Mortgage, J.P. Morgan Chase Bank, N.A., CitiMortgage, Inc., Countrywide Home Loans, Inc., HSBC Mortgage Corporation, U.S.A., Wells Fargo Bank, N.A., GE Money Bank, Bank of America, N.A., United Guaranty Corporation, PNC Financial Services Group, Inc., National City Corporation, National City Bank)**

143. Plaintiffs incorporate by this reference each and every paragraph of this Complaint as if set forth fully herein.

144. Upon information and belief, Defendants MERSCORP, Inc., MERS, Inc., Freddie Mac, Fannie Mae, GMAC Mortgage, L.L.C., J.P. Morgan Chase Bank, N.A., CitiMortgage, Inc., Countrywide Home Loans, Inc., HSBC Mortgage Corporation, Wells Fargo Bank, N.A., GE Money Bank, Bank of America, N.A., United Guaranty Corporation, PNC Financial Services Group, Inc., National City Corporation, National City Bank, (hereinafter in this Fourth Claim for Relief collectively referred to for purposes of this Fourth Claim as the "Defendant conspirators"), and each of them, did knowingly and willfully conspire and agree among themselves to engage in a conspiracy to promote, encourage, facilitate and actively engage in predatory lending practices perpetrated on Plaintiffs whereby loans were made Plaintiffs using underwriting guidelines that disregarded the Plaintiffs' ability to repay the loan and which were inconsistent with underwriting guidelines previously considered as standard in the industry and the actions of the Defendant conspirators were taken as part of the business policies and practices of each Defendant conspirator in participating in the MERS system.

**HAGER & HEARNE**
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

145. The Defendant co-conspirators knew or should have known that the MERS system would be used to facilitate the origination and sale of loans such as the ones made to Plaintiffs herein.

146. All Plaintiffs were given loans pursuant to decreased underwriting guidelines which were created between 2004 and 2008 by, or created between 2004 and 2008 by others and implemented by, the Defendants named as originators, and which underwriting guidelines were inconsistent with underwriting guidelines previously considered as standard in the industry and which previous underwriting guidelines included consideration of factors which included, but were not limited to, the borrower's capacity to repay the loan, the borrower's credit rating, and the value of the collateral securing the loan.

147. All Plaintiffs were advised by the lenders who were acting for the lenders, servicers and sercuritizers on each loan, defined herein, that Plaintiffs were qualified for the loans described herein, although such representations were known to those Defendants to be false, or were made without intentional or reckless disregard to the truth or falsity of the representations.

148. The Defendants described in the preceding paragraph intended that the Plaintiffs would rely on the representations related to their qualification on the loans.

149. All Plaintiffs reasonably relied and had a right to so rely on the representations of Defendants that they were qualified to take out the loans, evidenced by their execution of the notes and deeds of trust described herein. Plaintiffs were damaged by such misrepresentations and reliance on same as alleged herein.

HAGER & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

150.    The Defendant servicers made representations to Plaintiffs as to  the amounts of payments due under the loans, including that the payments were due, and the amounts of the payments due, and the due dates.

151. The Defendant servicers knew or should have known that such representations were false because the note had been discharged through the securitization process or through the note holder's receipt of monies from third-party sources as alleged herein. Defendants knew or should have known that the representations were material, as Plaintiffs would not have paid money to the Defendant servicers without Defendant servicers having made the representation.

152.    The Defendant servicers intended that the Plaintiffs rely on the representations in seeking payment from Plaintiffs.

153.  Plaintiffs did rely on such representations in making payments to the servicers, and the servicers, and any party for whom the servicer was collecting funds was unjustly enriched as alleged herein.

154.  Plaintiffs were damaged by the representations by the payment of money to the Defendant servicers and as alleged herein.

155. All Plaintiffs were given loans that the Defendant Lenders knew or should have known were designed to result in foreclosure, which resulted in the declaration of default and the foreclosure of the loans as alleged herein.

156.   The purpose of giving the loans to Plaintiffs described herein was to fuel the demand for mortgage-backed securities generated between 2004 and 2008.

157.   As alleged below, the MERS system facilitated securitization and transfer of loans.

First Amended Complaint/Green etal v. Citi etal-44

**HAGER & HEARNE**
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

158. Upon information and belief, the Defendant conspirators are or have been shareholders in MERSCORP, Inc., MERS, Inc. and/or members of the MERS system, and, as to Defendant conspirators, Freddie Mac, Fannie Mae, GMAC Mortgage, L.L.C., National City Mortgage, and J.P. Morgan Chase Bank, N.A., have, through their employees and agents, served as members of the Board of Directors of MERSCORP, Inc. and/or MERS, Inc., and participated in the design and coordination of the MERS system described in this complaint.

