1   Rick Lawton, Esq.
2   State Bar # 00694
3   Law Office Rick Lawton Esq. P.C.
4   5435 Reno Hwy, Fallon, Nevada 89406
5   (775) 867-5599
6   (775) 867-2559 –fax
7
8   Attorney for Plaintiff

9   **UNITED STATES DISTRICT COURT**

10   **FOR THE STATE OF ARIZONA**

|  |  |
|---|---|
| IN RE: Mortgage Electronic Registration Systems (MERS) Litigation | **Case No. 2: 09-md-02119-JAT**<br><br>**AZ Case No. 2:10-cv-00413**<br>**NV Case No. 3:09-cv-00556** |
| THIS MATTER RELATES TO:<br><br>STEVEN R. GILLESPIE and KATHERINE A. GILLESPIE (formerly Katherine Ryan), Husband and Wife<br>                    *Plaintiff(s),*<br>vs.<br><br>TRUSTEE CORPS; BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP; WESTERN TITLE COMPANY, INC.; FIRST AMERICAN NATIONAL DEFAULT; FIRST AMERICAN TITLE INSURANCE COMPANY; COUNTRYWIDE BANK FSB a Federal Savings Bank; COUNTRYWIDE HOME LOANS, INC. a New York Corporation, COUNTRYWIDE FINANCIAL CORP., a Delaware Corporation; LISA KLIMENKO, individually; MERSCORP, INC. a Virginia Corporation; MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC., et. al.<br>                    Defendants. | **THIRD AMENDED COMPLAINT**<br><br>**QUIET TITLE**<br>**AND OTHER EQUITABLE RELIEF** |

11
12          COME NOW Plaintiff(s) above-named (hereinafter Borrower), by and through

Complaint Predatory Lending Crisis                                    Page 1

1  their attorney, RICK LAWTON, Esquire of the Law Office of Rick Lawton Esquire,

2  Prof. Corp., a Nevada Professional Corporation, and hereby allege the following

3  causes of action against Defendants as follows:

4
5  **I.
   PARTIES**

6  1.     This Court has jurisdiction and venue over this action in that, the parcels of

7         real property at issue is located in LYON County, State of Nevada. The

8         Defendants transacted business in LYON County; and the individual named

9         as Defendants herein are a resident of the State of Nevada and they

10        perpetuated the challenged conduct as representative, agent, or employee of

11        Defendants.

12  2.    Additionally, National Banks (if Defendants claim that status) in the action are

13        not preempted by Federal Law. [ See: On  June 29, 2009, in *Cuomo v. The*

14        *Clearing House Association, L.L.C.,* 2009 U.S. LEXIS 4944.  The Supreme

15        Court rejected preemption per the National Bank Act – except with regard to

16        visitorial powers.[1]  The matter of visitorial powers is irrelevant to this

17        proceeding.]

18        The Subject property being described as:

19
20        **Plaintiffs: STEVEN R. GILLESPIE and KATHERINE A. GILLESPIE**
21        **[hereinafter Plaintiffs]:**

22
23        **1364 MOUNTAIN ROSE DRIVE, FERNLEY, NEVADA 89408**

24
25        **All of the real property with improvements thereon, located in**
26        **City of Fernley, County of Lyon, State of Nevada bounded and**
27        **described as follows:**

28

---

[1] Federal law preempts the application of State laws to national banks only where State law conflicts with Federal  law or substantially interferes with national banks' exercise of their powers.  [See Barnett Bank of Marion County, N.A. v. Nelson, 517 U.S. 25, 33 (1966).]; States may enforce generally applicable State laws against State and Federally charged banks alike.  [See:  Watters v. Wachovia Bank, N.A., 550 U.S. 1, 11 (2007) .11]

Complaint Predatory Lending Crisis                                Page 2

1   **Lot 88 OF SUNDANCE SUBDIVISION PHASE 2, RECORDED IN**
2   **THE OFFICE OF THE COUNTY RECORDER OF LYON COUNTY,**
3   **STATE OF NEVADA, ON JUNE 8, 2005, AS DOCUMENT NO.**
4   **353261, OFFICIAL RECORDS.**
5
6   **APN: 022-273-05**
7

8   3.   Defendant COUNTRYWIDE HOME LOANS, INC. was a New York

9        Corporation.  COUNTRYWIDE HOME LOANS, INC. was the original lender,

10       on the Deed of Trust recorded on May 7, 2007 as Document No. 405810 by

11       Defendant WESTERN TITLE COMPANY, INC.

12  4.   Defendant COUNTRYWIDE BANK FSB, a Federal Savings Bank, 1199

13       North Fairfax St., Suite 500, Alexandria, VA  22314, was the original lender

14       on the Deed of Trust on 2nd recorded on May 7, 2007 as Document No.

15       405811.

16  5.   Defendants At all times mentioned herein, Defendant MORTGAGE

17       ELECTRONIC REGISTRATION SYSTEMS, INC. [MERS] a Delaware

18       Corporation, was the designated, nominee of Lender, and Lender's

19       successor or assigns and the Beneficiary on the Deed of Trust Defendant

20       BANK OF AMERICA CORPORATION, N.A., aka "Bank of America" is

21       believed to be a successor-in-interest with regard to Defendants

22       Countrywide.   That is, Plaintiffs are informed and believes Defendant Bank

23       of America purchased from Defendants Countrywide, or otherwise took

24       control of Countrywide's assets and liabilities.  Defendant Bank of America is

25       believed to have ratified the acts and omissions of the other Defendants.

26  6.   Defendant LISA KLIMENKO, is believed to be a resident of the State of

27       Nevada, and participated by way of inducement, and assisting Plaintiffs in

28       retaining the loans alleged. She knew or should have known that she was

29       perpetrating a fraud or a violation of Fair Lending act with such participation

30       and representations either individually or from guidance from Co-

Complaint Predatory Lending Crisis                                    Page 3

1    Defendants.

2  7.    RECONTRUST COMPANY is a foreign corporation not registered to do

3         business in the State of Nevada, but is the company that forecloses for

4         Countrywide Home Loans, Inc., and under information and belief Defendant

5         RECONTRUST COMPANY, N.A. is a wholly owned subsidiary of Defendant

6         COUNTRYWIDE HOME LOANS, INC. a New York Corporation.

7         RECONTRUST COMPANY, N.A. is named as the Trustee on the two Deeds

8         of Trust named-above, Documents No. 405810 and Document No. 405811,

9         respectively.

10  8.    Defendant MTC FINANCIAL INC. dba TRUSTEE CORPS (hereinafter

11        TRUSTEE CORPS), their address being 2112 Business Center Drive, 2nd

12        Floor, Irvine, CA  92612, is the new Trustee named in the Substitution of

13        Trustee recorded on January 25, 2010 as Document No. 453699 by

14        Defendant FIRST AMERICAN NATIONAL DEFAULT.

15  9.    Doe Defendants I-25 is corporations, persons, associations, partnerships or

16        other entities, the identities of which are unknown to Plaintiffs.  Plaintiffs

17        believe Doe 1-25 and Roes 1-25 Defendants are in some way responsible

18        for the damages they have sustained. When Plaintiffs ascertain the identities

19        of these Doe Defendants, they may seek leave of this Court to amend this

20        Complaint, so as to hold Doe Defendants legally responsible.

21

22                              **II.**

23                   **GENERAL ALLEGATIONS**

24  **A.    PREDATORY LENDING SCHEME.**

25  10.   In the United States, home purchases are typically financed by mortgages or

26        loans that are secured by a Deed of Trust and a Note which, when executed

27        on behalf of the same entity and held by the same entity as a "Note and

1    Deed of Trust" entitle the holder of the Note and Deed of Trust to foreclose

2    on the property of the borrower(s) if the borrower(s) is/are in default without

3    legal excuse or recourse. This foreclosure is termed non-judicial foreclosure

4    in that it sounds in contract law and is structured by Nevada Revised

5    Statutes Chapter 107.

6  11.   Plaintiffs will establish that they are the victim of "a predatory lending

7    scheme" perpetuated by the Defendants [hereinafter also referred to as:

8    Lenders/Servicers/Assigns/Successors in interest, whose conduct will show

9    that they have suffered some actual or threatened injury as a result of the

10   Defendant's conduct, that the injury be traced to the challenged action, and

11   that it is likely to be redressed by a favorable decision.[2]

12 12.   It is a combination of intentional acts or a reckless disregard to the

13   consequences of the Defendant also called co-conspirators including

14   accepting and being part of use of "form documents" (boilerplate) including

15   but not limited to (1) The Note including a waiver by borrower(s) right to

16   "Presentment and Notice of Dishonor" which precludes not only the

17   borrower(s), but anyone from finding the true holder of the Note. (2)

18   Defendant Lenders utilizing techniques that allow underqualified borrowers to

19   be qualified under LOANS which normally is in excess of the 31% payment

20   to income ratio and later in excess of 50% ratio.  In essence, Lender

21   represents that borrower(s) need only look to the ability to pay the low initial

---

[2]  Valley Forge Christian Coll. v. Am. United for Separation of Church and State, 454 U.S. 464, 472 (1982)

1     payment, yet fails to review the contingencies of the home should it not

2     increase in value and the borrower(s) are then unable to refinance later as

3     promised. This coupled with the fact that Lenders do not require any

4     documentation as to income, or alter the income disclosure [unknown to

5     borrower] (i.e.no doc loans; nor is there any down payment required in some

6     instances criticized by the Nevada Legislature). [3] Plaintiffs were assured that

7     re-finance would be readily available upon the period the ARM kicked in or

8     interest only ended.

