**WO**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

IN RE MORTGAGE ELECTRONIC REGISTRATION SYSTEMS (MERS) LITIGATION

THIS DOCUMENT RELATES TO:

CV 10-00630-PHX-JAT (Robinson)
CV 10-01550-PHX-JAT (Bilyea)
CV 10-01547-PHX-JAT (Stejic)
CV 10-01548-PHX-JAT (Molina)

Docket No. MDL 09-2119-PHX-JAT

**ORDER**

Pending before the Court are two Motions for Class Certification pursuant to Rule 23 of the Federal Rules of Civil Procedure. The first motion was filed by Plaintiffs Sally Robinson-Burke, Rosa Silvas, Nicholas DeBaggis, and Thomas Bilyea.[1] (Doc. 1913). The second motion was filed by Plaintiffs Milan Stejic and Maria Hernandez (collectively, "Plaintiffs"). (Doc. 1914). The Court now rules on the Motions.

## I. Factual Background

This case originally began as a multi-district litigation ("MDL") centralizing civil actions related to the formation and operation of Mortgage Electronic Registration Systems, Inc. and MERSCORP, Inc. (collectively, "MERS"). (Doc. 1). After claims in twenty of the associated cases were dismissed (Doc. 1170; Doc. 1247), the remaining

---

[1] On November 6, 2015, this Court dismissed with prejudice Plaintiff DeBaggis' claims against Defendant U.S. Bank National Association. (Doc. 1978). Additionally, Plaintiff Debaggis is not a named Plaintiff in any member case. (Doc. 1602 at 8). Thus, Plaintiffs class certification cannot rest on allegations made by Plaintiff DeBaggis.

Plaintiffs filed a Consolidated Amended Complaint ("CAC") on June 4, 2011. (Doc. 1424).

The CAC included twelve counts, including allegations of violations of Arizona Revised Statute ("A.R.S.") § 33–420 (Count I); wrongful foreclosure (Count II); violations of Nevada Revised Statutes § 107.080 (Count III); violations of Oregon Revised Statutes ("O.R.S.") § 86.735 (Count IV); allegations of aiding and abetting wrongful foreclosure (Count V); aiding and abetting predatory lending (Count VI); unjust enrichment (Count VII); slander of title (Count VIII); violations of O.R.S. § 646.607 (Count IX); and violations of South Carolina Code of Laws § 39–5–10 (Count X). (Doc. 1424 at 7-57). Additionally, Plaintiffs sought declaratory relief (Count XI) and injunctive relief (Count XII). (Doc. 1424 at 58-60).

The amended complaint was dismissed on October 3, 2011. (Doc. 1602). Plaintiffs appealed dismissal of Counts I-VI to the Ninth Circuit Court of Appeals. The Court of Appeals reversed the dismissal of Count I and affirmed the dismissal of Counts II-VI. *In re Mortgage Elec. Registration Sys., Inc.*, 754 F.3d 772, 786 (9th Cir. 2014). Specifically, the Court of Appeals held that: (1) A.R.S. § 33-420 applies to Notices of Trustee Sale, Notices of Substitution of Trustee, and Assignments of a Deed of Trust, documents which Plaintiffs alleged to be fraudulent in the CAC; (2) Plaintiffs' claims are not time-barred; (3) Plaintiffs have standing to sue under A.R.S. § 33-420; and (4) Plaintiffs pleaded their robosigning claims with sufficient particularity to satisfy Federal Rule of Civil Procedure 8(a). *In re Mortgage Elec. Registration Sys., Inc.*, 754 F.3d at 781-784.

On August 17, 2015, Plaintiffs filed motions seeking class certification for two classes for the purpose "of pursuing a statutory damages claim on behalf of Arizona property owners arising from Defendants' violation of A.R.S. § 33-420 while conducting foreclosure proceedings in the State of Arizona." (Doc. 1913 at 1; Doc. 1914 at 1). The first motion proposes a class that would be composed of property owners against whom "[MERS] claimed that it was transferring the beneficial interest under the Deed of Trust to a new beneficiary **along with** the Note and any payments due under the note, and

caused the assignment to be recorded." (Doc. 1913 at 1). The second motion proposes a class that would be composed "of owners of residential property in Arizona who had a Substitution of Trustee and Notice of Trustee Sale recorded against their property . . . whereby [MERS], purportedly acting as beneficiary, substituted the trustee, and caused the substitution to be recorded." (Doc. 1914 at 1). Plaintiffs further allege that documents related to these mortgage transactions misrepresent MERS's status and authority as a beneficiary, contain false statements regarding assignments, and are robosigned. (Doc. 1913 at 3-6; Doc. 1914 at 3-5).