159. Defendants' participation as shareholders, directors, operators, or members of MERSCORP, Inc. and/or MERS, Inc. are as follows:

a. Defendants J.P. Morgan Chase Bank, CitiMortgage, Inc., Countrywide Home Loans, Inc., Fannie Mae, Freddie Mac, AIG United Guaranty Corporation, and Wells Fargo Bank, N.A. are each Shareholders of MERSCORP, Inc.

b. MERSCORP, Inc. is the operating company that owns and operates the MERS System described herein, and is the parent company of Mortgage Electronic Registration Systems, Inc. ("MERS, Inc.").

c. Defendants Freddie Mac, MERSCORP, Inc., National City Mortgage, Fannie MAE, and AIG United Guaranty Corporation are directors of MERS, Inc. and/or MERSCORP, Inc.

d. Defendants Freddie Mac, Fannie Mae, GMAC Mortgage, L.L.C., National City Mortgage, National City Bank, and its division, National City Corporation, PNC Financial Services Group, J.P. Morgan Chase Bank, N.A., CitiMortgage, Inc., Countrywide Home Loans, Inc., HSBC Mortgage Corporation, U.S.A., GE Money Bank, Bank of America, N.A., Wells Fargo Bank, N.A., N.A., AIG United Guaranty Corporation, Members of MERS, Inc.

160.  Whenever this Complaint refers to any corporation's act, deed, or transaction, it means that such corporation engaged in the act, deed, or transaction by or through its members, officers, directors, agents, employees, or other representatives while they actively were engaged in the management, direction, control, or transaction of its business or affairs.

161.  Beginning at a time unknown to the Plaintiffs, prior to 2004, and continuing through at least the present, the Defendant co-conspirators engaged in a conspiracy to unlawfully deprive borrower-homeowners of their interest in property in numerous states through issuing predatory loans as described herein, and through securitization and subsequent processes described herein.

162.  MERS, Inc. and/or MERSCORP, Inc. arranged for bilateral and multilateral meetings, bilateral and multilateral teleconferences, and bilateral internet communications with potential Shareholders, actual Shareholders, candidates for Membership, and Members.

163.  Upon information and belief, the Defendant conspirators have conspired among themselves and with other unknown parties to:

a.  develop a system of earning profits from the origination and securitization of residential loans without regard for the rights of Plaintiffs, and others similarly situated, by engaging in predatory and deceptive residential lending practices as alleged in this complaint above; and

b.  in furtherance of the system referred to immediately above, the Defendant conspirators intentionally created, managed, operated and controlled the Defendants MERSCORP, Inc. and MERS, Inc. for the specific purpose of MERS, Inc. being designated as a sham "beneficiary" in the original deeds of trust securing those

**HAGER & HEARNE**
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

HAGER & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

loans, including the loan made to Plaintiffs and other similarly situated individuals by Countrywide Home Loans, Inc. National City Bank; and

c. Defendant conspirators intentionally created, managed, operated and controlled the MERS system with the unlawful intent and for the unlawful purpose of making it difficult or impossible for Plaintiffs and other victims of such industry-wide predatory policies and practices to identify and hold responsible the persons and entities responsible for the unlawful actions of Defendant Countrywide Home Loans, Inc., MERS, Inc., National City Bank and their co-conspirators.

164. Upon information and belief, Defendant conspirators, through creation of the MERS system alleged herein, adopted and implemented residential lending underwriting guidelines for use in Arizona and in other states which:

a. were intended to, and did, generate unprecedented profits for the Defendant conspirators and their co-conspirators at the expense of Plaintiffs and other persons who were fraudulently induced by the Defendant conspirators and their co-conspirators into taking out residential loans that were known by the Defendant conspirators and their co-conspirators, at the time the loans were originated, and

b. were likely to result in foreclosure on those loans and loss by Plaintiffs and other borrowers of their homes, with reckless disregard and intentional indifference by the Defendant conspirators and their co-conspirators of the likelihood of such foreclosure.

165. Removing real estate transaction records from the public record maintained by the county clerks prevents oversight of real estate transactions by the public and by public officials.

166.    MERSCORP, Inc. informed its co-conspirators that using the MERS system would remove transaction records from the public record.