9   13.   Plaintiffs will establish that they are the victims of "a predatory lending

10     scheme perpetuated by the Defendants, whose conduct will show that they

11     have suffered some actual or threatened injury as a result of the Defendant's

12     conduct, that the injury can be traced to the challenged action, and that it is

13     likely to redressed by a favorable decision. [4]

14   14.   The Court should consider what has recently emerged as a cause of action

15     to Defendants now called "PREDATORY LENDERS". The best definition that

16     I have found is as follows:

---

[3]  As of 2007 the Nevada Legislature has amended NRS 598D.100 (1), which clearly demonstrates that this conduct will no longer be tolerated, INDICATING : It is unfair lending practice for a lender to: (b) Knowingly or intentionally make a home loan, other than a reverse mortgage, to a borrower, including, without limitation, a low-document home loan, no document home loan or stated-document home loan, without determining, using any commercially reasonable mean or mechanism, that the borrower has the ability to repay the home loan.[ 2. (b): Low-document home loan" means a home loan: (1) Whose terms allow a borrower to establish his ability to repay the home loan by providing only limited verification of his income and other assets; or (2) Which is evidenced only by a deed transferring some or all of the interest of the borrower in the home property to the creditor, (c) "no-document home loan" means a home loan whose terms allow a borrower to establish his ability to repay the home loan without providing any verification of his income and other assets.] **2007 version.**

[4]  Valley Forge Christian Coll. v. Am. United for Separation of Church and State, 454 U.S. 464, 472

(1982)

Complaint Predatory Lending Crisis                                    Page 6

1    Predatory lending as a syndrome of abusive loan terms or practices that
2    involve one or more of the following five problems:
3
4    (1) loans structured to result in seriously disproportionate net harm to
5    borrowers,
6    (2) harmful rent seeking,
7    (3) loans involving fraud or deceptive practices,
8    (4) other forms of lack of transparency in loans that are not actionable as
9    fraud, and
10   (5) loans that require borrowers to waive meaningful legal redress.
11

12   15.   Most, if not all, predatory loans combine two or more of these problems.

13         Similarly, some abusive terms or practices fall into more than one category.

14         Rather than serving as a proposed statutory definition, this definition of

15         predatory loans is intended as a diagnostic tool for identifying problematic

16         loan practices that require redress.

17   16.   In the overwhelming percentage of cases, predatory loans are a subset of

18         sub-prime loans, which are loans with higher interest rates that are designed

19         for borrowers with impaired credit or who do not otherwise qualify for loans in

20         the conventional prime market. Or, borrowers who could have qualified yet

21         were steered to adjustable rate loans premised on promises of refinance

22         when equity increases.[5]

23   17.   Therefore any foreclosures to be initiated against the Plaintiffs by parties with

---

[5] [See: See Predatory Mortgage Lending: Hearing Before the House Comm. on Banking and Financial Services, 106th Cong. 308-19 (2000) (testimony of Donna Tanoue, former Chairman, FDIC). The Interagency Guidance on sub-prime Lending defines sub-prime lending as credit extensions "to borrowers who exhibit characteristics indicating a significantly higher risk of default than traditional bank lending customers." Board of Governors of the Federal Reserve System et al., Interagency Guidance on sub-prime Lending 1 (1999); see also Board of Governors of the Federal Reserve System, Expanded Interagency Guidance for sub-prime Lending Programs 2 (2001). Sub-prime loans have higher interest rates to compensate lenders for the higher risk of default. See, e.g., Departments of the Treasury and Housing and Urban Development, Curbing Predatory Home Mortgage Lending, at 28 (June 20, 2000) [hereinafter HUD-Treasury Report (explaining that "borrowers that present less risk receive lower interest rates")].

1    no standing to commence or maintain any foreclosure proceeding and who

2    are strangers to the purported loan transactions and which parties were and

3    are unknown to the Plaintiffs and, moreover, did not fund the loans of the

4    Plaintiffs and are not owners of any of the funds to be repaid by the Plaintiffs

5    establishes the basis of the fraudulent transaction created by the

6    Defendants.

7  18.    As shall be noted herein, a further lure, of being able to guarantee the

8    Plaintiffs, "The American Dream of owning their Own Home," The initial

9    lender and the subsequent assignees acquiesced in establishing

10    qualifications of Plaintiffs to obtain the initial loan and subsequent loan based

11    upon non-traditional lending standards (such as "stated, non-document

12    income" looking to what income <u>may</u> be made by borrower [not actual

13    income].

14  19.    In a proper foreclosure both the Note and the Deed of Trust must be

15    assigned. As noted above, a mortgage loan consists of a Promissory Note

16    and a security instrument, typically a mortgage or a Deed of Trust. When the

17    Note is split from the Deed of Trust, "the Note becomes, as a practical matter,

18    unsecured." [See: **Restatement (Third) of Property (Mortgages) § 5.4 cmt.**

19    **a (1997)**].  See also[6]  A person holding only a Note lacks the power to

20    foreclose because it lacks the security, and a person holding only a Deed Of

---

[6]  Missouri Court of Appeals, Robert BELLISTRI v. OCWEN LOAN SERVICING : 284 S.W.3d 619(2009)states in part that "….Typically the same person holds both the Note and the Deed of Trust.  In the event they are split, the Note as a practical matter becomes unsecured." And further goes on to state that " The practical effect of splitting the Deed of Trust from the Promissory Note is to make it impossible for the holder of the Note to foreclose……."

1    Trust suffers no default because only the holder of the Note is entitled to

2    payment on it. [See **Restatement (Third) of Property (Mortgages) § 5.4**

3    **cmt. e (1997)**] . **<u>"Where the mortgagee has 'transferred'</u>** [7] **<u>only the</u>**

4    **<u>mortgage, the transaction is a nullity and his 'assignee,' having</u>**

5    **<u>received no interest in the underlying debt or obligation, has a</u>**

6    **<u>worthless piece of paper."</u>** [8]…'

7  20.    In 1872 the principle was established and is still in effect today as noted

8    in Carpenter v. Longan 83 U S  271  1872 WL 15414  U.S.Colo  21 L Ed  313

9    16 Wall. 271 indicating: "…The note and mortgage are inseparable; the

10    former as essential, the latter as an incident. **An assignment of the note**

11    **carries the mortgage with it, while an assignment of the latter alone is a**

12    **<u>nullity</u>**.[see: Jackson v. Blodget, 5 Cowan, 205; Jackson v. Willard, <u>4</u>

13    <u>Johnson, 43.</u>]…

14    "… The mortgage can have no separate existence. When the note is paid the
15    mortgage expires. It cannot survive for a moment the debt which the note
16    represents…."
17

18  21.    Just like the mortgage loan at issue in this matter, a host of dubiously

19    underwritten mortgage loans helped inflate a bubble in residential real

20    estate values.[9]

---

[7]  under N.R.S. § 104.9012, Nevada's Article 9, an "instrument" is defined as a negotiable instrument, "or any other writing that evidences a right to the payment of a monetary obligation ... and is of a type that in the ordinary course of business is transferred by delivery with any necessary endorsement or assignment." "Instruments" are thus defined somewhat broadly according to ordinary business practices.

[8]  4 Richard R. Powell, Powell on Real Property, § 37.27[2] (2000).