**II. Mandate on Remand**

Within the Ninth Circuit "a court will generally refuse to reconsider an issue that has already been decided by the same court or a higher court in the same case." *Gonzalez v. Arizona*, 677 F.3d 383, 390 (9th Cir. 2012). Thus, when "the issue in question [was] decided explicitly or by necessary implication in the previous disposition," there is no need to revisit the decision. *United States v. Thrasher*, 483 F.3d 977, 981 (9th Cir. 2007) (quoting *Herrington v. County of Sonoma*, 12 F.3d 901, 904 (9th Cir. 1993)). Additionally, "when a court is confronted with issues that the remanding court never considered, the 'mandate requires respect for what the higher court decided, not for what it did not decide.' " *Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012) (quoting *United States v. Kellington*, 217 F.3d 1084, 1093 (9th Cir. 2000)).

As the dismissal of the CAC explained, Plaintiffs' claims concerning the operation of MERS have already been found not to state a claim, either by the Arizona courts or the Ninth Circuit Court of Appeals. (Doc. 1602 at 5-8). In its opinion, the Court of Appeals did not reverse or even address Plaintiffs' claims pertaining to MERS' status as a beneficiary or the validity of MERS assignments. Instead, the Ninth Circuit Court of Appeals addressed claims of robosigning and noted specific examples of documents allegedly fraudulently signed or notarized within the CAC. *In re Mortgage Elec. Registration Sys., Inc.*, 754 F.3d at 783-84. The Court of Appeals' opinion did not

reference any of Plaintiffs' other claims or factual assertions from Count I. *Id*. at 781-84.[2] This omission indicates the Court of Appeals' intentions concerning the scope of its mandate on remand. *See Fid. Nat'l Fin., Inc. v. Friedman*, 855 F. Supp. 2d 948, 956 (D. Ariz. 2012) (holding that "[b]ecause the mandate is silent as to its scope, the court will look at the Ninth Circuit's opinion" to ensure that the consideration of an issue does not "impermissibly exceed[] the scope of the mandate").

Plaintiffs' motions for class certification cannot be used to resurrect a dismissed theory. The Court of Appeals' reversal was limited to Plaintiffs' claims of robosigning and forgery under A.R.S. § 33-420. Thus, this Court will consider only those portions of Plaintiffs' motions which address these claims.

**III. Class Certification Legal Standard**

The district courts have broad discretion to grant or deny class certification. *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir. 2010) (citing *Yamamoto v. Omiya*, 564 F.2d 1319, 1325 (9th Cir. 1977)). However, the United States Supreme Court requires that such a determination should be made only after the district court has "engage[d] in a 'rigorous analysis' of each Rule 23(a) factor when determining whether plaintiffs seeking class certification have met the requirements of Rule 23." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 980 (9th Cir. 2011) (citing *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). Under Rule 23, it is the party seeking class certification that "bears the burden of showing that each of Rule 23(a)'s requirements and at least one of Rule 23(b)'s requirements" are satisfied. *Juvera v. Salcido*, 294 F.R.D. 516, 520 (D. Ariz. 2013) (citing *Dukes v. Wal–Mart, Inc.*, 509 F.3d 1168, 1176 (9th Cir. 2007), *rev'd on other grounds*, ––– U.S. ––––, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011)).

Rule 23 has two implicit prerequisites that Plaintiffs must satisfy for the Court to grant certification. *Clay v. Am. Tobacco Co.*, 188 F.R.D. 483, 490 (S.D. Ill. 1999);

---

[2] This analysis was complicated by the fact that Count I of the CAC is 18 pages and does not break out its various theories of liability on a count by count basis.

*Singleton v. Adick*, No. CV 09–486–PHX–JAT, 2009 WL 3710717, at *2 (D. Ariz. Nov. 2, 2009). First, in order to maintain a class action, the class must be adequately defined and clearly ascertainable. *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970); *see also Lozano v. AT & T Wireless Ser., Inc.*, 504 F.3d 718 (9th Cir. 2007) ("The district court's failure to analyze the Rule 23(a) factors in determining whether to grant class certification . . . resulted in its certifying a theory with no definable class."). The class cannot be overbroad, amorphous, or vague, but must be susceptible to a precise definition. *Clay*, 188 F.R.D. at 490. A class must be precisely defined so the Court can determine who will be bound by the judgment. *McHan v. Grandbouche*, 99 F.R.D. 260, 265 (D. Kan. 1983).

Second, the named representative must be a member of the class. *Bailey v. Patterson*, 369 U.S. 31, 32-33 (1962). Plaintiffs must also prove that their proposed class meets all of the four requirements of Rule 23(a):

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

*Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 985 (9th Cir. 2015) (quoting Fed. R. Civ. P. 23(a)).

Finally, Plaintiffs must also prove that at least one of the following Rule 23(b) requirements is met:

> (1) the prosecution of separate actions would create a risk of : (a) inconsistent or varying adjudications or (b) individual adjudications dispositive of the interests of other members not a party to those adjudications; (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class; or (3) the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed. R. Civ. P. 23(b).