167.    MERSCORP, Inc. and/or MERS, Inc. have publicly stated the following:

a.    "MERS eliminates the need to prepare and record assignments when trading residential and commercial mortgage loans."

b.    "With the recording of the security instrument(s), MERS becomes the mortgagee in the county land records and no assignments are required during a subsequent sale and transfer of the loan between MERS members."

c.    "There is no dependency on the corporate name you use on closing documents and the corresponding corporate name on the MERS System because the MERS System is not the legal system of record of ownership of mortgage loans."

168.    Upon information and belief, the MERS system was created for the unlawful purpose of hiding and insulating the brokers and originators of predatory toxic loans from accountability and liability by creating an entity which simultaneously informed all lenders who originated loans that named MERS as the beneficiary of the following:

a.    MERS would never own or acquire any actual beneficial interest in any loan in which it was named as beneficiary under the deed of trust, and that

b.    MERS could be named as beneficiary for purposes of public notice and notice to the borrower and would act in that capacity if so designated by the lender who originated the loan.

169.    Upon information and belief, the intent and purpose of the Defendant conspirators and their co-conspirators in the creation, management, operation and control of MERS was, without limitation, to make it impossible for the borrowers, their attorneys, the courts, the government, and anyone other than the Defendant conspirators

HAGER & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

who created and controlled MERS to identify the actual beneficial owner of any particular loan or the property which was the collateral securing that loan until such time, if any, that foreclosure action was initiated. As a result, Plaintiffs, and other similarly situated individuals, were deprived of the right to attempt to modify their toxic loans, as the true identity of the actual beneficial owner was intentionally hidden from Plaintiffs and other similarly situated individuals.

170. MERSCORP, Inc.'s marketing materials also promise Members with assistance with foreclosures. MERSCORP, Inc. and/or MERS, Inc. have publicly stated: "MERS has assembled a Foreclosure Manual to provide a state-by-state guideline for our Members to follow when foreclosing a mortgage loan in the name of MERS."

171. Upon information and belief, the Defendant conspirators' actions in creating the MERS system, which was dependent on fraudulent and deceptive practices that included, but were not limited to, making loans to consumers such as Plaintiffs in created a system to unlawfully deprive Plaintiffs of their interest in their Residences when the Defendants know that the obligations on the notes have been extinguished.

172. MERSCORP, Inc. and/or MERS, Inc. offered Members increased profit. MERSCORP, Inc. has publicly stated:

a. "The MERS web site enables you to target directly your MERS® Ready products and services to MERS members."

b. "Commercial originators and issuers save **hundreds to thousands of dollars** (in the case of cross-collaterized loans) in preparing and recording assignments. Where the originator has not recorded a MERS as Original Mortgagee (MOM) security instrument, the issuer saves the costs of assigning to the Trust by having the originator assign to MERS." (Emphasis added).

HAGER & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

HAGER & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

c.     "It will reduce risk and generate more profits for lenders because the Notes registered on it will be in electronic format. ***It shortens the timeframe between the closing and the securitization of the loan***, enabling the Note to move instantly, creating faster funding."   (Emphasis added).

173.    MERSCORP, Inc.'s rules and by-laws, to which MERS Members agree, require the following:

**BY COMPLETING, SIGNING, AND SUBMITTING THIS APPLICATION, THE APPLICANT IS AGREEING TO BE A MERS MEMBER. THE APPLICANT HEREBY AGREES TO PAY ALL FEES AND EXPENSES SET FORTH IN THE MERS RESIDENTIAL FEE SCHEDULE, WHICH MAY CHANGE FROM TIME TO TIME; ABIDE BY ALL EXISTING MERS RULES AND PROCEDURES, WHICH ARE INCORPORATED HEREIN BY REFERENCE AND MAY BE AMENDED FROM TIME TO TIME; AND COMPLY WITH THE TERMS AND CONDITIONS SET FORTH IN THE ATTACHED ADDENDUM ENTITLED TERMS AND CONDITIONS.**

(Emphasis in original).