[9]  <u>See</u> Kareem Fahim & Janet Roberts, *Foreclosures, With No End in Sight*, N.Y. TIMES, May 17, 2009, at NJ 1. As it has become clear that millions of Americans are not capable of repaying loans crafted for them by commission hungry brokers, the liquidity of securities drawn from those loans

1  22.    The non-judicial foreclosure law in Nevada under Chapter 107 sets forth the

2          specific standards regarding who can commence and advance a non-judicial

3          foreclosure. Additionally, the standard is set regarding substitution of

4          Trustees. NRS 107.030 create covenants that may be utilized. This

5          permissive language, however allows other covenants to be used by the

6          parties, but creates the base line for establishing notice to the borrower.

7          Defendants are bound by the minimum requirements namely:

8

9          "..Covenant No. 9. That the beneficiary or his assigns may, from
10         time to time, appoint another trustee, or trustees, to execute the
11         trust created by the deed of trust or other conveyance in trust. A
12         copy of a resolution of the board of directors of beneficiary (if
13         beneficiary be a corporation), certified by the secretary thereof,
14         under its corporate seal, or an instrument executed and
15         acknowledged by the beneficiary (if the beneficiary be a natural
16         person), shall be conclusive proof of the proper appointment of
17         such substituted trustee. Upon the recording of such certified
18         copy or executed and acknowledged instrument, the new
19         trustee or trustees shall be vested with all the title, interest,
20         powers, duties and trusts in the premises vested in or conferred
21         upon the original trustee. If there be more than one trustee,
22         either may act alone and execute the trusts upon the request of
23         the beneficiary, and all his acts thereunder shall be deemed to
24         be the acts of all trustees, and the recital in any conveyance
25         executed by such sole trustee of such request shall be
26         conclusive evidence thereof, and of the authority of such sole
27         trustee to act…."

28

29  **B.    DEBT COLLECTORS:**

30  23.    <u>At no time</u> mentioned herein did Defendants COUNTRYWIDE HOME

31         LOANS, INC. a New York Corporation or RECONTRUST COMPANY, N.A. <u>do</u>

32         <u>not</u> have a foreign debt collector's license as required by NRS 649.171,

---

were then frozen. <u>See</u> Joshua Boak, *IMF Puts Subprime Loss Near $1 Trillion: Economic Damage Equals $143 for Every Person on the Planet,* CHI. TRIB., April 9, 2008, C1.

1     though it is a 'debt collector' within the meaning of 15 U.S.C. § 1692 (a)(6),

2     as incorporated into Nevada law by NRS 649.370.

3  24.   The Deed of Trust and NRS 107.080(2) requires the Lender, defendant

4     COUNTRYWIDE HOME LOANS, INC. a New York corporation to give notice

5     of any default prior to accelerating the Note.

6  25.   The Deed of Trust requires any notice of default to specify: (a) the default; (b)

7     the action required to cure the default; (c) a date, not less than thirty (30)

8     days from the date the notice is given to Borrower, by which the default must

9     be cured; and (d) that failure to cure the default on or before the date

10    specified in the notice may result in acceleration of the sums secured by this

11    Security instrument and sale of the subject property.

12  26.   The of the Deed of Trust gives the borrowers the right, if they meet certain

13    conditions, to have enforcement of the security interest discontinued at any

14    time prior to the earliest of (a) Five days before the sale, (b) Such period as

15    applicable law might specify for the termination of borrower's right to

16    reinstate or (c) entry of a judgment enforcing the security interest.

17  27.    RECONTRUST COMPANY, N.A .does not have, and did not have at the

18    times mentioned herein, a foreign collector's license as required by NRS

19    649.171, and likewise, is not a domestic collection agency.

20  28.   On or about December 1, 2009, Defendant TRUSTEE CORPS as Agent for

21    BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS

22    SERVICING, LP, by Defendant FIRST AMERICAN TITLE INSURANCE

23    COMPANY, as agent, executed and caused to be recorded as Document No.

1    451695, a document entitled; "Notice of Default and Election to Sell Under

2    Deed of Trust", [hereinafter referred to as "NOD"] in the Lyon County

3    Recorder's office. The NOD failed to comply with the proper notice

4    requirements in the following manner:

5        A. The NOD failed to specify the amount of the default.

6        B. The NOD failed to specify the action required to cure the default.

7        C. The NOD failed to specify the date by which the default may be cured.

8        D. The NOD failed to advise the Borrower of his right to have

9            enforcement of the security interest discontinued if they meet certain

10           conditions.

11       E. The NOD stated that the beneficiary under the Deed of Trust had

12           already declared all sums secured immediately due.

13       F. The NOD failed to unequivocally state that if the default were not

14           cured, the amount due under the Note would be accelerated and that

15           the beneficiary would conduct a foreclosure sale.

16       G. The NOD was an attempt to collect a debt.

17  29.  On information and belief, Plaintiffs believe Defendants TRUSTEE CORPS

18       have or intended to initiate a Trustee's Sale.

19  30.  The Notice of Trustee's Sale did not advise Plaintiffs of their rights to have

20       enforcement of the security interest discontinued at any time before five (5)

21       days prior to the sale date if they were to meet certain conditions.

22  31.  That, upon information and belief, the Notice of Trustee's sale was never

23       sent by certified mail to the Plaintiffs, in as much as they never actually

Complaint Predatory Lending Crisis                              Page 12

1    received it and were not informed by the post office that it was to be returned

2    as undeliverable.

3    32.   Upon information and belief, Plaintiffs assert and as more particularly noted

4    herein the parties giving the notices and conducting the sale, though an initial

5    Trustee, presented false information  on the notices. Defendant MORTGAGE

6    ELECTRONIC REGISTRATION SYSTEM, INC., a subsidiary of

7    MERSCORP, INC., a Delaware corporation, [MERS] was represented in the

8    Notice of Sale as the Beneficiary, who later recorded an assignment of the

9    Deed of Trust.[10]

10   33.   This case arises because the Plaintiffs have determined that they are the

11   victim of unlawful systemic predatory lending practices perpetrated by major

12   lenders, such conduct includes as alleged herein, a breach of the implied

13   duty of good faith and fair dealing (i.e. the duty to refrain from frustrating the

14   purpose of the lending contract, fraud, violations of Fair Lending practices

15   and more). The duty of good faith and fair dealing attends every contract in

16   Nevada[11] and is subject to Violation NRS 107.080 et. sq. practices.[12] Any

---

[10]   Plaintiffs have discovered no recorded documents authorizing any actions of said companies, which would be consistent with the guidelines of NRS 107.030 (covenant 9, regarding corporate actions)

[11]   This duty attends every contract in Nevada. In *Hilton Hotels v. Butch Lewis Productions,* 107 Nev. 226, 232-33, 808 P.2d 919 (1991), the Nevada Supreme Court wrote: Where the terms of a contract are literally complied with but one party to the contract deliberately contravenes the intention and spirit of the contract, that party can incur liability for breach of the implied covenant of good faith and fair dealing. This court recognized such an action in *A.C. Shaw Construction v. Washoe County,* 105 Nev. 913, 784 P.2d 9 (1989), in which contract damages were held to be recoverable for breach of the implied covenant of good faith and fair dealing. *Also see, Frantz v. Johnson,* 116 Nev. 455, 465 n.4, 999 P.2d 351 (2000) ("An implied covenant of good faith and fair dealing exists in every Nevada contract and essentially forbids arbitrary unfair acts by one party that disadvantage the other." Citations omitted).