## IV. Discussion

### A. Adequately Defined and Clearly Ascertainable

Plaintiffs claim the proposed classes for each motion would number in excess of 50,000 members, based on a sample of documents from three counties in Arizona. (Doc. 1913 at 7; Doc. 1914 at 7). Plaintiffs Sally Robinson-Burke, Rosa Silvas and Thomas Bilyea propose certification of a class defined as:

> owners of residential property in Arizona who had an Assignment of Deed of Trust recorded against their property between February 21, 2008 and the present whereby [MERS] claimed that it was transferring the beneficial interest under the Deed of Trust to a new beneficiary **along with** the Note and any payments due under the note, and caused the assignment to be recorded.

(Doc. 1913 at 1) (footnote omitted). In the proposed order, Plaintiffs Sally Robinson-Burke, Rosa Silvas and Thomas Bilyea add that the purpose of certification is the recovery of statutory damages arising

> from the recording by Defendants . . . of any of the following documents against any of the class members' property, in violation of A.R.S. § 33-420: (1) Assignment of Deed of Trust . . . ; (2) Substitution of Trustee; (3) Notice of Trustee's Sale; and/or (4) Trustee's Deed Upon Sale, which listed one of the Defendants named herein as a beneficiary.

(Doc. 1916 at 1-2).

Plaintiffs Milan Stejic and Maria Hernandez propose a class consisting of "owners of residential property in Arizona who had a Substitution of Trustee and Notice of Trustee Sale recorded against their property between January 27, 2009 and the present whereby [MERS], purportedly acting as beneficiary, substituted the trustee, and caused the substitution to be recorded." (Doc. 1914 at 1) (footnote omitted). In their proposed order, Plaintiffs Milan Stejic and Maria Hernandez add that the purpose of class certification is the recovery of statutory damages arising

> from the recording by Defendants . . . either directly or through an agent, of any of the following documents against any of the class members' property, in violation of A.R.S. § 33-420: (1) Substitution of Trustee; (2) Notice of Trustee's Sale; and/or (3) Trustee's Deed Upon Sale, which listed [Defendants] as a beneficiary.

(Doc. 1915 at 1-2).

In both motions, Plaintiffs' also claim that documents related to these mortgage transactions misrepresent MERS's status and authority as a beneficiary, contain false statements regarding assignments, and are robosigned. (Doc. 1913 at 3-6; Doc. 1914 at 3-5). However, none of the proposed class definitions specifically incorporate or require these additional allegations.

As discussed above, the Ninth Circuit Court of Appeals reversed only the claims of robosigning contained within Count I of the CAC. *In re Mortgage Elec. Registration Sys., Inc.*, 754 F.3d at 781-84. All other claims or theories within Count I were dismissed by this Court, and that dismissal was not reversed by the Court of Appeals. (Doc. 1602 at 5-6). This Court will not read into the Court of Appeals' decision a reversal as to every factual predicate of Count I on which the Court of Appeals was silent. Thus, only allegations of robosigning survive as a potential basis for Plaintiffs' proposed classes. In each motion seeking class certification, Plaintiffs assert that many documents were robosigned. (Doc. 1913 at 5; Doc. 1914 at 5). This is the sole remaining claim before the Court. However, the arguments and evidence Plaintiffs present to satisfy the Rule 23(a) requirements largely ignore this claim. (Doc. 1913; Doc. 1914). This abandonment of the remaining claim is further demonstrated by Plaintiffs Robinson and Bilyea's statement that robosigning "does not form the basis of the class claims." (Doc. 1941 at 1). Additionally, the research performed by Dr. Wilson does not pertain to robosigning, the sole claim remaining before the Court.

Defendants oppose Plaintiffs' motion, claiming their class definitions identify tens of thousands of potential plaintiffs, but fail to provide how they would identify who the actual class members are. (Doc. 1928 at 7). Defendants claim that determining the actual

members of the class, as well as the applicable documents would be next to impossible, requiring the Court to conduct "individualized 'mini-trials' just to determine who is a member of the class." *Id*. at 9. Additionally, Defendants claim that proving Plaintiffs' robosigning claims would require a jury "to examine separately each document to determine who signed it." *Id*. at 14. In so arguing, Defendants seem to presume that a robosigning requirement would be read into each class definition, even though the actual definitions merely require that MERS signed the relevant documents.[3]

Plaintiffs reply by asserting that class members can be determined using "public records and/or . . . electronic information within the possession of [] Defendants." (Doc. 1947 at 3; Doc. 1948 at 3). Plaintiffs further claim that whether documents contain language assigning the note "can be made using 'objective criteria' and a simple count of the assignments (and related documents) at issue make it 'administratively feasible' to determine the members of the class." (Doc. 1947 at 3; Doc. 1948 at 3). To support their argument, Plaintiffs submitted a statement of work (Doc. 1947-1 at 2; Doc. 1948-1 at 2) from a research plan used to generate a database of MERS assignments to Defendants. (Doc. 1947 at 3; Doc. 1948 at 3). However, Plaintiffs do not satisfy the prerequisite that the proposed classes be adequately defined and clearly ascertainable.