174.    The MERSCORP, Inc. rules  and by-laws, to which MERS Members agree, cannot be carried out lawfully because they require the following:

1. ***MERS, which shall include MERSCORP, Inc. and Mortgage Electronic Registration Systems, Inc.***, and the Member shall abide by these Terms and Conditions, the Rules and Procedures (collectively, the "Governing Documents"), copies of which will be supplied upon

request. The Governing Documents shall be a part of the terms and conditions of every transaction that the Member may make or have with MERS or the MERS® System either directly or through a third party. The Member shall be bound by any amendment to any of the Governing Documents.  2. ***The Member, at its own expense, shall promptly, or as soon as practicable, cause MERS to appear in the appropriate public records as the mortgagee of record with respect to each mortgage loan*** that the Member registers on the MERS® System. ***MERS shall serve as mortgagee of record with respect to all such mortgage loans solely as a nominee***, in an administrative capacity, for the beneficial owner or owners thereof from time to time. ***MERS shall have no rights whatsoever*** to any payments made on account of such mortgage loans, to any servicing rights related to such mortgage loans, or to any mortgaged properties securing such mortgage loans. ***MERS agrees not to assert any rights*** (other than rights specified in the Governing Documents) with respect to such mortgage loans or mortgaged properties. References herein to "mortgage(s)" and "mortgagee of record" shall include deed(s) of trust and beneficiary under a deed of trust and any other form of security instrument under applicable state law.  ***  6. MERS and the Member agree that: (i) ***the MERS® System is not a vehicle for creating or transferring beneficial interests in mortgage loans***, (ii) transfers of servicing interests reflected on the MERS® System are subject to the consent of the beneficial owner of the mortgage loans, and (iii) membership in MERS or use of the MERS® System shall not modify or

HAGER & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

supersede any agreement between or among the Members having
interests in mortgage loans registered on the MERS® System."
(Emphasis added).

175.    The times, dates, and locations of the various meetings and communications among and between the conspirators are solely within the knowledge of the conspirators and have not been made public by MERS or its co-conspirators.

176.    In addition to the allegations made related to the shareholder, director, and creator conspirators, the MERS system conspiracy consisted of:

a.    The Lender conspirators who agreed to procure loans by means of violation of **state and Federal lending laws,** as further described in the previous claims for relief.

b.    The Lender, Securitizer and Servicer conspirators who agreed to use the MERS system unlawfully and in violation of **state and Federal laws** to deceive homeowners and securities purchasers by misleading them to believe that the conspirators had legal authority to foreclose when in fact, the conspirators do not have legal authority to foreclose on loans which were made part of the MERS system, as further described in the previous claims for relief.

c.    The Securitizer conspirators who were aware of these violations of law during procurement and agreed to purchase the loans knowing that the law had been violated.

d.    The Securitizer conspirators who, upon information and belief, packaged and sold loans knowing that such loans were based on deeds of trust that had been split from the notes, and based on loans that had been sold as part of the

HAGER & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

securitization process before the loans were finalized with the borrowers. Thereafter, the purported interest in the obligation, the note as evidence of the obligation, and the security interest for the obligation were transferred multiple times without recording the change in ownership of an interest in real property in the appropriate county records.  This was accomplished by the creation of the private parallel record keeping service known as the MERS system, whereby MERS, Inc. is named in the deed of trust which is supposed to be the security for the underlying loan obligation.  MERS is named as the nominee of the lender, but not as the holder of the note or the actual lender.  Rather, MERS is named as beneficiary for the purpose of deceiving the borrower and the clerk's office where the deed of trust is recorded.

e.      A securitization process that was based on loans that were made based on residential loan underwriting guidelines that were designed to generate as many loans as possible to fuel the securitization process to feed the demand for mortgage-backed securities, the faulty and toxic nature of which loans was hidden by the MERS system.  As a result of MERS being named the beneficiary, and through the processes described herein, the note and deed of trust are "split." When the note is split from the deed of trust, then the note becomes unsecured and a person holding only the note lacks the power to foreclose and a person holding only a deed of trust suffers no default because only the holder of the note is entitled to payment on it.  The monetary effect of utilizing the MERS system, in addition to the allegations set forth otherwise herein, was to hide profits and fees that were not disclosed to the borrower or to the investor in the note, which, in some cases, upon information and belief, were in excess of the principal value stated on the note.

**HAGER & HEARNE**
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

HAGER & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

f.      The Securitizer conspirators who violated state and Federal securities laws through their descriptions of the financial derivatives created by the conspiracy.

g.      The Lender conspirators who agreed to supply loans to the Securitizers despite knowledge that the Securitizers would sell them in violation of the law.

h.      The Servicer conspirators who agreed to unlawfully foreclose on loans despite the separation of the loan from the deed of trust which made the foreclosure unlawful because the debt was no longer secured.

177.   All of the conspirators agreed to the participation of the other conspirators in their individual roles in the conspiracy.  The loan files of each of the loans disclose the legal violations and document that the Lenders agreed to purchase loans from third party originators and to sell them to the Securitizers.  The Securitizers agreed to purchase the loans and pool them with full knowledge of the contents of the loan files.  The Servicers agreed to foreclose with full knowledge of the loan file for each loan.