[12]   Nevada Revised Statute (NRS) 205.372 requires full disclosure of all material facts attendant to a mortgage lending transaction.1. A person, who, with the intent to defraud a

Complaint Predatory Lending Crisis                                      Page 13

1    foreclosure or threat of foreclosure in the near future to foreclose is based

2    upon a Deed of Trust and Note that is no longer held by the same entity or

3    party.  Further, the loan is the actions of each of the Defendants in violation of

4    various State laws, including and not limited to a violation of the Unfair

5    Lending  Practices.

6                                          **III.**
7                                        **Facts**
8

9    34.    That on or about  May 1, 2007, Plaintiffs were induced by Defendant

10          COUNTRYWIDE HOMES LOANS, INC. to execute a "NOTE", the ability to

11          pay was not based upon standard accounting standards, but was based

12          solely on the increased equity in the home being purchased and the promise

13          and representations that re-financing would be no problem. Plaintiffs  after

14          execution of the "Note "from representatives of COUNTRYWIDE HOMES

15          LOANS, INC, executed a Deed of Trust as a security instrument on May 1,

16          2007 in Lyon County, Nevada. However, Plaintiffs were not informed that the

17          named beneficiary "MERS" was holding themselves out as an entity that

18          would not take a beneficial interest in the transaction but would be posing as

19          a "nominee." Defendant COUNTRYWIDE HOMES LOANS, INC, provided

20          Plaintiffs with the "form documents," not explaining that without a proper

21          beneficiary the instrument would not be an effective security instrument. The

22          "boilerplate" Note, provided by COUNTRYWIDE HOMES LOANS, INC,

---

participant in a mortgage lending transaction:(A) Knowingly makes a false statement or
misrepresentation concerning a material fact *or deliberately conceals or fails to disclose a
material fact.*

1    including among other things a waiver of "Presentment and Notice of

2    Dishonor" which would prevent Plaintiff from being able to determine who

3    was the Holder of the Note. Unknown to Plaintiff, however, was the fact that

4    COUNTRYWIDE HOMES LOANS, INC was utilizing guidelines in the

5    "intake" information and/or underwriting department that would qualify

6    Plaintiff for a Home Purchase Loan, but said evaluation was contrary to those

7    set forth in the Unfair lending practice under NRS 598D.100 et. seq. (2003)

8    Plaintiff were also informed that the value of the home was more than

9    sufficient to establish a basis to be able to "re-finance" the ARN, when the

10   payments increased, so there was no "worry" as to executing the Note.

11                                    **IV.**
12                          **FIRST CAUSE OF ACTION**
13                            **INJUNCTIVE RELIEF**
14

15   35.   Plaintiffs re-allege the aforesaid paragraphs as though set forth in full herein.

16   36.    NRS 30.040 allows any person whose rights, status of other legal relations

17          are affected by a Deed to have the District court determine any questions  of

18          construction or validity arising under the instrument and to obtain a

19          declaration of rights, status or other legal .

20   37.    On or about December 1, 2009, TRUSTEE CORPS as Agent for BAC HOME

21          LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING,

22          LP be recorded as Document No. 451695, a document entitled; "Notice of

23          Default and Election to Sell Under Deed of Trust", [hereinafter referred to as

Complaint Predatory Lending Crisis                                    Page 15

1  "NOD"] in the Lyon County Recorder's office failed to specify the amount of

2  the default.

3  38.  The NOD failed to itemize the amount necessary to cure and a date certain

4  within which to cure.

5  39.  The NOD failed to state the Borrowers have the right to have enforcement of

6  the security interest discontinued if the meet certain conditions.

7  40.  The NOD stated that the beneficiary under the Deed of Trust had already

8  declared all sums secured immediately due.

9  41.  The NOD failed to unequivocally state that if the defaults were not cured, the

10  amount due under the Note would be accelerated and that the Trustee would

11  conduct  a foreclosure sale.

12  42.  The failure to adhere to the notice provisions contained in the Deed of Trust,

13  the statement in the Notice of Default and Elections to Sell declaring that the

14  beneficiary had already declared a default and accelerated the obligation

15  and the failure to give unequivocal notice of acceleration and sale are

16  "substantial irregularities" which are grounds to vacated the sale.

17  43.  The failure to adhere to the notice provisions required by law in the Notice of

18  Trustee's Sale are "substantial irregularities" which are grounds to vacate the

19  sale.

20  44.  Defendant RECONTRUST COMPANY, N.A. and MORTGAGE

1    ELECTRONIC REGISTRATION SYSTEM, INC., a subsidiary of

2    MERSCORP, INC., a Delaware corporation, [MERS] have participated in

3    some fashion as agents, representatives or employees to advance the

4    Violation NRS 107.080 et. sq. against Plaintiffs' property, namely: prepared,

5    service, and filed notices without having the legal authority to perform such

6    acts; asserting themselves as beneficiaries with authority to assign a deed of

7    trust without having legal authority.  Only the beneficiary, successor

8    beneficiary, and trustee can initiate said action. There is suspicion as to who

9    was the beneficiary to initiate the foreclosure process.

10   45.   Plaintiffs represent that the continued deception exists by all the present

11        Defendants, participating in the transaction, assuming either the servicing

12        rights or accepting the note, the Defendants are subject to the actions. Also

13        as noted in NRS 645F.440, the Trustee's Deed should be rescinded. NRS

14        645F.440 notes:

15        "645F.440. Foreclosure purchasers: Transaction rescinded due to
16        fraud or deceit upon homeowner…
17            1. In addition to the penalty provided in NRS 645F.430
18        and except as otherwise provided in subsection 5, **if a**
19        **foreclosure purchaser engages in any conduct that**
20        **operates as a fraud or deceit upon a homeowner in**
21        **connection with a transaction** that is subject to the provisions
22        of NRS 645F.300 to 645F.450, inclusive, including, without
23        limitation, a foreclosure reconveyance, **the transaction in**
24        **which the foreclosure purchaser acquired title to the**
25        **residence in foreclosure may be rescinded by the**
26        **homeowner** within 2 years after the date of the recording of the
27        conveyance.
28
29            …6. As used in this section, "bona fide purchaser"
30        means any person who purchases an interest in a

1      residence in foreclosure from a foreclosure purchaser in
2      good faith and for valuable consideration and who does
3      not know or have reasonable cause to believe that the
4      foreclosure purchaser engaged in conduct which violates
5      subsection 1…." (emphasis added)[13]

6  46.     Plaintiffs had no adequate remedy at law to stop these unlawful foreclosures

7      and evictions with this Court's intervention to RESCIND THE TRUSTEE

8      DEED after the Violation NRS 107.080 et. sq..

9  47.     Plaintiffs will be irreparably harmed in the event that such non-judicial

10      foreclosure sale is completed, its remedy at law being wholly inadequate.

11  48.     The deception perpetrated by Defendants, MTC FINANCIAL INC. dba

12      TRUSTEE CORPS and MORTGAGE ELECTRONIC REGISTRATION

13      SYSTEM, INC., a subsidiary of MERSCORP, INC., a Delaware corporation,

14      [MERS] in advancing said foreclosure requires an immediate and permanent

15      injunction.

16  49.     Defendants MTC FINANCIAL INC. dba TRUSTEE CORPS and MORTGAGE

17      ELECTRONIC REGISTRATION SYSTEM, INC., a subsidiary of

18      MERSCORP, INC., a Delaware corporation, [MERS] are therefore estopped

19      from relying upon the Deed of Trust.   Plaintiffs stand in default of the paper

20      mortgage contract and contend that that contract is null and void pursuant to

21      the legal principles stated herein, including estoppel, and pursuant to offset,

22      as well as the statutory affirmative defense pursuant to NRS 598D.110.

23      Additionally the amount of damages owed to Plaintiffs, upon being trebled

---

[13] Plaintiffs have recorded and sent the demand to rescind in accordance with statute.

1    pursuant to Nevada's anti-racketeering statute, and violation of fair lending

2    practices, exceeds the face value of the Promissory Note.

3    50.    The Plaintiffs are entitled to a declaratory judgment that the aforesaid

4    foreclosure sale was improperly notice and is null and void ab initio.

5                                           **V.**
6                      **SECOND CAUSE OF ACTION**
7                          **(Declaratory Relief).**[14]

8    51.    Plaintiffs incorporate each and every paragraph aforesaid of this Complaint

9    as if fully set forth in this claim.

10   52.    As alleged in Plaintiffs' claims regarding Defendants violations of the State

11   laws, Defendants have violated Plaintiffs rights under State law.