**1. The Proposed Classes Are Not Adequately Defined**

Both motions claim the purpose of class certification is to recover statutory damages "on behalf of Arizona property owners arising from Defendants' violation of

---

[3] "Robosigning" as used by the Court of Appeals, and this Court, is inartful because it has never been exactly defined. However, this Court finds that what "robosigning" does not encompass is every assignment ever made by MERS. In other words, the Court of Appeals clearly intended robosigning to include a problem with the execution of the documents, not that by merely executing a document MERS was robosigning.

The Court reaches this definitional conclusion in part based on the plain language of the Court of Appeals' decision. Further, the Court of Appeals found that "robosigning" is a cause of action. However, the Arizona Courts have held that MERS assigning a note and deed of trust is not a cause of action. *See Sitton v. Deutsche Bank Nat. Trust Co.*, 31 P.3d 237, 243 ¶28 (Ariz. Ct. App. 2013). Thus, the definition of "robosigning" as used by the Ninth Circuit Court of Appeals must be something more than MERS assigning a note or deed of trust.

A.R.S. § 33-420 while conducting foreclosure proceedings in the State of Arizona."[4] (Doc. 1913 at 1; Doc. 1914 at 1). However, neither proposed class definition expressly limits class membership to those who have been foreclosed or noticed for trustee sale. Thus, the proposed class definitions would expand the potential class plaintiffs to include members who do not fall within the scope of Count I of the CAC. (Doc. 1424 at 7-25). The Ninth Circuit has not addressed the issue as to whether a class can be expanded beyond those harmed as identified in the complaint or the full scope of a district court's discretion to modify a class definition. *See, e.g.*, *Bueche v. Fid. Nat. Mgmt. Servs., LLC*, No. 2:12-CV-01114 JAM, 2014 WL 2468601, at *3 (E.D. Cal. June 2, 2014). Nonetheless, this Court will not accept such expanded definitions as proposed by Plaintiffs because the definitions are inconsistent with their own arguments regarding who is impacted by Defendants' alleged wrong. Further, the Court will not exercise its discretion by redefining the classes in this case, because as discussed below, the even redefined classes (consistent with both the complaint and the mandate) would still suffer from deficiencies that are fatal to class certification.

Additionally, Plaintiffs seek to establish classes in which any person who meets the criterion, from either February 21, 2008 (Doc. 1913 at 1) or January 27, 2009 (Doc. 1914 at 1) to the present, would be a class member. This timeframe could potentially add new members daily. Even if the Court of Appeals had reversed the entirety of the dismissal of Count I, an open ended time period would frustrate any attempt for a precise definition of either proposed class. *See Clay*, 188 F.R.D. at 490 (finding a proposed class of "all persons in the United States who, as children, purchased and smoked cigarettes

---

[4] Other statements appearing within the motions support the limitation to only those members foreclosed using MERS. For example, "Plaintiffs', and similarly situated class members', properties were foreclosed upon pursuant to Arizona's nonjudicial foreclosure, or Deed of Trust, statute, A.R.S. § 33-801, *et. seq.*" (Doc. 1913 at 3, n. 2; Doc. 1914 at 3, n. 2). Further, at oral argument, Plaintiffs' counsel specified that the Robinson class was targeted at circumstances in which the note and deed of trust were assigned to a new person or entity prior to foreclosure and the Stejic class was targeted at circumstances where MERS directly forecloses. Thus, even though neither class definition specifically requires a foreclosure, it is clear that Plaintiffs intend such a limitation.

designed, manufactured, promoted, or sold by the defendants" to be overly broad and amorphous). Thus, Plaintiffs' proposed classes are not adequately defined.[5]

### 2. The Proposed Classes Are Not Clearly Ascertainable

The proposed classes are not ascertainable because there is no reasonable way to determine which documents are relevant to Plaintiffs' allegations. *See, e.g.*, *Martin v. Pac. Parking Sys. Inc.*, 583 F. App'x 803, 804 (9th Cir. 2014) cert. denied, 135 S. Ct. 962, 190 L. Ed. 2d 833 (2015) (holding the district court did not abuse its discretion by finding plaintiff's "proposed class was not ascertainable because there was no reasonably efficient way to determine which of the hundreds of thousands of individuals who used parking lots" fell within the plaintiff's proposed class).