178.   All of the conspirators continued to agree to the conspiracy over the course of thousands of transactions.

179.   Defendants Fannie Mae, J.P. Morgan Chase Bank, N.A., GMAC Mortgage, L.L.C., and National City Mortgage acted as Creators of the conspiracy.  They created MERS to hide their own unlawful activity as well as the activities of the co-conspirators.

180.   Defendants Countrywide Home Loans, Inc., and Bank of America, N.A. acted as Lenders in the conspiracy.

181.   Defendants J.P. Morgan Chase, Wells Fargo Bank, N.A., Bank of America, HSBC Mortgage Corporation, U.S.A., GMAC Mortgage, L.L.C., PNC Financial Services

**HAGER & HEARNE**
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

Group, Inc., National City Corporation, National City Mortgage, National City Bank, Countrywide Home Loans, Inc., CitiMortgage and GE Money Bank acted as Securitizers in the conspiracy.

182. Defendants Countrywide Home Loans, Inc., Bank of America, Wells Fargo Bank, N.A., GMAC Mortgage, L.L.C., CitiMortgage, Inc., National City Mortgage, and HSBC Mortgage Corporation, U.S.A., J.P. Morgan Chase acted as Servicers in the conspiracy.

183. For the purpose of forming and effectuating this conspiracy, Defendants and co-conspirators did the following things, among others:

a. The Defendants acting as Lenders described above systematically and repeatedly violated Federal and state lending laws in order to originate mortgages, as described in the previous claims for relief;

b. The Defendants acting as Securitizers knowingly and by agreement purchased the unlawfully obtained mortgages from the Lenders;

c. The Defendants acting as Lenders, Securitizers and Servicers utilized and benefited from the MERS system as a means of preventing detection by law enforcement or by the public and as a means of unlawful foreclosure to the detriment of homeowners;

d. The Defendants acting as Lenders and Securitizers, with knowledge and agreement of the co-conspirators, utilized the MERS system in such a manner as to split the promissory note from the mortgage or deed of trust and thereby destroy the note holders' security, nevertheless proceeding with unlawful foreclosure actions to the detriment of homeowners;

HAGER & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

e.      All Defendants named herein as co-conspirators profited from their respective roles in originating loans, selling them, and pooling their MERS registered home loans together in large bundles which were sold and turned into financial derivative instruments;

f.      The mortgage securitization process became known in financial industry parlance as "slicing and dicing." The slicing and dicing results in a pool of mortgages which have lost their individual characteristics but which have a high value to those who create them;

g.      The Defendants acting as Securitizers named herein purchased mortgages from the Defendants acting as Lenders named herein for securitization;

h.      The Defendants named as Securitizers herein sold the securitized and pooled mortgages as asset backed financial derivatives with affirmative claims that Defendants were unaware of any legal issues which would affect the value of the assets backing the securities, which was untrue, as Defendants actually knew or should have known that the mortgages were unlawfully obtained and subject to rescission, and knew or should have known that the mortgages and promissory notes had been split and therefore the note holder no longer had the right to foreclose, assuming that it ever did;

i.      The Defendants described herein as Servicers unlawfully foreclosed on homeowners' properties.  The Servicers misrepresented that they had the legal right to foreclose, when, in fact, they did not.  The Servicers' foreclosures wrongfully deprived homeowners of property;

j.      All Defendants named as MERS members agreed to promote MERS, an ostensibly lawful business, and to utilize MERS in an unlawful manner to deprive Plaintiffs and those similarly situated of property.

184.    The securitization process took distinct loans, deeds of trust, and mortgages, and pooled them together in such a manner that they lost their unique identity. Hundreds of such financial derivative instruments were created by the co-conspirator Defendants.  The co-conspirators all profited from their respective roles in the process, including, but not limited to, the following pooling agreements:

a.    Defendant and co-conspirator Wells Fargo Bank, N.A. is the master servicer of the HSI Asset Loan Obligation Trust 2007-2.  Approximately 18% of the mortgages in that loan pool were originated by Defendant Countrywide Home Loans, Inc. Approximately 26% of the mortgages in that pool originated from HSBC Mortgage Corporation (USA).   HSBC Mortgage Corporation (USA) profited from packaging its loans together with those of Defendant and co-conspirator Countrywide Home Loans, Inc.