12   53.    Defendants, MTC FINANCIAL INC. dba TRUSTEE CORPS and

13   MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC., a subsidiary

14   of MERSCORP, INC., a Delaware corporation, [MERS] have either

15   proceeded with foreclosures asserted a right, or transferred interest against

16   Plaintiffs or threatened foreclosures against  Plaintiffs for which Defendants

---

[14]    NRS 31.010-30.160 [The Uniform Declaratory Judgment## Act opens the door to adjudication of innumerable complaints and controversies not theretofore capable of judicial relief and permits the courts to vindicate challenged rights, clarify and stabilize unsettled legal relations, and remove legal clouds which create insecurity and fear. St.1929, c. 22, § 1 et seq. Kress v. Corey, 1948, 189 P.2d 352, 65 Nev. 1 A Declaratory Judgment may, under appropriate circumstances, be coupled with injunctive relief. N.R.S.31.010, 31.030, subd. 1, 31.040, 31.180. Aronoff v. Katleman, 1959, 345 P.2d 221, 75 Nev. 424 A declaratory judgment may be brought to determine an actual controversy Pittenger v. Home Sav. and Loan Ass'n of Los Angeles, 166 Cal. App. 2d 32, 332 P.2d 399 (2d Dist. 1958) , Green v. Cox, 44 Or. App. 183, 605 P.2d 1198 (1980), [#FN1] regarding the validity of a mortgage or trust deed, Cal.—R.G. Hamilton Corp. v. Corum, 218 Cal. 92, 21 P.2d 413 (1933). Fla.—Rice v. Fremow, 165 So. 2d 447 (Fla. Dist. Ct. App. 2d Dist. 1964) [#FN2] or the rights, duties, and liabilities of the parties, U.S.—Manchester Gardens, Inc. v. Great West Life Assur. Co., 205 F.2d 872 (D.C. Cir. 1953); U. S. v. Park Side Court, Inc., 257 F. Supp. 177 (D.N.J. 1966), judgment aff'd, 376 F.2d 853 (3d Cir. 1967) , Lomanto v. Bank of America, 22 Cal. App. 3d 663, 99 Cal. Rptr. 442 (4th Dist. 1972) [#FN3] including those of a trustee. Black v. Elkhorn Coal Corp., 233 Ky. 588, 26 S.W.2d 481 (1930). [#FN4] Declaratory relief is also appropriate to determine priorities between mortgages, Grambo v. South Side Bank & Trust Co., 141 Pa. Super. 176, 14 A.2d 925 (1940). —Bank of Augusta v. Satcher Motor Co., 249 S.C. 53, 152 S.E.2d 676 (1967) [#FN5] and the validity of a sale made by a trustee. Holland v. Pendleton Mortg. Co., 61 Cal. App. 2d 570, 143 P.2d 493 (2d Dist. 1943) [#FN6]

1     are not owed any payments, and  have no lawful right to foreclose and have

2     unlawfully deprived or attempted to deprive Plaintiffs of their homes.

3  54.    Plaintiffs seek a declaratory judgment against Defendants COUNTRYWIDE

4     BANK FSB a Federal Savings Bank; COUNTRYWIDE HOME LOANS, INC.

5     a New York Corporation; COUNTRYWIDE FINANCIAL CORP., a Delaware

6     corporation BANK OF AMERICA  CORPORATION, N.A;  and MORTGAGE

7     ELECTRONIC REGISTRATION SYSTEM, INC., a subsidiary of

8     MERSCORP, INC., a Delaware corporation, [MERS] establishing the failure

9     to establish an interest in the property, right to foreclose, or encumber or

10     cloud Plaintiffs' title.

11                         **VI.**

12                  **THIRD CAUSE OF ACTION**
13             **DEBT COLLECTION VIOLATIONS**

14  55.    Plaintiffs re-allege the foregoing paragraphs as though set forth in full herein.

15  56.    This is an action for damages brought by a individual consumer for

16     Defendants' MTC FINANCIAL INC. dba TRUSTEE CORPS and

17     MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC., a subsidiary

18     of MERSCORP, INC., a Delaware corporation, [MERS] in violations of the

19     Nevada Fair Debt Collection law found in Title 649 of the Nevada Revised

20     Statutes.  In particular, **NRS 649.370 provides that any violation of the**

21     **Federal Fair Debt Collection Practice Act, is a violation of Nevada law**

22     **as an independently stated cause of action.**

Complaint Predatory Lending Crisis                          

1  57.   The following allegations recite the Federal law; Fair Debt Collection

2        Practices Act, 15 U.S.C. § 1692, et seq. (hereinafter "FDCPA"), which are

3        incorporated into the laws of the State of Nevada, as noted above.

4  58.   These laws prohibit debt collectors from engaging in abusive, deceptive and

5        unfair practices.

6  59.   Defendant TRUSTEE CORPS, is a "debt collector" as defined by 15 U.S.C.

7        § 1692(a)(6) and NRS 649.020.

8  60.   The aforesaid Notice of Default and Election to Sell recorded in the Official

9        Records of the County Recorder in and for the County of Lyon (hereinafter

10       NOD) is a "communication" as defined by §1692.(a)(2). [15]

11 61.   The NOD failed to contain the language mandated by 15 U.S.C. §1692e(11).

12 62.   The NOD failed to contain the language mandated by U.S.C. §1692g(a)(1)-

13       (5).

14 63.   The NOD is a false and deceptive means of collecting a debt in that it

15       represented the Note secured by the Deed of Trust had been accelerated

16       when in fact the Note cannot be legally accelerated without first sending a

17       notice to the Plaintiffs of a right to cure the alleged default.

18 64.   The NOD is a false and deceptive means of collecting a debt in that if failed

---

[15]  Defendant MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC., a subsidiary of MERSCORP, INC., a Delaware corporation, [MERS] is claimed to be the beneficiary of the Deed of Trust allowing the notice to be given, and purported to be able to assign the Deed of Trust.

1    to provide the notices required by the underlying Deed of Trust.

2   65.   The drafting, tendering, recordation and mailing of a Notice of Default which

3    contains the information required by the Deed of Trust is a condition

4    precedent to initiate foreclosure proceedings and acquire the right of

5    possession of the property.

6   66.   Defendants TRUSTEE CORPS and  MORTGAGE ELECTRONIC

7    REGISTRATION SYSTEM, INC., a subsidiary of MERSCORP, INC., a

8    Delaware corporation, [MERS], violated the 15 U.S.C. §1692f(6)(A) by

9    continuing with the foreclosure  proceedings when at that time there was no

10    present right to possession of the property since the NOD was defective.

11   67.   Plaintiffs are entitled to statutory damages pursuant to 15 U.S.C. §1692k(a)

12    in the amount $1,000.00 each.

13   68.   Plaintiffs are entitled to actual damages pursuant to 15 U.S.C. §1692k(a) in

14    an amount according to proof at the time of Trial.

15   69.   Plaintiffs are entitled to reasonable attorney fees and costs to litigate the

16    action pursuant to 15 U.S.C. §1692k(a).

17    **VII.**

18    **FOURTH CAUSE OF ACTION**
19    **UNFAIR AND DECEPTIVE TRADE PRACTICES**

20   70.   Plaintiffs re-allege the foregoing paragraphs as though set forth in full herein.

Complaint Predatory Lending Crisis                                    Page 22

71.   The Nevada Unfair and Deceptive Trade Practice Act, NRS 598.0923 defines a 'deceptive trade practice' as conducting a business of occupation without all required State, County or City licenses; NRS 598.0923(1), and as violating State of Federal statute or regulation relating to the sale or lease of goods or services; NRS 598.0923(3).

72.   That a violation of NRS 598.0923 is a deceptive trade practice and by sending the Plaintiffs the aforementioned notice, TRUSTEE CORPS and MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC., a subsidiary of MERSCORP, INC., a Delaware corporation, [MERS] has violated both subsections (1) and (3) of that Law, making the Plaintiffs 'Victims of Fraud' as defined by NRS 41.600(2)(d).

73.   That Defendant TRUSTEE CORPS did not have the required foreign collector's license when it sent the aforementioned notice, presumably authorized or requested by the "nominee/beneficiary" MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC. [MERS] a Delaware Corporation to the Plaintiffs and violated the NRS 649.370 incorporating the FDCPA, in sending the notices that it did.

74.   As victims of fraud the Plaintiffs are entitled to damages, costs and attorney fees under NRS 41.600(3).

**VIII.**

**FIFTH CAUSE OF ACTION**
**(Violation of Unfair Lending Practices, N.R.S. 598D.100)**

75. Plaintiffs repeat and re-allege each and every allegation contained in all Paragraphs heretofore and incorporates the same as though fully set forth herein.

76. The Defendants, COUNTRYWIDE HOME LOANS, INC. a New York Corporation; COUNTRYWIDE BANK FSB a Federal Savings Bank; COUNTRYWIDE FINANCIAL CORP., a Delaware corporation; BANK OF AMERICA  CORPORATION, N.A; and LISA KLIMENKO, individually, and their brokers and agents, knew or should have known that the originators of the loans made promises, through their agents, representatives, or employees, to the Plaintiffs that refinancing would be available when or if any monthly payments due on Adjustable Rate Notes increased.