Here, Plaintiffs hired Real Estate Services and Technology ("REST"), a research company run by Fred Popke, to locate documents consistent with their claims concerning MERS assignments. (Doc. 1913-8 at 2). REST determined there were 83,000 primary and 418,000 secondary documents which pertained to assignments from MERS to one of the named Defendants within Maricopa, Pima, and Pinal counties from February 15, 2008 through July 13, 2015.[6] (Doc. 1913-8 at 2, 4; Doc. 1914-5 at 2, 4). From the 83,000 primary documents, REST acquired copies of 1,200 assignments of a Deed of Trust. (Doc. 1913-8 at 3; Doc. 1914-5 at 3). Researchers gave a "higher priority to

---

[5] The Court has already concluded that the proposed classes are not adequately defined for the reasons stated. Moreover, the Court notes that at oral argument Defendant Aurora argued that Plaintiffs made no effort to identify which Defendants would be in which classes. Aurora further argued that as to all the proposed class members, Plaintiffs made no effort to show Aurora was involved in each transaction. Plaintiffs did not dispute that they treated all Defendants as a single entity under an agency or acting in concert theory. This Court disagrees with Plaintiffs' theory that if Aurora was an actor in one MERS's foreclosure in Arizona, Aurora is properly swept into all MERS transactions. Thus, for this additional reason the Court finds the class is not adequately defined and is overbroad because it would sweep in various Defendants who were totally uninvolved in certain transactions.

[6] Mr. Popke stated in his declaration that the initial search of indexed information included transactions between MERS and America's Servicing Company, Bank of America, Central Mortgage Company, Quality Loan Service, US Bank, and Wells Fargo. (Doc. 1913-8 at 3; Doc. 1914-5 at 3). Additionally, the figures presented by Mr. Popke were "rough/rounded counts," and included information obtained from third parties. (Doc. 1913-8 at 3; Doc. 1914-5 at 3).

[a]ssignments that were associated with a subsequent Re-Conveyance, Notice of Trustee Sale and/or Trustee Sale instrument as a supplemental (related) instrument."[7] (Doc. 1913-8 at 3; Doc. 1914-5 at 3). The number of documents selected from each county depended upon the number of MERS assignments within that county. (Doc. 1913-8 at 3; Doc. 1914-5 at 3). REST then individually inspected each document to extract any information not supplied by public records or third party data providers. (Doc. 1913-8 at 4; Doc. 1914-5 at 4).

The compiled data was then applied to a "statistical sampling scheme" developed by Dr. Jeffrey R. Wilson, a statistician hired by Plaintiffs to develop a method to determine what "sample was a good representative of the entire population." (Doc. 1913-7 at 4). Dr. Wilson applied his sampling scheme to the data provided by REST to "determine what population percentages and population totals of the MERS-related assignments in the 83,000 recorded primary documents included an assignment of the note." (Doc. 1913-7 at 5). Dr. Wilson concluded that between 50,038 and 56,234 of the 83,000 primary documents contained assignments. (Doc. 1913-7 at 38).

Statistical sampling is widely accepted among the circuits to prove liability, including this one. *See Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1167 (9th Cir. 2014) cert. denied, 135 S. Ct. 2835 (2015). However, use of statistical sampling for class certification would be inappropriate in this case for the following reasons.

First, the scope of REST's research appears to be centered entirely on assignments by MERS to one of the named Defendants. (Doc. 1928-2 at 64). As discussed above, this Court has already ruled on the allegations concerning the validity of MERS assignments. (Doc. 1609 at 5-6). What is more, Plaintiffs claim the proposed classes are composed of Arizona property owners who have been subject to foreclosure proceedings. (Doc. 1913 at 1; Doc. 1914 at 1). However, the research conducted by REST focused on locating and identifying assignments of Deeds of Trust, without identifying which assignments

[7] There is no indication how many of the 1,200 sample documents related to a subsequent foreclosure.

subsequently led to foreclosure.

Plaintiffs do not represent that the same method used by REST to identify assignment documents would be applicable to identifying robosigned documents. Nor do Plaintiffs represent that Dr. Wilson's statistical sampling scheme would be equally useful if applied to allegedly robosigned documents. Thus, the relevance of Dr. Wilson's results to claims of robosigning serve only to demonstrate the difficulty in locating potentially fraudulent documents. Further, as indicated above, Plaintiffs' proposed class definitions do not have robosigned documents as a requirement for class membership.

Second, Plaintiffs seek class certification using a statistical study based on a sample of a sample. Essentially, Plaintiffs seek to represent that 1,200 documents, chosen from 83,000 documents from three counties is representative of all documents in all fifteen counties in Arizona. Dr. Wilson declared this sample size was sufficient to "ensure that the sample was a good representative of the entire population." (Doc. 1913-8 at 4). However, Dr. Wilson admitted in his deposition that the sample size was intended to represent a population of 83,000 documents. (Doc. 1928-2 at 75). Had Dr. Wilson's study focused on robosigned documents, the population of documents could be significantly different, because Section 33-420 applies to more than assignment documents. For example, the group could be much larger if Plaintiffs could allege that all such documents were robosigned. The larger population would require a larger sample size to adequately represent it. Additionally, a potential plaintiff could have several documents that would fall under Section 33-420; which would further complicate any attempt to use statistical sampling to identify potential class members. Conversely, if not all such documents are alleged to be robosigned, this group sweeps non-class members into the statistical sample.