b.    The HSI Asset Loan Obligation Trust 2006-2, was sponsored and sold by HSBC Bank.  Countrywide Home Loans, Inc. originated 13% of the loans in this instrument.  HSBC Mortgage Corporation (USA) originated 15% of the loans in this instrument.  HSBC Mortgage Corporation (USA) is one of the servicers of this financial derivative instrument.

c.    The Banc of America Funding 2007-4 Trust was sponsored by Defendant and co-conspirator Bank of America, N.A.  The Master Servicer of this financial derivative instrument is Defendant and co-conspirator Wells Fargo Bank, N.A.  GMAC Mortgage, L.L.C. is also among the servicers.  The originators of the loans pooled in this instrument include Defendants and co-conspirators GMAC Mortgage, L.L.C., Countrywide Home Loans, Inc., Wells Fargo Bank, N.A., Bank of America, N.A., National City Mortgage Co.

HAGER & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

HAGER & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

d.      The Banc of America Funding 2007-7 Trust was sponsored by Defendant and co-conspirator Bank of America, N.A. The Master Servicer of this financial derivative instrument is Defendant and co-conspirator Wells Fargo Bank, N.A. GMAC Mortgage, L.L.C. is also among the servicers. The originators of the loans pooled in this instrument include Defendants and co-conspirators GMAC Mortgage, L.L.C., Countrywide Home Loans, Inc., Wells Fargo Bank, N.A., Bank of America, N.A., National City Mortgage Co. The Banc of America Funding 2007-7 Trust hired Defendants and co-conspirators Bank of America, N.A., CitiMortgage, Inc., GMAC Mortgage, LLC, and National City Mortgage Co. as servicers.

e.      Defendant Merrill Lynch & Company, Inc., profited by selling its customers the Merrill Lynch Mortgage Investors Trust Series MLCC 2006-3. Merrill Lynch Credit Corporation and Wells Fargo Bank, N.A. originated the mortgage loans in that derivative instrument. Wells Fargo Bank, N.A. is one of the servicers.

f.      National City Mortgage Corporation is an originator and servicer of loans in the GSAA Home Equity Trust Series 2007-8. Wells Fargo Bank, N.A. is also a servicer. In the prospectus, National City Mortgage is described as a division of National City Bank.

g.      In the Merrill Lynch Mortgage Investors Trust, Series 2007-SD1, Defendant and Co-conspirator First Franklin sold significant amounts of loans. Defendant and co-conspirator LaSalle Bank, N.A., was hired as the trustee.

h.      In the First Franklin Mortgage Loan Trust 2006-FF11, Defendant "First Franklin, a division of National City Bank (formerly, National City Bank of Indiana)," originated almost all of the loans and sold them to be pooled. Defendant Wells Fargo Bank, N.A. was hired as the master servicer.

**HAGER & HEARNE**
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

i.　　In the Structured Adjustable Rate Mortgage Loan Trust Mortgage Pass-Through Certificates, Series 2007-6, Defendant GE Money Bank was one of the major underwriters of the loans which were pooled. Defendant and Co-conspirator U.S. Bank, N.A. was also an originator of loans in the pool. U.S. Bank, N.A. is also a servicer. LaSalle Bank National Association, U.S. Bank National Association and Wells Fargo Bank, N.A. were hired as custodians of the trust.

j.　　Defendant and co-conspirator Wells Fargo Bank, N.A. is the master servicer of the HSI Asset Loan Obligation Trust 2007-2. 18% of the mortgages in that loan pool were originated by Defendant Countrywide Home Loans, Inc. 26% of the mortgages in that pool originated from HSBC Mortgage Corporation (USA). HSBC Mortgage Corporation (USA) profited from packaging its loans together with those of Defendant and co-conspirator Countrywide Home Loans, Inc.

k.　　In the J.P. Morgan Alternative Loan Trust 2007-A2, J.P. Morgan Chase Bank was an originator of loans which were pooled. JPMorgan Chase Bank, National Association is one of the servicers of the mortgage pool. Wells Fargo Bank, N.A. is the master servicer. U.S. Bank National Association is the trustee. Countrywide Home Loans, Inc. sold loans to the trust. JPMorgan Chase Bank is one of the servicers.

185.　Upon information and belief, Plaintiffs' loans were securitized, "sliced and diced" and pooled into mortgage pools such as the ones described herein as part of the conspiracy related to the creation and operation of the MERS system, and Defendants, and each of them, profited from same and are liable for their acts and the acts of their co-conspirators in creating the MERS system, including, but not limited to, the use of MERS-approved and created documents to establish the loans (including, but not limited to, the form of deed of trust), and in participating in the securitization process described herein.