77. Defendants' actions complained of herein constitute unfair lending practices and violated the protections of Plaintiffs guaranteed under N.R.S. 598D.100, and the Plaintiffs are damaged as a result thereof as alleged herein. Pursuant to said statute: "If a lender willfully engages in any unfair lending practice described  in this chapter in connection with a home loan, the lender is liable to the borrower in an amount equal to the sum of:

(a) Three times the amount of any actual damages sustained by the borrower;
(b) If the borrower brings an action and is successful in enforcing the liability imposed by paragraph (a) in the action, the costs of bringing the action and reasonable attorney's fees as determined by the court…."
(c) The Plaintiffs were required to retain counsel and expend costs to prosecute this claim…."

78. NRS 598D.110(3) indicates: "…**The borrower has a defense against the**

Complaint Predatory Lending Crisis                                    Page 24

1    **unpaid obligation** of the home loan to the extent of any amount awarded by

2    a Court pursuant to paragraph (a) of subsection 2, and the Court, in addition

3    to any other legal or equitable remedy, may cure any existing default of the

4    home loan and cancel any pending foreclosure sale, trustee's sale or other

5    sale to enforce the home loan…."

6                                      **IX.**
7                       **SIXTH CAUSE OF ACTION**
8    **(VIOLATION OF THE COVENANT OF GOOD FAITH AND FAIR DEALING)**

9    79.    Plaintiffs re-allege the foregoing paragraphs as though set forth in full herein.

10   80.    That the aforementioned Note and Deed of Trust constitutes a lawful, written

11          contract between the parties that was executed within the State of Nevada.

12   81.    That implicit in any contact executed in the State of Nevada is the implied

13          covenant of Good Faith and Fair Dealing.

14   82.    That Defendant COUNTRYWIDE HOME LOANS, INC. a New York

15          Corporation, and BANK OF AMERICA CORPORATION, N.A., breached its

16          duty of good faith and fair dealing in multiple and repeated respects in that it

17          offered the Plaintiffs consideration for a loan modification, told them that the

18          foreclosure would be postponed and then invited them to have their denial

19          reconsidered after it had foreclosed on their home.

20   83.    COUNTRYWIDE HOME LOANS, INC. a New York Corporation or

21          successors in interest BANK OF AMERICA CORPORATION, N.A., thwarted

22          the legitimate purposes of the Note and Deed of Trust, all to the great

Complaint Predatory Lending Crisis                                    Page 25

1    detriment and damage of the Plaintiffs.

2 84.   COUNTRYWIDE HOME LOANS, INC. a New York Corporation and/ or

3    BANK OF AMERICA CORPORATION, N.A., upon which the Plaintiffs

4    reasonably relied, in leading the Plaintiffs to believe that the foreclosure on

5    their home was suspended while they proceeded to foreclose was a breach

6    of this covenant for which the Plaintiffs may receive equitable and damage

7    relief.

8 85.   Defendants, COUNTRYWIDE HOME LOANS, INC. a New York Corporation;

9    COUNTRYWIDE BANK FSB a Federal Savings Bank; BANK OF AMERICA

10    CORPORATION, N.A; and LISA KLIMENKO, individually, acting as

11    representative or agent owed to Plaintiffs a contractual duty of good faith and

12    fair dealing (i.e., a duty to refrain from frustrating the purposes of the

13    mortgage contract. Breach of Contract).[16] Defendants, interpretation of the

14    subject mortgage contract, as evidenced by Defendants' BANK OF

15    AMERICA CORPORATION, N.A., continued communications and monthly

---

[16] We have previously stated that "[m]utuality of obligation requires that unless both parties to a contract are bound, neither is bound." *Sala & Ruthe Realty, Inc. v. Campbell,* 89 Nev. 483, 487, 515 P.2d 394, 396 (1973)." *Serpa v. Darling,* 107 Nev. 299, 303, 810 P.2d 778 (1991) "It is well settled in Nevada that "every contract imposes upon the contracting parties the duty of good faith and fair dealing." However, a breach of this duty does not give rise to tort liability unless there is a special relationship between the tort-victim and the tortfeasor. Tort liability for breach of the implied covenant of good faith and fair dealing is appropriate where 'the party in the superior or entrusted position' has engaged in 'grievous and perfidious misconduct.' Furthermore, a successful Plaintiffs is entitled to compensation for all of the natural and probable consequences of the wrong including injury to the feelings from humiliation, indignity and disgrace to the person."*University & Croy. Coll. Sys. v. Sutton,* 120 Nev. 972, 989, 103 P.3d 8 (2004) "We note that JEM' s **cause of action for breach of the implied covenant of good faith and fair dealing would not barred provided it was grounded in contract. An implied covenant of good faith and fair dealing exists in every Nevada contract and essentially forbids arbitrary, unfair acts by one party that disadvantage the other.** *See Consolidated Generator v. Cummins Engine,* 114 Nev. 1304, 1311, 971 P.2d 1251, 1256 (1998); *Overhead Door Co. v. Overhead Door Corp.,* 103 Nev. 126, 128, 734 P.2d 1233, 123(1987).*Frantz v. Johnson,* 116 Nev. 455, 465 n.4, 999 P.2d 351 (2000)

1      statements sent to Plaintiffs, violates the public policy of the State of Nevada.

2  86.    As a direct result of Defendants contractual breach of the duty of good faith

3      and fair dealing [17] Plaintiffs have been harmed as described herein.

4                              **X**

5              **SEVENTH CLAIM FOR RELIEF**

6           **(Violation NRS 107.080 et. sq.)**

7  87.    Plaintiffs re-allege the foregoing paragraphs as though set forth in full herein.

8  88.    On or about December 1, 2009 Defendant TRUSTEE CORPS  as Agent for

9      Defendant BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE

10     HOME LOANS SERVICING, LP, caused to be recorded as Document No.

11     451695, a "Notice of Default and Election to Sell Under Deed of Trust",

12     [hereinafter referred to as "NOD"] in the Lyon County Recorder's Office.

13  89.   Plaintiffs have adequately plead that the continued deception exists by all the

14     present Defendants, participating in the transaction,  assuming either the

15     servicing rights or accepting the Note, the Defendants are subject to the

16     actions. Also as noted in NRS 645F.440, the Trustee's Deed should be

17     rescinded. NRS 645F.440 notes:

18         "645F.440. Foreclosure purchasers: Transaction rescinded due to
19            fraud or deceit upon homeowner…

20                1. In addition to the penalty provided in NRS 645F.430 and
21             except as otherwise provided in subsection 5, **if a foreclosure**
22             **purchaser engages in any conduct that operates as a fraud**
23             **or deceit upon a homeowner in connection with a**

---

[17]  Nevada Revised Statute (NRS) 205.372 requires full disclosure of all material facts attendant to a mortgage lending transaction.

1      **transaction** that is subject to the provisions of NRS 645F.300
2      to 645F.450, inclusive, including, without limitation, a
3      foreclosure reconveyance**, the transaction in which the**
4      **foreclosure purchaser acquired title to the residence in**
5      **foreclosure may be rescinded by the homeowner** within 2
6      years after the date of the recording of the conveyance.
7      …6. As used in this section, "bona fide purchaser" means any
8      person who purchases an interest in a residence in foreclosure
9      from a foreclosure purchaser in good faith and for valuable
10     consideration and who does not know or have reasonable
11     cause to believe that the foreclosure purchaser engaged in
12     conduct which violates subsection 1…." (emphasis added)[18]

13  90.    Plaintiffs have no adequate remedy at law to stop these unlawful

14        foreclosures and evictions with this Court's intervention to RESCIND THE

15        TRUSTEE DEED after the Violation NRS 107.080 et. sq..

16  91.    Additionally, under information and belief, Plaintiffs assert that the obligations

17        of the Plaintiffs on which the Defendants have declared a default were

18        discharged when the investors in the mortgage backed securities claims

19        were paid as a result of over-collateralization of the obligations and/or credit

20        default swaps and/or federal bailout funds and other monies paid to the

21        investors who owned the Notes and obligations and/or to the Defendants or

22        bank holding companies who disbursed the monies in such fashion as to

23        extinguish the obligations of Plaintiffs to repay the monies they borrowed

24        which are at issue herein.

25  92.    Neither the investors in the mortgage backed securities nor any other entity

26        or person who had a right to payment from the borrower(s) or was a

27        beneficiary under the Deeds of Trust ever declared a default of the Notes

[18]

1    executed by Plaintiffs and no beneficiary under the Deed of Trust ever

2    declared a default under the Note and Deed of Trust and no beneficiary

3    under the Deed of Trust ever directed a sale of any of the properties owned

4    by Plaintiffs.