Third, Mr. Popke admitted in his deposition that counties provide varying levels of information for download to the public and use different computer programs, all of which depends upon the accuracy of the data entered by the counties or third parties. (Doc. 1928-2 at 65-66). Thus, the document population was limited to documents accessible by

researchers and consequently the sample size necessary to represent that pool was based upon this limitation. *Id*. Even if Plaintiffs' research had focused on identifying robosigned documents, allowing the use of statistical sampling here would be inappropriate, because the information relied on is inconsistent or unreliable. *See Pierce v. Cty. of Orange*, 526 F.3d 1190, 1200 (9th Cir. 2008) (holding that using statistical sampling to calculate damages is inappropriate when the information used is unreliable).

Fourth, and possibly most significant, if this Court redefined the class to be limited to the claim remaining after remand in Count I, any documents obtained from public records or Defendants would require examination of each individual document to determine which documents were forgeries or robosigned. Defendants correctly argue that this would require an individual analysis of hundreds of thousands of documents to determine potential class members.[8] (Doc. 1920 at 10, 14). Even if Plaintiffs could obtain the records of every foreclosure related real estate transaction in Arizona, they would still be left with the task of identifying which ones are fraudulent under Section 33-420.

Because of the foregoing, Plaintiffs' proposed classes are not adequately defined or clearly ascertainable. Additionally, the Court will not utilize its discretionary powers to redefine the membership of the proposed classes because Plaintiffs have not met the prerequisites for Rule 23 even using a hypothetically redefined class. Thus, Plaintiffs' motions for class certification will be denied because these prerequisites are not met. Alternatively, the Court will consider the other factors required for class certification under Federal Rule of Civil Procedure 23 to determine whether class certification would be appropriate under those tests.

**B. Named Representatives Fall Within the Proposed Class**

**1. Numerosity**

The focus of the numerosity requirement involves an inquiry into whether joinder of all potential plaintiffs would be impracticable. Fed. R. Civ. P. 23(a)(1). Numerosity

---

[8] Dr. Wilson admitted in his deposition that individual inspection of each the 83,000 primary documents identified by Mr. Popke would be "beyond comprehension." (1928-2 at 75).

requires examination of the facts of each case and does not impose any absolute limitation. *Gen. Tel. Co. of the Northwest, Inc. v. Equal Employment Opportunity Comm'n*, 446 U.S. 318, 330 (1980). While no absolute limits exist, the Supreme Court has suggested that a class of fifteen members is too small to meet the numerosity requirement. *Harik v. California Teachers Ass'n*, 326 F.3d 1042, 1051 (9th Cir. 2003) (citing *Gen. Tel.*, 446 U.S. at 330).

Plaintiffs assert that the numerosity requirement of Rule 23(a)(1) is satisfied because there are "over 50,000 potential plaintiffs" in each of the proposed classes. (Doc. 1913 at 7; Doc. 1914 at 7). However, the only evidence offered by Plaintiffs is the statistical study of Dr. Wilson. As discussed above, the study has no application in the context of robosigning and forgery. A trial court conducting Rule 23(a) analysis "may rely on common sense assumptions to support findings of numerosity." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 660 (E.D. Cal. 2008) (citing Manual for Complex Litigation (Fourth) § 23.22(3) (2008)). However, nothing in the facts before the Court would permit such an assumption. Plaintiffs' assertion that the Rule 23(a)(1) requirement is satisfied appears to be based upon the research of REST and Dr. Wilson concerning MERS assignments. (Doc. 1913 at 7; Doc. 1914 at 7). In other words, Plaintiffs have offered no evidence of robosigning or forgery beyond the named Plaintiffs. Thus, Plaintiffs have failed to satisfy the numerosity requirement of Rule 23(a)(1).

**2. Commonality**

To satisfy the commonality requirement, there must be questions of law and fact common to the members of the class. Fed. R. Civ. P. 23(a)(2). The answer to this shared question must "resolve an issue that is central to the validity of each one of the [class members' claims] in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011); *Edwards v. First Am. Corp.*, 798 F.3d 1172 (9th Cir. 2015). In other words, commonality requires that a plaintiff must "have suffered the same injury" as the members of the proposed class. *Falcon*, 457 U.S. at 157.