HAGER & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

186.   Upon information and belief, Defendant conspirators utilized funds received as part of the Troubled Asset Relief Program (TARP) and (TALF) and Federal Reserve payouts to further the conspiracy to defraud Plaintiffs, and others similarly situated, to deprive them of their money, to deprive them of their property, to unlawfully foreclose on loans made to putative class members, to pay investors in the mortgage-backed securities which were comprised of the loans made to Plaintiffs and others similarly situated, to pay credit default swaps and to pay bonuses to employees and officers of the Defendant conspirators based on their devising the subprime mortgage-backed products which were securitized by loans of the type issued to Plaintiffs and others similarly situated, and collateralizing and selling such products in the United States and abroad.

187.   As a result of Defendant conspirators' conspiracy described herein, Plaintiffs have suffered injuries which include mental anguish, emotional distress, embarrassment, humiliation, loss of reputation and a decreased credit rating which has, or will, impair Plaintiffs' ability to obtain credit at a more favorable rate than before the decrease in credit rating, the loss or anticipated loss of their Residences and other financial losses according to proof, and Plaintiffs have incurred attorneys' fees and costs in this matter.

188.   Defendant conspirators' actions were wanton, willful and reckless, and justify an award of punitive damages against Defendant conspirators, and each of them.

## FIFTH CLAIM FOR RELIEF
### (Injunctive Relief)

189.   Plaintiffs incorporate each and every paragraph of this Complaint as if fully set forth in this claim.

190.   The home of Plaintiff KRISZTINA DOMBOVARI (bank REO) has been sold and is being held by the banks and their co-conspirators unlawfully.

HAGER & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

191.   Plaintiffs have been issued a Notice of Default or have been scheduled for a Trustee's Sale or are subject to notices of default pursuant to the Defendants' interpretation of their alleged rights to foreclose of the terms of their notes which manifests the impending loss of all Plaintiffs' homes.

192.   Each and every Plaintiff has no adequate remedy at law to stop these unlawful foreclosures and evictions without this Court's intervention.

193.   Plaintiffs will suffer irreparable harm from the loss of their homes and Defendants will suffer nothing because no payments are owed to them on account of the notes and mortgages and any foreclosure pursued by them will be and is and has been unlawful.

## SIXTH CLAIM FOR RELIEF

### (Declaratory Relief)

194.  Plaintiffs incorporate each and every paragraph of this Complaint as if fully set forth in this claim.

195.  Defendants have either proceeded with foreclosures against Plaintiffs or threatened foreclosures against Plaintiffs for which Defendants are not owed any payments, have no lawful right to foreclose and have unlawfully deprived or attempted to deprive Plaintiffs of their homes and further have failed to notify the Plaintiffs of the discharge of their obligations on the notes associated with their mortgages.

196.  Plaintiffs seek a declaratory judgment against Defendants stating that Defendants have violated Plaintiffs' rights and none of the Defendants are the proper parties to foreclose upon the Plaintiffs' properties or persons' similarly situated who have MERS named as the beneficiary on their deeds of trust.

**HAGER & HEARNE**
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

197.   Plaintiffs have been required to retain counsel in this matter to protect Plaintiffs' rights and have incurred attorneys' fees and costs in this matter.

## CLASS ACTION ALLEGATIONS AND

## REQUEST FOR CLASS CERTIFICATION

198.   Plaintiffs incorporate each and every paragraph of this Complaint as if fully set forth in this claim.

### Class Definition

199.   Plaintiffs, pursuant to Fed. R. Civ. P. 23(a), (b)(2-3), bring this action for themselves and on behalf of a class of persons similarly situated under the provisions of Federal and State law regarding plaintiff class actions.

200.   The class is composed of the named Plaintiffs and all others who are victims of the Defendants herein who originated, funded, serviced, securitized, sold, transferred, insured, or guaranteed residential real estate loans in the United States from 2004 to 2008, and/or whose loans were serviced, securitized, sold, insured or guaranteed by Defendants and who have not been informed by the Defendants that a discharge of the note occurred, between October 2004 and present, and this class of persons was damaged or is faced with risk of damage by the origination, servicing, sale, transfer, foreclosure, sale, and/or acquisition of these loans. Excluded from the class are the Defendants, including any parent, subsidiary, affiliate or controlled person of the Defendants and their officers, directors, agents or employees, any judge or judicial officer assigned to this matter, and members of the immediate families of any excluded persons.