5  93.    The servicers of the Notes have no contract with the  investment in the

6    mortgage back securities, and no right to declare a default on the note and

7    the allegations by the servicers including the Defendants herein in the

8    notices of Default and election to sell the Plaintiffs property to the effect that

9    "the beneficiary has declared a Default and directed that the property be

10    sold" is not true, and the Defendant servicers who have made that false

11    representation knew at the time each and every such notice was executed,

12    mailed and recorded that those allegations were false.

13  94.    Foreclosure against the property of the Plaintiffs cannot commence without a

14    written declaration of Default and direction to the trustee to sell the property

15    made by the persons or entities to whom the obligation under the Notes are

16    owed.

17  95.    After the debts on the Notes were discharged to the investors, the

18    assignments of the Deeds of Trust and Notes, the designations of substitute

19    trustees and substitute beneficiaries, the declarations of default and to sell

20    the properties, the Notices of Default and Election To Sell, the Notices of

21    Sale and the foreclosure sales were nullities and transferred nothing to the

22    entities now seeking to foreclose on the Plaintiffs properties or claiming to

1      own the Plaintiffs properties as bank REO's.

2  96.    Neither the Defendant servicers nor any other person or entity with any legal

3       right to declare a default and direct a sale on any of the Plaintiffs Notes

4       and/or Deeds of Trust ever declared a default and directed a sale of any

5       such property of Plaintiffs herein.

6  97.    As a direct and proximate result of the unlawful and wrongful commencement

7       and advancement of foreclosure proceedings by Defendants complained of

8       herein, the Plaintiffs who have been subjected to such actions by

9       Defendants have suffered damages including without limitation economic

10      damages, severe and disabling psychological and physical pain and

11      suffering, humiliation, embarrassment, damage to credit and other damages

12      as alleged herein.

13  98.    Plaintiffs have been required to retain counsel and expend costs to prosecute

14      this claim for relief.

15                    **<u>XI.</u>**

16           **<u>EIGHTH CAUSE OF ACTION</u>**

17               **(Quiet Title Action)**

18  99.    Plaintiffs re-allege the foregoing paragraphs as though set forth in full herein.

19  100.   The Title to Plaintiffs' property is clouded.  That is, MTC FINANCIAL INC. dba

20      TRUSTEE CORPS and their brokers and agents, or some other Defendant,

21      named or unnamed which acted in concert with Defendant COUNTRYWIDE

1    HOME LOANS, INC. a New York Corporation; MORTGAGE ELECTRONIC

2    REGISTRATION SYSTEM, INC., a subsidiary of MERSCORP, INC., a

3    Delaware corporation, [MERS];  and/or MORTGAGE ELECTRONIC

4    REGISTRATION SYSTEM, INC., a subsidiary of MERSCORP, INC., a

5    Delaware corporation, [MERS]; and their brokers and agents, or at

6    Defendant's direction or request, recorded a Deed of Trust, or other

7    document(s), which indicate at least one of the Defendants possesses a

8    security interest.[19]

9  101.   Plaintiffs recorded a "Lis Pendens" with the Lyon County Recorder, pursuant

10    to Chapter 40, to place, on notice anyone who may unknowingly purchase

11    the home at an unlawful non-judicial foreclosure sale.   Plaintiffs thereby

12    clearly encumbered the property so as to provide Defendants, and others,

13    with formal notice as to the defective character of Defendants' claims.

14  102.   Plaintiffs, above named,  own in fee simple, possess and are entitled to

15    possess the property described herein together with the exclusive right at all

16    times to enter upon or in said land to prospect for and to drill, bore, recover

17    and remove the same, described as follows:

18    The Subject property being described as:

19
20    **Plaintiffs: STEVEN R. GILLESPIE and KATHERINE A. GILLESPIE**
21    **[hereinafter Plaintiffs]:**
22

---

[19]  Plaintiffs acquired said property by valid Deed transferring legal title and recorded in accordance with Nevada Law, any claimed equitable interest as to holders of note(s) secured by a Deed of Trust to said property in invalid and of no force and effect and constitutes a "cloud" on Plaintiffs' legal ownership.

1   **1364 MOUNTAIN ROSE DRIVE, FERNLEY, NEVADA 89408**
2
3   **All of the real property with improvements thereon, located in City of**
4   **Fernley, County of Lyon, State of Nevada bounded and described as**
5   **follows:**
6
7   **Lot 88 OF SUNDANCE SUBDIVISION PHASE 2, RECORDED IN THE**
8   **OFFICE OF THE COUNTY RECORDER OF LYON COUNTY, STATE OF**
9   **NEVADA, ON JUNE 8, 2005, AS DOCUMENT NO. 353261, OFFICIAL**
10  **RECORDS.**
11
12  **APN: 022-273-05**
13

14  103.   That Defendants claim and assert an interest or interests in the property

15         adverse to Plaintiffs; that the claims of said Defendants are without any right

16         whatsoever and Defendants have not, nor have any of them, any estate,

17         right, title or interest whatsoever in said land or premises or any part thereof.

18  104.   Plaintiffs need not tender the obligation in order to Quiet Title in that not only

19         do Plaintiffs have an absolute defense to the obligation (See: NRS 598D.110

20         and NRS 107.080); but Plaintiffs have asserted that the transaction was

21         suspect from the inception and the Deeds of Trusts have been challenged.

22         Additionally all acts advancing any foreclosure and placing notices on the

23         property (cloud on title) were invalid and of no force and effect.

24  105.   The statues of the title must be examined and the Lis Pendens is mandatory

25         under Chapter 40 of the NRS.

26         WHEREFORE, Plaintiffs prays judgment against the Defendants as follows:

27              A.  That the Defendants and all other persons unknown claiming any

28                  right, title, estate, lien or interest in and to the property described

Complaint Predatory Lending Crisis                              Page 32

1           herein adverse to the Plaintiffs' ownership, or any cloud upon

2           Plaintiffs' title thereto, be required to set forth the nature of their

3           claims.

4        B. That all adverse claims of Defendants, or any of them, be

5           determined by Decree of this Court.

6        C. That, by Decree of this Court, it be declared and adjudged that

7           Plaintiffs are the owners of the property, and that Defendants have

8           no right, title, estate, lien or interest in said property, nor have any

9           cloud upon Plaintiffs' title thereto.

10      D. That Defendants, all and singular, be forever barred from asserting

11         any claim whatsoever in or to the property adverse to Plaintiffs.

12      E. For such other and further relief as to the Court may seem just and

13         proper in the premises.

14                    <u>**XIII.**</u>

15             <u>**NINTH CAUSE OF ACTION**</u>

16               **(Fraud Through Omission)**

17  106.   Plaintiffs repeat and re-allege each and every allegation contained all

18         Paragraphs heretofore and incorporates the same as though fully set forth

19         herein.

20  107.  In declaring Plaintiffs "qualified" for the initial loan issued by COUNTRYWIDE

21         HOME LOANS, INC. a New York Corporation, as noted above, their

22         executives and employees committed fraud by failing to disclose to Plaintiffs

23         the predatory, unethical and unsound lending and foreclosure practices, and

24         bonuses and inflated salaries paid pursuant thereto. The failure to disclose

1      included issuance of a Deed of Trust that may be for the purpose of evading

2      taxes and cost, hiding the real holder, providing services with power of

3      collections without obtaining licenses required, and utilizing improper

4      account standards to purportedly qualify Plaintiffs for the loan. Defendant

5      COUNTRYWIDE HOME LOANS, INC. a New York Corporation; LISA

6      KLIMENKO, individually, failed to disclose were material to the mortgage

7      contract, and to Plaintiffs informed right to rescind. Defendants

8      COUNTRYWIDE HOME LOANS, INC. a New York Corporation and LISA

9      KLIMENKO, individually, knew, and should have known, if these facts had

10     been disclosed, Plaintiffs would not have executed the subject mortgage

11     contract and would have ceased to rely Defendants' integrity and good faith.

12     Plaintiffs, had they been fully and timely informed, would have rescinded.

13     Defendants COUNTRYWIDE HOME LOANS, INC. a New York Corporation;

14     assiduously cultivated reliance upon its alleged integrity and good faith

15     through years of advertising – which was falsely portrayed.

16  108.   As a direct and proximate result, Plaintiffs were damaged.  That is, the value

17     of real estate Plaintiffs obtained pursuant to the subject mortgage transaction

18     has markedly diminished.  Plaintiffs suffered emotional distress, anxiety and

19     loss of enjoyment of life.  Much of Plaintiffs' equity, obtained via a sizeable

20     down payment, has been dissipated as a direct and proximate result of

21     Defendants' predatory, illegal and unsound lending and foreclosure practices

22     for which Plaintiffs are entitled to exemplary and punitive damages,

23     according to the proof submitted to the fact finder, both being in excess of

1          $10,000.00.