Defendants argue that Plaintiffs cannot satisfy the commonality requirement

because robosigning claims "cannot be tried for the class as a whole with common evidence." (Doc. 1920 at 14; Doc. 1928 at 14). Defendants argue that each document would have to be looked at individually for robosigning. (Doc. 1920 at 14; Doc. 1928 at 14). As discussed above, the Court agrees. Nonetheless, the Court need not consider this argument in the context of commonality because Plaintiffs' proposed class definitions do not require robosigned or forged documents – only documents assigned by MERS. Further, Plaintiffs' experts have not analyzed commonality in terms of robosigning. As the Court has held above, a class of only MERS documents is beyond the mandate as to what states a claim. Accordingly, the Court cannot find commonality on robosigning when the only evidence presented and classes proposed deal with MERS assignments. Thus, the commonality requirement of Rule 23(a)(2) has not been satisfied.

**3. Typicality**

The typicality requirement of Rule 23(a)(3) requires that the claims or defenses of the representative parties be typical of those of the class. Fed. R. Civ. P. 23(a)(3). Typicality does not require class members and named plaintiffs to suffer identical injuries, only that "their claims be 'typical' of the class, not that they be identically positioned to each other or to every class member." *Parsons v. Ryan*, 754 F.3d 657, 686 (9th Cir. 2014); *see also Ellis*, 657 F.3d at 985 n. 9 ("Differing factual scenarios resulting in a claim of the same nature as other class members does not defeat typicality."). Additionally, the United States Supreme Court has recognized that the requirements of commonality and typicality "tend to merge." *Falcon*, 457 U.S. at 157-158, n. 13. Both requirements are used in "determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id*.

Defendants present various arguments that Plaintiffs' claims lack typicality. However, many of Defendants' arguments are based upon MERS assignments and trustee designations, not the allegations of robosigning remanded to this Court by the Ninth

Circuit Court of Appeals. Defendants claim that Plaintiffs' lack typicality because "whether a plaintiff can satisfy the elements of A.R.S. § 33-420 can only be determined 'on a case-by-case basis.' " (Doc. 1928 at 5; 1929 at 5) (quoting *Coventry Homes, Inc. v. Scottscom P'ship*, 745 P.2d 962, 966 (Ariz. Ct. App. 1987)). Plaintiffs reply by stating that Defendants "attempt to distinguish each Plaintiff's situation based on whether the underlying deeds of trust named MERS, whether the plaintiffs challenge(d) their trustee sales, and the number of documents recorded against the plaintiffs' and the class members' properties does not defeat typicality" (Doc. 1941 at 4).

Plaintiffs' proposed classes do not satisfy the typicality requirement of Rule 23(a)(3). The proposed classes do not require robosigning. As noted above, Plaintiffs' experts did not analyze robosigning or present evidence to suggest robosigning had occurred to proposed class members. The only link between Plaintiffs and proposed class members are MERS assignments, which fall outside the mandate to this Court. Thus, Plaintiffs have failed to satisfy the typicality requirement of Rule 23(a)(3).

**4. Adequacy**

Rule 23(a)(4) permits certification of a class if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23. Under Rule 23(a)(4), the adequacy of a class representative to represent the members of the class requires a district court to consider: "(1) do the proposed representatives have any conflicts of interest with the other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).

**a. Conflicts of Interest**

Defendants claim Plaintiffs are inadequate class representatives because they "unilaterally decid[ed] that class members will only be allowed to recover statutory, not actual, damages." (Doc. 1918 at 13-14; Doc. 1920 at 4-5; Doc. 1928 at 9; Doc. 1929 at 9). Plaintiffs reply that any class member seeking other than statutory damages may opt

out of the class. (Doc. 1946 at 2-3; Doc. 1947 at 3-4; Doc. 1948 at 4). Plaintiffs note that Section 33-420 permits that an action for quiet title may be joined with an action for damages. (Doc. 1947 at 4; Doc. 1948 at 4).

The Court finds that Plaintiffs' pursuit of statutory damages does not render Plaintiffs inadequate to act as class representatives. Class members seeking actual damages or to quiet the title of their property may opt out of the class or fall within a subclass.

Defendants also claim Plaintiffs are inadequate because Plaintiffs' agreements with their attorneys provide that if they lose or their attorneys withdraw, Plaintiffs will be responsible for all costs and expenses. (Doc. 1928 at 10; Doc. 1929 at 10). Defendants claim this provides little incentive for Plaintiffs to question the decisions of their attorneys or prosecute claims on behalf of class members. (Doc. 1928 at 10; Doc. 1929 at 10). Plaintiffs dispute Defendants' claim, pointing out that Section 33-420 provides for the recovery of attorney's fees, which can be spread over the class. (Doc. 1947 at 1-2; Doc. 1948 at 1-2).

The Court disagrees with Defendants' assertion that Plaintiffs have a financial incentive to follow the decisions of their attorneys. (Doc. 1928 at 10; Doc. 1929 at 10). As Plaintiffs point out, any costs and attorney fees are recoverable under the statute. (Doc. 1947 at 2; Doc. 1948 at 2). Because any recovery of costs and attorney fees depends upon the success of an action under Section 33-420, Plaintiffs have a financial incentive to do everything possible to ensure the success of the class, including exerting control over their attorneys.