**HAGER & HEARNE**
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

<u>Numerosity</u>

201.   Upon information and belief, Plaintiffs estimate that the class comprises not less than 125 individual members and the class is so numerous that joinder of all members is impracticable.  The members of the class can be identified and located using information contained in the Defendants' mortgage lending records.

<u>Common Questions of Law and/or Fact</u>

202.   There are common questions of law and/or fact common to the class, including whether the Defendants are the proper parties to foreclose on the residential properties of these Plaintiffs as alleged herein, whether any such violations constituted a conspiracy to commit fraud or wrongful foreclosure and/or whether Defendant's conduct resulted in unjust enrichment to them and to the detriment of the members of the class. Also common to the class is the issue of whether the named Defendants acted as conspirators in committing fraud in creating, operating and using the MERS system as alleged in the Conspiracy to Commit Fraud in the creation, operation and use of the MERS System Claim for Relief set forth above and whether the Defendants failed to give notice of the discharge of the obligations under the notes to the borrowers who are members of this class, so that these borrowers knew that no further obligations existed.

<u>Typicality</u>

203.  Plaintiffs' claims are typical of those of the members of the class.  Plaintiffs and the class members were subjected to the same kind of unlawful conduct and the claims of Plaintiffs and the class members are based on the same legal theories.

<u>Fair and Adequate Representation of Class</u>

204.  Plaintiffs will fairly and adequately protect the interests of the class Plaintiffs represent.  Plaintiffs' interests do not conflict with the interests of the class, and Plaintiffs intend on prosecuting this action vigorously.

205.  Plaintiffs have retained experienced counsel qualified in class litigation and counsel and is competent to assert the interests of the class.

**HAGER & HEARNE**
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

<u>Rule 23(b) Requirements</u>

206. The unlawful acts of Defendants, as alleged herein, constitute a course of conduct common to Plaintiffs and each class member. Prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Defendants and/or substantially impair or impede the ability of the individual class members to protect their interests.

207. Injunctive and/or declaratory relief to the class is appropriate because, upon information and belief, Defendants, and each of them, have acted or refused to act on grounds generally applicable to the class.

208. Questions of law and/or fact common to the class members, including the issues identified above, predominate over questions affecting only individual class members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. Class action treatment will allow a large number of similarly situated individuals to simultaneously pursue their common claims in a single forum in an efficient manner, without unnecessary duplication of effort and expense that would be required if numerous individual actions were pursued.

WHEREFORE, Plaintiffs pray this court enter an order providing relief as follows:

1. For an award of damages against Defendants, and each of them, on the Plaintiffs' state law claims, whether general, special or punitive as alleged above, in an amount to be shown at trial;

2. For an award of attorneys' fees and costs as provided by law;

3. For an order of restitution on behalf of Plaintiff and class members;

4. For a temporary restraining order and preliminary and permanent injunction on behalf of those Plaintiffs that have sought a separate motion for temporary restraining order, and MERS, in addition to each and every of their respective officers, agents, employees, servants, and attorneys, and those persons in active concert or

participation with any of them or each of them, as specifically alleged above from transferring any interest in the subject properties, from proceeding with any foreclosure action as to any of the Plaintiffs' residences and/or proceeding with any collection action against the Plaintiffs, and from transferring any interest and/or proceeding with foreclosure actions against the residences of similarly situated class members;

5.  For a declaratory judgment holding that Plaintiffs' rights were violated as alleged above;

6.  That Plaintiffs have and recover from the Defendants pre-judgment interest as may be determined by statute and rule;

7.  That this action be certified as a Plaintiffs' class action;

8.  Pursuant to Federal Rules of Civil Procedure, Rule 38, Plaintiffs demand a trial by jury on all issues of fact in this action; and

9.  That this Court grant such other and further relief as it deems just and proper.

DATED: September 24, 2009           HAGER & HEARNE


*/s/ Treva J. Hearne, Esq.*
Robert R. Hager, Esq.
SBN: 1482
Treva J. Hearne, Esq.
SBN: 4450
245 E. Liberty St., Ste. 110
Reno, NV 89501
Tele: (775) 329-5800
Attorneys for Plaintiffs


## **DEMAND FOR JURY TRIAL**

**Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs hereby demand a trial by jury to the fullest extent permitted by law.**

HAGER & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

DATED: September 24, 2009                    HAGER & HEARNE

                                             /s/ Treva J. Hearne
                                             Robert R. Hager
                                             Treva J. Hearne
                                             Attorneys for Plaintiffs

HAGER & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819