2                                          **XIII**
3                          **TENTH  CLAIM FOR RELIEF**
4                          **(Fraud in the Inducement)**

5    109.   Plaintiffs re-allege the foregoing paragraphs as though set forth in full herein.

6    110.   Defendants, COUNTRYWIDE HOME LOANS, INC. a New York Corporation

7             and LISA KLIMENKO, individually; as lenders or brokers and their brokers

8             and agents, successor in interest, and other Named Defendants, through

9             their agents, failed to disclose the material terms of the loans and incidental

10           services to Plaintiffs, and others similarly situated, by, inter alia, failing to

11           explain the fact that Plaintiffs and others similarly situated were not qualified

12           to enter the loans on the terms stated and failed to advise the Plaintiffs of the

13           fact that Defendants had no lawful right to foreclose upon the homes of the

14           Plaintiffs.

15   111.   Defendants COUNTRYWIDE HOME LOANS, INC. a New York Corporation

16           and LISA KLIMENKO, individually; as lenders or brokers concealed the true

17           terms of the loans, and the risks of the transactions, including, but not limited

18           to, negative amortization, prepayment penalty provisions, the risk of default

19           and the risk of foreclosure, from Plaintiffs failed to advise the Plaintiffs that

20           the Defendants, TRUSTEE CORPS had no lawful right to foreclose upon

21           their homes, as a result of severance of the note from the Deed of Trust or

22           failure to have proper party record and mail mandatory documents for non-

Complaint Predatory Lending Crisis                                      Page 35

1       judicial foreclosure and debt collection.

2   112.   Defendants severely misrepresented the ability of Plaintiffs, and others

3       similarly situated, to qualify for the loans.

4   113.   As a direct result of the failure to disclose all these matters discussed

5       hereinbefore, the Defendants have caused the Plaintiffs damages, pain and

6       suffering, mental anguish and the Plaintiffs were required to retain Counsel

7       to prosecute these claims.

8                                    <u>XIV</u>

9                   **<u>FOURTEENTH CLAIM FOR RELIEF</u>**

10                          **(Unjust Enrichment)**

11  114.   Plaintiffs re-allege the foregoing paragraphs as though set forth in full herein.

12  115.   The bonuses, inflated salaries and corporate profits which stemmed from

13       COUNTRYWIDE HOME LOANS, INC. a New York Corporation;

14       COUNTRYWIDE BANK FSB a Federal Savings Bank; MERSCORP, INC. a

15       Virginia corporation; BANK OF AMERICA  CORPORATION, N.A; TRUSTEE

16       CORPS; BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME

17       LOANS SERVICING, LP; and their brokers and agents, unethical servicing

18       practices, unethical, unsound lending practices, advancing of Violation NRS

19       107.080 et. sq.s resulted in unjust enrichment.

20  116.   Additionally, it is believed by Plaintiffs, under information and belief, the

21       corporate Defendants and successor in interest have received, or are

Complaint Predatory Lending Crisis                                    Page 36

1    attempting to receive, taxpayer monies, e.g., bailout monies channeled

2    through the United States Government.   Defendants herein have not

3    disclosed to the United States Government the systemic fraud by omission

4    alleged herein, or the racketeering activities described herein.  Accordingly,

5    Defendants and successor in interest have been unjustly enriched pursuant

6    to the fraud, breach of contract and racketeering perpetrated against

7    Plaintiffs and are compounding, or attempting to compound, that unjust

8    enrichment via receipt of taxpayer monies. As a direct and proximate result

9    Plaintiffs have been injured and damaged as described herein, in excess of

10   $10,000.00.

11        WHEREFORE, Plaintiffs pray for the following relief:

12

13        A.    For a declaratory judgment that the aforesaid foreclosure sale

14              is improperly, or any one with standing to commence and

15              advance a non-judicial foreclosure and null and void ab initio.

16        B.    For a declaration that the actions taken by a foreign

17              corporation, in collecting a debt without a foreign collector's

18              license are void ab initio, and that the same constituted

19              Deceptive Trade Practices within the meaning of NRS

20              598.0923.

21        C.    For an injunction preventing Defendants TRUSTEE CORPS

22              and BAC HOME LOANS SERVICING, LP FKA

23              COUNTRYWIDE HOME LOANS SERVICING, LP, from going

Complaint Predatory Lending Crisis                          Page 37

1            forward with this, or any other, foreclosure in the State of

2            Nevada until it becomes licensed and used the proper legal

3            forms to do so.

4      D.     For an injunction against any Buyers to prevent them from

5            evicting the Plaintiffs from the subject property, and a

6            determination that their sole remedy is a refund o their bid

7            amount.

8      E.     For an injunction against any such other person that may be

9            the real party on interest in the Note and Deed of Trust,

10           forbidding it from initiating another foreclosure until such time

11           as it has properly considered the Plaintiffs loss mitigation

12           papers, otherwise complies with its duties of good faith and fair

13           dealing.

14     F.     For statutory damages pursuant to 15 U.S.C. §1692k(a), as

15           incorporated by NRS 649.370, in the amount of $1,000.00 for

16           each Plaintiff against TRUSTEE CORPS and BAC HOME

17           LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS

18           SERVICING, LP.

19     G.     For actual damages pursuant to 15 U.S.C. §1692k(a) as

20           incorporated by NRS 649.370, in an amount according to proof

21           at the time of Trial against any and all parties causing direct

22           and proximate harm to the Plaintiffs.

23     H.     For general damages against COUNTRYWIDE HOME LOANS,

1                 INC. a New York Corporation in excess of $10.000.00.

2       I.     For such other and further damages of any kind against all

3             parties as may appear just and proper at Trial.

4       J.    For reasonable attorney fees and costs for litigating the action.

5

6

7                        **AFFIRMATION**

8   **That the undersigned affirms that this document does not contain the social**
9                 **security number of any person.**

10
11       Respectfully submitted this 19th  day of August, 2010.

12
13                      ____/s/ RICK LAWTON ESQ.____
14                      Rick Lawton, Esquire
15

16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34

35

1  **CERTIFICATE OF SERVICE**
2
3
4  Pursuant to NRCP 5(b), I, the undersigned, hereby certify that I am an employee of
5  the Law Office of Rick Lawton, P.C., and that on this date I deposited for mailing at
6  Fallon, Nevada, postage pre-paid, a true and correct copy of the: **AMENDED**
7  **COMPLAINT** to the following:
8
9  [   ] **OFFICE MAIL:** By placing in sealed envelope(s), which I placed for
10 collection and mailing today following ordinary business practices. I am readily
11 familiar with this agency's practice for collection and processing of
12 correspondence for mailing; such correspondence would be deposited with the U.S.
13 Postal Service on the same day in the ordinary course of business.
14
15 [ ] **PERSONAL DEPOSIT IN MAIL:** By placing in sealed envelope(s), which I
16 personally deposited with the U.S. Postal Service. Each such envelope was
17 deposited with the U.S. Postal Service at Los Angeles, California, with first class
18 postage thereon fully prepaid.
19
20 [   ]   **EXPRESS U.S. MAIL:** Each such envelope was deposited in a facility
21 regularly
22 maintained at the U.S. Postal Service for receipt of Express Mail at Los Angeles,
23 California, with Express Mail postage paid.
24
25 [   ]   **HAND DELIVERY:** I caused to be hand delivered each such envelope to
26 the office of the addressee.
27
28 [   ]   **UNITED PARCEL SERVICE:** By placing in sealed envelope(s) designated
29 by United Parcel Service ("UPS") with delivery fees paid or provided for, which I
30 deposited in a facility regularly maintained by UPS or delivered to a UPS courier, at
31 Los Angeles, California.
32
33 [   ]   **ELECTRONIC MAIL:** By transmitting the document by electronic mail to the
34 electronic mail address.
35
36 [ X  ] **E-FILING:** By causing the document to be electronically filed via the Court's
37 CM/ECF system, which effects electronic service on counsel who are registered with
38 the CM/ECF system or EFLEX
39
40 [   ] **FAX:** By transmitting the document by facsimile transmission. The
41 transmission was reported as complete and without error.
42
43 Dated: this 19th day of August, 2010
44                                                           ____/s/  Lavinia Johnston___
45                                                                      Lavinia Johnston
46

Complaint Predatory Lending Crisis                                    Page 40