Defendants further claim that Plaintiffs are inadequate representatives because they lack basic knowledge of their claims and unduly rely on their counsel. (Doc. 1920 at 5-6; Doc. 1928 at 10; Doc. 1929 at 9-10). Plaintiffs deny these claims, and point to Plaintiffs' depositions as evidence they possess sufficient knowledge to act as class representatives. (Doc. 1946 at 2-3; Doc. 1947 at 5; Doc. 1948 at 4).

The Court recognizes that complex litigation can be confusing to the lay person.

The present case concerns complex real estate transactions that would likely be confusing even to persons with considerable expertise. Additionally, this case has continued for over five years in state and federal court, and at one time included numerous member cases. *See In re Conseco Life Ins. Co. LifeTrend Ins. Sales & Mktg. Litig.*, 270 F.R.D. 521, 531 (N. D. Cal. 2010) ("Plaintiffs are laypersons and cannot be expected to define the scope of the class or name all of the causes of action in more precise terms. The fact that they are familiar with the basis for the suit and their responsibilities as lead plaintiffs is sufficient to establish their adequacy."). The Court finds that Plaintiffs have demonstrated sufficient knowledge to perform as class representatives.

Plaintiffs have sufficiently shown that they will fairly and adequately protect the interests of the class and that there are no conflicts of interests. Thus, Plaintiffs are adequate class representatives for the proposed class.

**b. Represented by Competent and Qualified Counsel**

Plaintiffs are represented by Valerie R. Edwards and William A. Nebeker, both of whom are attorneys at the law firm of Koeller, Nebeker, Carlson & Haluck, L.L.P. (Doc. 1913-5 at 2; Doc. 1913-6 at 2; Doc. 1914-1 at 79-84). Plaintiffs assert these attorneys have "substantial experience in large complex litigation matters, including class actions, and the firm has the necessary resources to prosecute this action on behalf of [P]laintiffs and the class members." (Doc. 1913 at 11-12; Doc. 1914 at 11-12). Ms. Edwards has been a member of the Arizona bar since 1996, and has served as counsel on a number of class actions, including several dealing with predatory lending. (Doc. 1913-6 at 2-3). Mr. Nebeker has been a member of the Arizona bar since 1977, and has litigated a number of class actions, many of which were in the federal courts. (Doc. 1913-5 at 2-3). The Court finds Ms. Edwards and Mr. Nebeker to be competent and qualified counsel to represent the interests of the class.

**5. Rule 23(b) Requirements**

Next, the Court turns to the Rule 23(b) requirements. The circumstances of this case weigh heavily against a finding that "a class action is superior to other available

methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

As discussed above, determining class membership would require an individual examination of potentially hundreds of thousands of documents. Calculating damages would also be difficult, since each class member could be entitled to multiple awards of statutory damages based upon the number of robosigned documents and statistics could not be used to determine the correct amount to be awarded. *See Jimenez*, 765 F.3d at 1167 ("[S]tatistical sampling and representative testimony are acceptable ways to determine liability so long as the use of these techniques is not expanded into the realm of damages."). Additionally, A.R.S. § 33-420 also provides for recovery of attorney fees and costs. Because of the unique difficulties in determining whether a document falls under Section 33-420 as well as determining damages, a class action is not superior to other methods for fairly and efficiently adjudicating this case. *See* Fed. R. Civ. P. 23(b)(3).

## V. Conclusion

Plaintiffs' proposed classes do not satisfy the requirements of Rule 23(a), particularly the requirements of "numerosity," "commonality" and "typicality." Additionally, the proposed classes do not satisfy the prerequisites that the classes be adequately defined and clearly ascertainable. Finally, the proposed classes do not satisfy Rule 23(b). Thus, for the foregoing reasons, Plaintiffs' motions for class certification are denied.

Accordingly,

**IT IS ORDERED** that Plaintiffs Sally Robinson-Burke, Rosa Silvas and Thomas Bilyea's Motion to Certify Class (Doc. 1913) is DENIED.

**IT IS FURTHER ORDERED** that Plaintiffs Milan Stejic and Maria Hernandez's Motion to Certify Class (Doc. 1914) is DENIED.

**IT IS FURTHER ORDERED** that Defendant Aurora Loan Services, LLC's Motion for Leave to File Sur-Reply (Doc. 1952; Doc. 50 in CV 10-1547-PHX-JAT) is DENIED as unnecessary because of this Court's denial of class certification.

**IT IS FINALLY ORDERED** that the Clerk of the Court shall file a copy of this Order in all member cases listed above.

Dated this 21st day of December, 2015.

James A. Teilborg
Senior United States District Judge